Mark D. Rosenbaum (SBN 59940)
(mrosenbaum@publiccounsel.org)
Kathryn A. Eidmann (SBN 268053)
(keidmann@publiccounsel.org)
Laura Faer (SBN 233846)
(lfaer@publiccounsel.org)
Anne Hudson-Price (SBN 295930)
(aprice@publiccounsel.org)
Alisa Hartz (SBN 285141)
(ahartz@publiccounsel.org)
PUBLIC COUNSEL LAW CENTER
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

Morgan Chu (SBN 70446)
(mchu@irell.com)
Michael H. Strub, Jr. (SBN 153828)
(mstrub@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 282-5600

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER P., et. al,<br><br>Plaintiffs,<br><br>v.<br><br>COMPTON UNIFIED SCHOOL DISTRICT; et. al,<br><br>Defendants. | **Case No. LA CV-15-3726 MWF (PLAx)**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 17, 2015<br>Time: 10:00 A.M.<br>Ctrm: 1600<br>Judge: Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. STATEMENT OF FACTS .......... 2
III. PROPOSED CLASS REPRESENTATIVES .......... 4
IV. LEGAL ARGUMENT .......... 4
A. The Class .......... 4
B. Legal Standards Governing Motions for Class Certification .......... 7
C. The Proposed Class Meets All the Requirements of Rule 23(a) .......... 9
1. Numerosity .......... 9
2. Commonality .......... 12
3. Typicality .......... 17
4. Adequacy .......... 18
5. Adequacy of Plaintiffs' Counsel .......... 19
D. The Proposed Class Meets All the Requirements of Rule 23(b)(2) .......... 20
V. CONCLUSION .......... 22



IRELL & MANELLA LLP
A Registered Limited Liability Law Partnership Including Professional Corporations

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ........ 5, 13, 17

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ........ 20

*Bates v. United Parcel Serv.*,
204 F.R.D. 440 (N.D. Cal. 2001) ........ 9

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ........ 12

*Californians for Disability Rights v. Cal. Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) ........ 5, 9, 18

*Cervantez v. Celestica Corp.*,
253 F.R.D. 562 (C.D. Cal. 2008) ........ 9

*CG v. Commonwealth Dep't of Educ.*,
No. 1:06-CV-1523, 2009 U.S. Dist. LEXIS 90028 (M.D. Pa. Sept. 29, 2009) ........ 6

*Chapman v. Pier 1 Imports (U.S.), Inc.*,
631 F.3d 939 (9th Cir. 2011) ........ 8

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ........ 9

*Cruz v. State of Cal.*,
No. RG14727139 (Alameda Cty. Sup. Ct. 2014) ........ 19

*Daly v. Harris*,
209 F.R.D. 180 (D. Haw. 2002) ........ 13

*Dilts v. Penske Logistics, LLC*,
267 F.R.D. 625 (S.D. Cal. 2010) ........ 8

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ........ 8

**Page(s)**

*Franco-Gonzalez v. Napolitano*,
No. 08-CV-318, 2011 U.S. Dist. LEXIS 158130 (C.D. Cal. Nov. 21, 2011) .......... 5, 9, 15

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) .......... 8, 12, 17

*Gray v. Golden Gate Nat'l Recreational Area*,
279 F.R.D. 501 (N.D. Cal. 2011) .......... 5, 15

*Greater Los Angeles Council on Deafness v. Zolin*,
812 F.2d 1103 (9th Cir. 1987) .......... 8

*Guckenberger v. Boston Univ.*,
957 F. Supp. 306 (D. Mass. 1997) .......... 6

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 17, 18

*Hanon v. Dataproducts Corp.*,
976 F.2d 497, 508 (9th Cir. 1992) .......... 18

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) .......... 9

*J.S. v. Attica Cent. Schs.*,
No. 00-CV-513S, 2006 U.S. Dist. LEXIS 12827 (W.D.N.Y. Mar. 7, 2006) .......... 6

*Jones v. Diamond*,
519 F.2d 1090 (5th Cir. 1975) .......... 8

*K.W. v. Armstrong*,
298 F.R.D. 479 (D. Idaho 2014) .......... 5, 13

*Kincaid v. City of Fresno*,
244 F.R.D. 597 (E.D. Cal. 2007) .......... 12

*L.H. v. Schwarzenegger*,
No. CIV. S-06-2042, 2007 WL 662463 (E.D. Cal. Feb. 28, 2007) .......... 6

**Page(s)**

*Lane v. Kitzhaber*,
283 F.R.D. 587 (D. Or. 2012) ....................................................5, 13, 15, 20

*Nordstrom v. Ryan*,
762 F.3d 903 (9th Cir. 2014)..........................................................................5

*Orantes–Hernandez v. Smith*,
541 F. Supp. 351 (C.D. Cal. 1982)...................................................................9

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014).................................................................passim

*R.P.-K. ex rel. C.K. v. Dep't of Educ., Hawaii*,
272 F.R.D. 541 (D. Haw. 2011)......................................................................13

*Ramon by Ramon v. Soto*,
916 F.2d 1377 (9th Cir. 1990)..........................................................................7

*Reed v. State of Cal.*,
No. BC432420 (L.A. Cty. Sup. Ct. 2010).......................................................19

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993).............................................................................9

*Rodriguez v. Hayes*,
578 F.3d 1032 (9th Cir. 2009), *rev'd on other grounds*, 591 F.3d 1105 (2010)........................................................................................12

*Sosna v. Iowa*,
419 U.S. 393 (1975) .........................................................................................7

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003).............................................................................8

*Tefel v. Reno*,
972 F. Supp. 608 (S.D. Fla. 1997)..................................................................18

*Vinson v. Thomas*,
288 F.3d 1145 (9th Cir. 2002).........................................................................11

*Waller v. Hewlett-Packard Co.*,
295 F.R.D. 472 (S.D. Cal. 2013).......................................................................9

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ....................passim

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998)....................8, 20

**Other Authorities**

136 Cong. Rec. H2599 (daily ed. May 22, 1990)....................13

NEWBERG ON CLASS ACTIONS (5th ed.)....................14, 21

**Rules**

Fed. R. Civ. P. 23....................passim

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Peter P., Phillip W., Virgil W., and Donte J., by their guardians ad litem, and Kimberly Cervantes (collectively, "Student Plaintiffs") respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification to certify a class, appoint class representatives, and appoint class counsel.

## I. INTRODUCTION

Plaintiffs Peter P., Phillip W., Virgil W., Kimberly Cervantes, and Donte J. represent a putative class of current and future students in Compton Unified School District ("CUSD") who have been exposed to complex trauma. As a result of their experienced trauma, the Student Plaintiffs have been or are substantially limited in at least one major life activity, including learning, reading, concentrating, thinking, and/or communicating.

Under the terms of the Section 504 of the Rehabilitation Act ("Section 504") and the Americans with Disabilities Act ("ADA"), the Student Plaintiffs have the right to free appropriate public education ("FAPE") and meaningful access to education. Defendants have failed to provide the Student Plaintiffs and their peers with district-wide trauma-sensitive accommodations. By failing to provide the necessary, reasonable accommodations, CUSD has deprived and continues to deprive the Student Plaintiffs of their basic rights to education on account of their disabilities.

The Student Plaintiffs seek a single class-wide injunction requiring Defendants to provide a system of ongoing training, coaching, and consultation for all adult school staff, implement restorative practices, and employ appropriately trained mental health counselors. These school-wide and district-wide practices have been advocated for, and promoted by, mental health and education experts

nationwide,[1] and have been effectively implemented in schools across the country to accommodate precisely the impediments to learning, reading, concentrating, thinking, and communicating experienced by the Student Plaintiffs and the class they seek to represent. The putative class meets all the requirements of the Federal Rules of Civil Procedure 23(a) and (b)(2) and Plaintiffs respectfully request that the Court grant class certification.

## II. STATEMENT OF FACTS

The Student Plaintiffs seek to represent current and future students in CUSD whose exposure to complex trauma has impaired or will impair their basic ability to learn, read, concentrate, think, and/or communicate.

The neurobiological effects of complex trauma, suffered by the Student Plaintiffs and the class, impair the Student Plaintiffs' and the class's ability to perform activities essential to education, *see, e.g.*, Perry ¶¶ 24-25, 30, 36,[2] and therefore constitute a disability under Section 504 and the ADA. The Student Plaintiffs have been—and, without district-wide trauma-sensitive accommodations, will continue to be—denied meaningful access to public education on account of disability.[3]

Compton youth are profoundly and disproportionately impacted by trauma and yet are provided no or exceedingly few resources in their schools to meaningfully address trauma's impact on education. Of children ages 0-17 living in Compton, 29.6 percent have experienced one serious trauma, and an additional 24.6

---

[1] *See, e.g.*, Perry ¶¶ 32, 35, 37-38; Dorado ¶¶ 30, 34-46; Bethell ¶¶ 44, 57; Wong ¶ 30; Stefanidis ¶ 30; Courtney ¶ 17 (all endorsing a school-wide approach).

[2] The fact and expert declarations referenced throughout this Brief are those filed on July 9, 2015 with Plaintiffs' Motion for Preliminary Injunction [Dkt. 42].

[3] Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction ("PI Br.") provides a detailed account of the factual record, which Plaintiffs briefly summarize here. PI Br. at 3-15 [Dkt. 42-1].

percent have experienced two or more traumas. Bethell ¶ 39. Too many CUSD students experience and witness violence in their neighborhoods, homes, and schools, mourn the loss of loved ones, are subjected to the instability and dislocation of separation from caregivers or the foster system, suffer the harrowing experience of homelessness and housing instability, and experience the harms of racism or homophobia. *See id.* ¶ 40; PI Br. at 4-6.

Decades of medical research have conclusively established that exposure to chronic or repeated trauma results in adverse neural and endocrinal changes in developing children. Perry ¶¶ 12, 24-25; *see also* Dorado ¶¶ 6-12; Bethell ¶¶ 12-18. These changes demonstrably impair the brain's ability to store and retrieve information—impeding memory, concentration, and communication—and to regulate emotion and impulses. Perry ¶ 23; *see generally* PI Br. at 7-9. Students who have experienced trauma are more likely to experience academic failure, perform poorly on tests, be disengaged or absent from school, have behavioral problems, and drop-out. Dorado ¶¶ 15-18; Bethell ¶¶ 12-18; Wong ¶¶ 17-19; PI Br. at 9-10.

An individualized plan is insufficient to effectively accommodate students whose learning is impaired by complex trauma, particularly in schools that serve high concentrations of trauma-impacted students. *See* Dorado ¶ 29; Perry ¶ 32. Rather, district-wide implementation of trauma-sensitive practices and the creation of trauma-sensitive environments are essential to student learning. *See* Perry ¶¶ 32-34; Dorado ¶¶ 29-30; Bethell ¶ 57; Wong ¶ 30; Stefanidis ¶ 30; Courtney ¶ 17. Yet, instead of providing the necessary accommodations, CUSD's policies and practices of deliberate indifference to the trauma endured by CUSD students, and the often debilitating consequences, re-traumatize the Student Plaintiffs and discriminate against students with trauma-induced disabilities. *See* PI Br. at 13-14.

## III. PROPOSED CLASS REPRESENTATIVES

The named Student Plaintiffs Peter P., Phillip W., Virgil W., Donte J., and Kimberly Cervantes should be certified as class representatives.

Each has experienced complex trauma and none have received the reasonable accommodations from CUSD necessary to provide him or her with the education to which he or she is entitled. The factual[4] and legal claims of the named Student Plaintiffs against CUSD are typical of those held by the proposed class of CUSD students with trauma-induced disabilities. Peter P., Phillip W., Virgil W., and Kimberly Cervantes were assessed by the Children's Hospital Los Angeles, Division of Adolescent & Young Adult Medicine, under the direction of Dr. Nikolaos Stefanidis, who determined that each assessed Plaintiff had experienced complex traumas that impaired his or her "ability to learn, think, read, concentrate, communicate, and/or behave in pro-social ways." Stefanidis ¶ 29.

Dr. Stefanidis concluded for each of the four Student Plaintiffs evaluated by his clinic, the "development of a whole-school, trauma-sensitive approach implemented by recognized experts in the field,"—the relief sought by the Student Plaintiffs in the proposed injunction—is "necessary and will be beneficial and effective to ameliorate the impairments to learning, thinking, reading, and concentrating[.]" *Id.* ¶ 30.

## IV. LEGAL ARGUMENT

### A. The Class

Plaintiffs seek certification of the following class:

> All present and future students in Compton Unified School District with trauma-induced disabilities, as defined under Section 504 of the Rehabilitation Act and Americans with

---

[4] For a detailed account of the named Student Plaintiffs' circumstances, see their respective declarations, Peter P. [Dkt. 42-5]; Phillip W. [filed under seal only]; Virgil W. [Dkt. 42-6]; Cervantes [Dkt. 42-7], Stefanidis ¶¶ 24-30, Exhs. B-E [Dkt. 42-16].

Disabilities Act, who are, will be, or have been denied meaningful access to education (the "Plaintiff Class").

The class includes, but is not limited to, students with trauma-related conditions recognized by the Diagnostic and Statistical Manual of Mental Disorders (5th ed.), including post-traumatic stress disorder, anxiety disorder, dissociative disorder, conduct disorder, somatoform disorder, depressive disorder, and substance-related and addictive disorders. Classes of similar or greater breadth, alleging systemic violations of class members' rights, have been certified.[5]

---

[5] *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 672 (9th Cir. 2014) (affirming certification of a class of "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practice of the A[rizona] D[epartment of] C[orrections]"); *Armstrong v. Davis*, 275 F.3d 849, 856-57 (9th Cir. 2001) (affirming certification of a class "of all present and future California state prisoners and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities"), *abrogated in non-pertinent part as recognized by*, *Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014); *Franco-Gonzales v. Napolitano*, No. CV 10-02211, 2011 U.S. Dist. LEXIS 158130, at *54-55 (C.D. Cal. Nov. 21, 2011) (certifying a class of individuals who have been identified "as having a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel"); *K.W. v. Armstrong*, 298 F.R.D. 479 (D. Idaho 2014) (certifying a class of developmentally disabled adults who choose to live in their own homes or community settings, challenging the program's annual eligibility determination or reevaluation process, whether or not each individual has experienced a budget reduction or desires to challenge the procedures); *Lane v. Kitzhaber*, 283 F.R.D. 587, 602 (D. Or. 2012) (certifying a class of "all individuals in Oregon with intellectual or developmental disabilities who are in, or who have been referred to, sheltered workshops and who are qualified for supported employment services."); *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 502-03 (N.D. Cal. 2011) (certifying class of "[a]ll persons with mobility and/or vision disabilities who are being denied programmatic access under the Rehabilitation Act of 1973 due to barriers at park sites owned and/or maintained by Golden Gate National Recreation Area."); *Californians for Disability Rights v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 350 (N.D. Cal. 2008) (certifying class of "[a]ll persons with mobility and/or vision disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973 due to barriers along

The Student Plaintiffs' claims are prototypical of a class action lawsuit and are particularly suited for class adjudication under Rule 23(b)(2), "the primary role" of which "has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. The Student Plaintiffs' claims are particularly suitable for being treated on a class basis because the relief sought necessitates class-wide relief via a district-wide approach; accommodations on an individualized level would be insufficient. *See generally Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) ("Classes certified under . . . (b)(2) share the most traditional justifications for class treatment— . . . that the relief sought must perforce affect the entire class at once.").

Additionally, the Student Plaintiffs' claims, which involve injury to, and protection for, children in schools, may be adequately addressed and remedied only on a class-wide basis. In cases involving students, "[t]he risk of mootness . . . where individual Plaintiffs might move away from the school district or graduate prior to the resolution of the claims, [] suggests class certification is necessary . . ." *CG v. Commonwealth Dep't of Educ.*, No. 1:06-CV-1523, 2009 U.S. Dist. LEXIS 90028, at *13 (M.D. Pa. Sept. 29, 2009); *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 326-27 (D. Mass. 1997) ("Students graduate, transfer, drop out, move

---

sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout the state of California which are owned and/or maintained by the California Department of Transportation"); *L.H. v. Schwarzenegger*, No. CIV. S-06-2042, 2007 WL 662463, at *9 (E.D. Cal. Feb. 28, 2007) (certifying a class consisting "of juvenile parolees in or under the jurisdiction of California, including all juvenile parolees with disabilities as that term is defined in Section 504 of the Rehabilitation Act and the ADA, who are: (i) in the community under parole supervision or who are at large (ii) in custody in California as alleged parole violators, and who are awaiting revocation of their parole or (iii) in custody, having been found in violation of parole and returned to custody"); *J.S. v. Attica Cent. Schs.*, No. 00-CV-513S, 2006 U.S. Dist. LEXIS 12827, at *3 (W.D.N.Y. Mar. 7, 2006) (certifying class of students "physically or otherwise disabled or suspected of being disabled" under Section 504).

away, grow disinterested, fall in love. Certainly, if a concern arises early enough in a claimant's educational odyssey, it may be heard in court. However, all too often student-initiated disputes escape review."); *Ramon by Ramon v. Soto*, 916 F.2d 1377, 1380 (9th Cir. 1990) (certifying class of injured student plaintiffs).

Claims of individual students at CUSD in particular have a heightened risk of mootness given that CUSD has a staggering dropout rate,[6] a large foster care population at risk of repeated transfers and placement changes,[7] many homeless youth experiencing transient and unstable living situations,[8] and significant incarceration rates.[9] Because class actions may continue "even though the claim of the named plaintiff has become moot," *Sosna v. Iowa*, 419 U.S. 393, 402 (1975), class certification of the Student Plaintiffs against CUSD should be favored.

**B. Legal Standards Governing Motions for Class Certification**

On a motion for class certification, the proposed plaintiff class must satisfy Federal Rule of Civil Procedure Rule 23(a) and one requirement of Rule 23(b). *Dukes*, 131 S. Ct. at 2551-52.

Rule 23(a) requires that a class must: (1) be so numerous that joinder of all members is impracticable; (2) entail questions of law and fact common to the class; (3) be represented by plaintiffs typical of those of the class; and (4) be represented by plaintiff and counsel who are adequate. *See* Fed. R. Civ. P. 23(a). These four requirements—numerosity, commonality, typicality, and adequacy—are interpreted

---

[6] CUSD reports a dropout rate of 32 percent, nearly three times the statewide rate. *See* Chung ¶ 32.

[7] CUSD reports at least 245 foster youth district-wide. Chung ¶ 110; *see also* Courtney ¶ 10 ("Foster youth typically encounter multiple placement changes.").

[8] CUSD reports 1,751 homeless students district-wide, or 7.8 percent of the total student population. Chung ¶ 165; *see* Stefanidis ¶ 9.

[9] *See* Castro ¶ 4 (noting frequent school movement because of foster care placement and juvenile justice involvement).

liberally in civil rights litigation.[10] *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) (liberally construing Rule 23(a) requirements in civil rights suit).

Plaintiffs seek certification under Rule 23(b)(2), in which the inquiry is whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification under Rule 23(b)(2) is appropriate where, as here, "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2557. "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. It "does not require a finding that all members of the class have suffered identical injuries." *Id.; see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Plaintiffs' burden on a motion for class certification is to prove the elements of Rule 23. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The inquiry "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* (internal quotation marks omitted). Even though evidence relating to the underlying merits of the case may also bear on the class certification requirements, "weighing competing evidence is inappropriate at this stage of the litigation." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 630-31 (S.D. Cal. 2010) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

---

[10] The Ninth Circuit defines the ADA and Section 504 as civil rights statutes. *See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); *see, e.g., Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1107 (9th Cir. 1987).

### C. The Proposed Class Meets All the Requirements of Rule 23(a)

#### 1. Numerosity

Numerosity requires that the class be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co.*, 446 U.S. at 330. No specific number is required to satisfy the numerosity requirement, as "whether joinder is impracticable depends on the facts and circumstances of each case." *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 444 (N.D. Cal. 2001) (citations omitted); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008). "[D]istrict courts in this Circuit have found that classes with as few as 39 members met the numerosity requirement." *Franco-Gonzalez*, 2011 U.S. Dist. LEXIS 158130, at *26 (C.D. Cal. Nov. 21, 2011); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 n.5 (3d Cir. 2013) (numerosity is typically satisfied when the number of potential plaintiffs exceeds 40); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 482 (S.D. Cal. 2013) (same); *Californians for Disability Rights*, 249 F.R.D. at 346 (same).

Evidence of the exact size of the class is not required. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "[W]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982).

Plaintiffs' class includes well over 40 students with disabilities currently enrolled in CUSD schools. Approximately 22,000 students will attend CUSD schools this upcoming school year.[11] Tens of thousands more will enter the school

---

[11] CUSD enrollment was 22,106 for the 2014-2015 school year. Chung, Ex. 2.

district in the future. The pervasive exposure of CUSD students to complex trauma is widely known and well-documented.[12] Compton is among the most socioeconomically distressed cities in California,[13] and it experiences high rates of violent crime.[14] Data analyzed by Dr. Christina Bethell and the Child and Adolescent Health Measurement Initiative reflects that 29.6 percent of children age 0-17 living in Compton have one adverse childhood experience ("ACE"),[15] and an additional 24.6 percent have experienced two or more ACEs. Bethell ¶ 39; *see also id.* ¶ 40. These statistics confirm the experiences of CUSD educators who report that the majority of their students have experienced violence or other traumatic events. *See, e.g.*, Curry ¶ 10 (Dominguez); McCoy ¶ 5 (Centennial); Castro ¶ 10 (Chavez); Deposition of Principal Stephen Glass (Compton High School) 219:2-3 ("I couldn't see any student that's at our school that hasn't witnessed violence"). Moreover, the Student Plaintiffs include two groups of young people who are particularly likely to experience trauma: foster youth and homeless youth. *See, e.g.*, Chung ¶¶ 110, 165; Peter P. ¶¶ 11-15, 22; Curry ¶ 28; Glass Dep. 217:13-15, 218:2-10.

---

[12] Defendant CUSD School Board President Micah Ali has repeatedly acknowledged the "unique education challenges" facing CUSD, including "higher than normal rates of poverty, single parent families, . . . foster youth [and] violence." Eidmann ISO PI, [Dkt. 42-3], Ex. E.

[13] 26.3 percent of Compton residents live below the poverty level, a rate more than 50 percent higher than the California average, and the per capita income in Compton is $13,548, less than half the California average. Chung ¶ 171-72. Ninety-three percent of children in Compton schools are eligible for Free and Reduced Priced Lunch. *Id.* ¶ 110.

[14] For example, Compton's homicide rate is more than five times the national average. Chung ¶ 186.

[15] ACEs are defined as a subset of childhood traumatic events, including childhood abuse, neglect, and exposure to other traumatic stressors such as community violence. Bethell ¶ 9.

Medical science has demonstrated that cumulative exposure to trauma, like that experienced by many class members, disables a child's ability to learn. The scientific record conclusively establishes that complex trauma affects "neurological [and] brain" functions, and that these neurobiological changes impair "learning, reading, concentrating, thinking, [and] communicating." Perry ¶ 26; *see also* Dorado ¶¶ 6-12; Bethell ¶¶ 12-18. The brain of a young person who has been exposed to complex trauma undergoes substantial neurobiological changes. Perry ¶ 12. The effect of these changes is to demonstrably impair the ability of the brain to store and retrieve information—impeding memory, concentration, and communication—and to regulate emotion and impulses. Perry ¶ 26. Psychological evaluations of the Student Plaintiffs have confirmed that the effects of the complex trauma the Student Plaintiffs have experienced substantially limit one or more life activities, including: learning, reading, concentrating, thinking, and/or communicating.[16] Stefanidis ¶ 29. Medical science gives every reason to believe that class members exposed to similar complex trauma will experience similar limitations.

Using a conservative measure, an estimated 24.6 percent of CUSD's 22,000 students—or approximately 5,412 students—have experienced two or more severe traumas. *See* Bethell ¶¶ 39, 41. Because the effects of such cumulative exposure constitute a disability limiting access to education, the putative class tragically includes thousands of CUSD students.

---

[16] The Ninth Circuit has established that it is not necessary to provide "a medical professional's diagnosis of" the asserted disability in order for a plaintiff to show that he or she is disabled under Section 504 or Title II of the ADA. *See Vinson v. Thomas*, 288 F.3d 1145, 1152 (9th Cir. 2002). Plaintiffs need only provide evidence that "a reasonable expert in the field would accept the type of evidence presented by [plaintiff] as proof of his disability." *Id.* at 1153.

**2. Commonality**

Commonality requires that the plaintiffs' claims or grievances share a common question of law or fact. Fed. R. Civ. P. 23(a)(2). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Falcon*, 457 U.S. at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Class members' claims need not be so similar as to share *all*, or even *most*, questions of law or fact. A "single issue common to the class" satisfies the commonality requirement. *Kincaid v. City of Fresno*, 244 F.R.D. 597, 602 (E.D. Cal. 2007); *see also Dukes*, 131 S. Ct. at 2556; *Rodriguez v. Hayes*, 578 F.3d 1032, 1048 (9th Cir. 2009), *rev'd on other grounds*, 591 F.3d 1105 (2010) (commonality satisfied where there is "some shared legal issue or a common core of facts" even if "members of the proposed class do not share every fact in common or completely identical legal issues"). Plaintiffs must demonstrate only "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Parsons*, 754 F.3d at 674 (quoting *Dukes*, 131 S. Ct. at 2551).

The recent Ninth Circuit case *Parsons* concerned a class of prison inmates who alleged that "numerous policies and practices of statewide application governing mental care, dental care, mental health care, and conditions of confinement in isolation cells expose them to a substantial risk of serious harm to which defendants are deliberately indifferent." 754 F.3d at 662. Despite the multiplicity of policies, practices, and medical conditions at issue, the Ninth Circuit found commonality because the class "set forth numerous common contentions whose truth or falsity can be determined in one stroke: whether the specified statewide policies and practices to which they are all subjected by ADC expose them to a substantial risk of harm." *Id*. at 687.

> These policies and practices are the 'glue' that holds together the putative class . . . either each of the policies and practices is

> unlawful as to every inmate or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other individualized determination.

*Id*. The court held that the policies and practices of defendants, "such as failing to hire enough medical staff, failing to fill prescriptions, denying inmates access to medical specialists" allegedly exposed "all members of the putative class to a substantial risk of serious harm." *Id.* at 683-84.

*Parsons* makes clear that, even after *Dukes*, in civil rights actions, which include actions under the ADA or Section 504,[17] "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members," even where there are "individual factual differences among the individual litigants." *Armstrong*, 275 F.3d at 868; *Lane*, 283 F.R.D. at 597. "These system-wide challenges avoid the type of individualized inquiries that destroy commonality." *K.W.*, 298 F.R.D. at 486 (finding commonality where a class of developmentally disabled adults who qualify for benefits under Medicaid challenge the state's "generic method for making budget decisions, the forms [used] to notify people of those decisions and [the] system for handling budget appeals.").[18]

---

[17] "The Americans with Disabilities Act is a plenary civil rights statute designed to halt all practices that segregate persons with disabilities . . ." 136 Cong. Rec. H2599 (daily ed. May 22, 1990) (statement of Rep. Dellums).

[18] Commonality is often inherent in requests for injunctive relief as "class suits for declaratory or injunctive relief, 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *R.P.-K. v. Dep't of Educ., Hawaii*, 272 F.R.D. 541, 548 (D. Haw. 2011) (quoting *Daly v. Harris*, 209 F.R.D. 180, 186 (D. Haw. 2002)) (finding commonality in a case concerning whether a state statute imposing an age limit on public education "alone provides sufficient grounds to deny special education students a [free appropriate public education]"). "A claim that the opposing party 'has acted or refused to act on grounds that apply generally to the class' necessarily presents a common question of fact; similarly, a claim that

The Student Plaintiffs challenge Defendants' system-wide policies concerning the provision of education to students suffering from complex trauma. The action presents the following common questions of fact and law that necessitate singular class-wide answers:

1. Whether the effects of complex trauma can substantially limit one or more of a student's major life activities, including learning, reading, concentrating, thinking, and communicating.[19]
2. Whether such interference with education-related life activities impairs a student's ability to receive the benefits of a public education.
3. Whether students affected by complex trauma enrolled in schools in CUSD are denied the benefits of a public education due to the effects of experiencing complex trauma.
4. Whether students affected by complex trauma enrolled in schools in CUSD are denied the benefits of a public education solely by reason of their trauma.
5. Whether accommodations exist that can be reasonably implemented by Defendants to ensure that students with complex trauma do have meaningful access to a public education.
6. Whether Defendants have failed to implement such accommodations.

"The factual and legal questions that [Plaintiffs' claims] present can be answered 'yes' or 'no' in one stroke as to the entire class, dissimilarities among class members do not impede the generation of common answers to those questions,

---

injunctive or declaratory relief is appropriate for the class as a whole presents a common question of law." 1 NEWBERG ON CLASS ACTIONS § 3:27 (5th ed.).

[19] In Defendants' Motion to Dismiss at 7-13 [Dkt. 41-1], Defendants acknowledge this common question when they argue that the complaint should be dismissed because "'[t]rauma does not constitute a physical or mental impairment recognized under the law."

and the capacity of class-wide proceedings to drive the resolution of this litigation cannot be doubted." *Parsons*, 754 F.3d at 684.

Additionally, "a class of disabled individuals seeking reasonable accommodation may be certified without the need for an individualized assessment of each class member's disability or the type of accommodation needed." *Lane*, 283 F.R.D. at 595. Numerous district courts in this circuit have found commonality in similar factual and legal circumstances. *See, e.g.*, *Franco*, 2011 U.S. DIST. LEXIS 158130, at *37 (finding commonality where a class of individuals challenged the legality of the government's policies of failing to provide competency hearings to individuals in immigration proceedings, failing to appoint counsel for incompetent individuals, and promulgating regulations that were not adequate safeguards for the mentally disabled, among other common legal questions); *Lane*, 283 F.R.D. at 598 (finding commonality where the class posed the question of "whether defendants have failed to plan, administer, operate and fund a system that provides employment services that allow persons with disabilities to work in the most integrated setting . . . even where class members are not identically situated."); *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 512-13 (N.D. Cal. 2011) (reconsideration denied in part) (commonality requirement met where plaintiffs challenged the uniform policies and practices of failing to address access barriers despite the differing types and levels of disabilities of the class members).

Here, the truth or falsity of the Student Plaintiffs' contentions need not be determined on an individual basis; either Defendants' policy and practice of failing to accommodate students who have experienced complex trauma is unlawful as to every class member or it is not. *See id.* at 678. Determinations of Defendants' liability will depend on the legality—or illegality—of Defendants' systemic policies and practices under Section 504 and the ADA, not on Defendants' conduct in relation to any single class member. Similarly, whether the Student Plaintiffs have been injured depends on neither the precise source nor particular manifestation of an

individual's complex trauma, but on whether Defendants, through their policies and practices, have denied all class members—that is, all Compton students with trauma-induced disabilities—access to education. Defendants categorically deny that complex trauma results in a disability that impairs students' ability to learn, read, concentrate, think, and communicate, Mot. to Dismiss at 7, and have failed systemically to provide school-wide accommodations that, according to experts across the nation, are required in order to provide such students meaningful access to education. Dorado ¶ 29; *see* Stefanidis ¶ 30; Courtney ¶ 17; Perry ¶¶ 32-41; Bethell ¶ 57; Wong ¶ 30. Because Defendants have failed to act on a district-wide basis, all putative class members have suffered the identical injury of being deprived of their right of meaningful access to education.

Finally, Plaintiffs seek a single remedy for the whole class: district-wide trauma-sensitive practices. To provide such relief, individualized assessments of students are not necessary (and could even prove harmful). Dorado ¶ 33; Wong ¶ 36. The necessary remedy cannot, by its nature, be provided on an individualized basis; it must be implemented school-wide and district-wide. Dorado ¶ 29 ("Individual therapy for traumatized students fails to reduce unnecessary triggers in the students' classroom and to address the larger culture of the school."); *id.* ¶ 30 (describing trauma-sensitive policies sought); Perry ¶¶ 32, 37-38; Bethell ¶¶ 44, 57; Wong ¶ 30; Stefanidis ¶ 30; Courtney ¶ 17. . The requested injunctive relief includes: comprehensive and ongoing training for all adult staff regarding trauma-informed methods and strategies for educating class members and fostering a healthy, supportive environment; implementation of restorative practices to prevent, address, and heal after conflict; and employment of appropriately trained counselors who can assist with identification of students who have mental health difficulties after being subjected to trauma. *See* Dorado ¶ 30; *see also* Perry ¶¶ 32, 37-38; Bethell ¶¶ 44, 57; Wong ¶ 30; Stefanidis ¶ 30; Courtney ¶ 17 (all endorsing this approach). These school-wide practices have been advocated by mental health and

education experts nationwide, and have been effectively implemented in schools across the country to accommodate precisely the impediments to learning, thinking and concentrating that the Student Plaintiffs suffer and will otherwise continue to suffer. Perry ¶ 35; Dorado ¶¶ 34-46.

**3. Typicality**

Typicality requires that the claims or defenses of the class representatives are typical of those of the class. Fed. R. Civ. P. 23(a)(3). The typicality prong focuses on the appropriateness of a class plaintiff as representative of the class in litigation. *See Gen. Tel.*, 457 U.S. at 156 (Representatives must "possess the same interest and suffer the same injury as the class members."). "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Parsons*, 754 F.3d at 685. The court does not "insist that the named plaintiffs' injuries be identical with those of other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Parsons*, 754 F.3d at 685 (quoting *Armstrong*, 275 F.3d at 869). Nor does it require that named plaintiffs "be identically positioned to each other or to every other class member." *Id.* at 686.

Here, the proposed class representatives' claims are typical of those of the class because they stem from Defendants' failure to provide the necessary accommodations to class members, identical across the class, in the form of district-wide and school-wide policies and practices that address trauma and its effects. The named Student Plaintiffs are students in CUSD schools[20] and have experienced complex trauma in the form of physical and/or sexual violence, familial

---

[20] Although Kimberly Cervantes was scheduled to graduate in June 2015, she has not attained sufficient credits to graduate and continues to pursue coursework in CUSD. Cervantes ¶ 4.

and/or housing insecurity, and/or gang violence. *See generally* Peter P. ¶¶ 2-34; Phillip W.¶¶ 2-37; Virgil W. ¶¶ 2-33; Cervantes ¶¶ 2-48. The named Student Plaintiffs are disabled within the meaning of Section 504 and the ADA as a consequence of exposure to complex trauma. Stefanidis ¶ 29 & Exhs. B-E; Peter P. ¶ 3; Cervantes ¶ 2 ; Phillip W. ¶ 2; Virgil W. ¶ 2; Perry ¶¶ 28-31 (trauma's deleterious effect on learning); Bethell ¶¶ 28-37 (same). The named Student Plaintiffs have been injured by Defendants' failure to accommodate their disabilities, thereby denying students meaningful access to education. Peter P. ¶¶ 21, 23, 26-28; Cervantes ¶¶17-38; Phillip W. ¶¶ 2-37, 17, 19, 23, 26-29, 32-33; Virgil W. ¶¶ 12, 16-23. Plaintiffs thus "allege 'the same or a similar injury' as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows form the course of conduct at the center of the class claims." *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

**4. Adequacy**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." *Hanlon*, 150 F.3d at 1020. "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Right*, 249 F.R.D. at 349. "Where the named plaintiffs in a class action are seeking the same type of relief for themselves as they seek for class members, the adequacy of representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure is satisfied." *Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997).

The Student Plaintiff representatives are injured students, victims of trauma, who are passionate about improving meaningful access to education and implementing the necessary school-wide and district-wide policies and practices to properly address their own—and others'—trauma-induced disabilities. These students have exposed themselves and recounted their painful stories to seek a better

education for themselves and their peers. They seek the same injunctive relief for themselves as for the class, namely, a school-wide and district-wide implementation of trauma-sensitive practices. The class representatives—*i.e.* the Student Plaintiffs—are ready and able to act as effective advocates for the class. Peter P. ¶ 36; Cervantes ¶ 49; Phillip W. ¶ 38; Virgil W. ¶ 34.

### 5. Adequacy of Plaintiffs' Counsel

Pursuant to Rule 23(g), "a court that certifies a class must appoint class counsel." Class counsel must be able to "fairly and adequately represent the interests of the [entire] class." Fed. R. Civ. P. 23(g)(4). In appointing class counsel, the court must consider: (i) counsel's work in identifying and investigating potential claims; (ii) counsel's experience in class action, complex, and similar claimed litigations; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1). The Court may also consider other pertinent considerations. *Id*.

Public Counsel and Irell & Manella LLP have both invested significant time and effort identifying and investigating potential claims on behalf of the Plaintiff Class, have extensive experience with class action and complex litigation, are knowledgeable of the law, and have committed extensive resources to vindicating the rights of the Plaintiff Class. Eidmann ¶¶ 2-4, 7, 9-11, 14-16; Strub ¶ 5. Specifically, Public Counsel is a not-for-profit legal group dedicated to advancing the rights of underserved populations. Eidmann ¶¶ 2-3. Public Counsel has worked extensively with at-risk and disabled youths and has employed the class action vehicle in advancing the rights of children in other litigation. Eidmann ¶¶ 2-3, 7, 11, 16; *see, e.g.*, *Cruz v. State of Cal.*, No. RG14727139 (Alameda Cty. Sup. Ct. 2014); *Reed v. State of Cal.*, No. BC432420 (L.A. Cty. Sup. Ct. 2010). Irell & Manella LLP is a highly respected law firm that specializes in complex litigation matters. Strub ¶¶ 3-4, 6. Irell & Manella LLP has a history of strong commitment to the community and advancing and supporting important communal goals through pro

bono litigation. Strub ¶¶ 3-6. As such, Public Counsel and Irell & Manella LLP should be appointed Class Counsel in this case.

**D. The Proposed Class Meets All the Requirements of Rule 23(b)(2)**

Rule 23(b)(2) requires "the party opposing the class [to have] acted or [have] refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2557.

The Rule 23(b)(2) requirements are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. The policies and practices at issue need not "affect every member of the proposed class . . . in the same way." *Id.* "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class, [e]ven if some class members have not been injured by the challenged practice." *Walters*, 145 F.3d at 1047; *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (certification appropriate when "defendant's conduct is central to the claims of all class members irrespective of their individual circumstances"); *Parsons*, 754 F.3d at 689 (the risk of harm to each inmate can be remedied by the class-wide response of hiring more doctors across the prison system); *Lane*, 283 F.R.D. at 602 (injunctive relief that "focuses on defendants' conduct, not on the treatment needs of each class member" by requiring defendants to "provide supported employment services to all qualified class members, consistent with their individual needs," was an injunction applicable to all class members that would resolve the action "in one stroke").

The claims raised by the Plaintiff Class in this action are precisely the sort of claims that Rule 23(b)(2) was designed to facilitate. In actions brought under 23(b)(2), class treatment is justified because "the relief sought must perforce affect the entire class at once." *Dukes*, 131 S. Ct. at 2558. The Student Plaintiffs' action is

a prototypical 23(b)(2) action because here "the class members' claims are so inherently intertwined that injunctive relief as to any would be injunctive relief as to all." 1 NEWBERG ON CLASS ACTIONS § 4:34 (5th ed.). The Student Plaintiffs seek a single injunction that will result in uniform changes in district-wide policy and practice and that will provide uniform relief to all class members in the form of a whole-school trauma-sensitive approach. Leading experts on childhood trauma across the country agree that, "in order to meaningfully address the impact of complex trauma on students' abilities to access their education, a school must adopt system-wide strategies, procedures, and policies." Dorado ¶ 29; *see* Stefanidis ¶ 30 ("I understand that the remedy in this case calls for the development of a whole-school, trauma-sensitive approached implemented by recognized experts in the field . . . I believe that this remedy is necessary and will be beneficial and effective to ameliorate the impairments to learning, thinking, reading, and concentrating experienced by the four young people evaluated at my clinic."); Courtney ¶ 17 (whole-school, trauma-sensitive approach is "necessary to ameliorate the impairments to learning, thinking, reading, and concentrating experienced by foster youth in Compton Unified School who have been exposed to complex trauma"); Perry ¶¶ 32-41; Bethell ¶ 57 (whole-school approach is necessary); Wong ¶ 30; *see also* Section IV.C.2, *supra*.

In fact, in this case a class-wide remedy is not merely possible but required; individualized relief would not be effective. Dorado ¶¶ 29-30 ("Individual therapy for traumatized students fails to reduce unnecessary triggers in the students' classroom and to address the larger culture of the school . . . Individualized services are insufficient for students suffering the consequences of complex trauma. A trauma-informed or trauma-sensitive school system is necessary to reduce barriers to learning for traumatized students."). Thus, here, not only *can* the class-members' injuries be remedied through a class-wide injunction; the remedy here *must* be collective, or it will be no remedy at all.

## V. CONCLUSION

For the foregoing reasons, the Student Plaintiffs request that the Court certify the Plaintiff Class, appoint the Student Plaintiffs as class representatives, and appoint Public Counsel and Irell & Manella LLP as Class Counsel.

DATED: July 17, 2015

Respectfully submitted,

/s/ Mark D. Rosenbaum
Mark D. Rosenbaum

/s/ Kathryn A. Eidmann
Kathryn A. Eidmann

/s/ Alisa Hartz
Alisa Hartz

Laura Faer
Anne Hudson-Price
Alisa Hartz
PUBLIC COUNSEL LAW CENTER

Morgan Chu
Michael H. Strub, Jr.
IRELL & MANELLA LLP

*Attorneys for Plaintiffs and the Proposed Class*

# FILER'S ATTESTATION

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all signatories on whose behalf this filing is jointly submitted concur in the filing's content and have authorized me to file this document.

DATED: July 17, 2015

Respectfully submitted,

/s/ Kathryn A. Eidmann

Kathryn A. Eidmann

PUBLIC COUNSEL LAW CENTER

*Attorneys for Plaintiffs and the Proposed Class*