**David M. Huff, Esq. (State Bar No. 161607)**
**dhuff@ohshlaw.com**
**Enrique M. Vassallo, Esq. (State Bar No. 153778)**
**evassallo@ohshlaw.com**
**Kimble R. Cook, Esq. (State Bar No. 163148)**
**kcook@ohshlaw.com**
**Jeremy P. Ehrlich, Esq. (State Bar No. 284656)**
**jpehrlich@ohshlaw.com**
**ORBACH HUFF SUAREZ & HENDERSON LLP**
**1901 Avenue of the Stars, Suite 575**
**Los Angeles, California 90067-6007**
**Telephone: (310) 788-9200**
**Facsimile: (310) 788-9210**

Attorneys for Defendants
COMPTON UNIFIED SCHOOL DISTRICT,
DARIN BRAWLEY, MICAH ALI, SATRA ZURITA, MARGIE GARRETT,
CHARLES DAVIS, SKYY FISHER, EMMA SHARIF and MAE THOMAS

**ORBACH HUFF SUAREZ & HENDERSON LLP**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER P., a minor, by Carolina Melendrez, guardian ad litem; KIMBERLY CERVANTES; PHILLIP W., a minor, by Beatrice W. guardian ad litem; VIRGIL W., a minor, by Beatrice W., guardian ad litem; DONTE J., a minor, by Lavinia J., guardian ad litem; on behalf of themselves and all others similarly situated; RODNEY CURRY; ARMANDO CASTRO II; and MAUREEN MCCOY, <br><br> Plaintiffs, <br><br> v. <br><br> COMPTON UNIFIED SCHOOL DISTRICT; DARIN BRAWLEY, in his official capacity as Superintendent of | CASE NO. LA CV15-3726 MWF (PLAx) <br><br> **CLASS ACTION** <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: August 17, 2015 <br> Time: 10:00 A.M. <br> Ctrm.: 1600 <br> Judge: Hon. Michael W. Fitzgerald <br><br> Complaint Filed: May 18, 2015 |

Compton Unified School District;
MICAH ALI, SATRA ZURITA,
MARGIE GARRETT, CHARLES
DAVIS, SKYY FISHER, EMMA
SHARIF and MAE THOMAS, in their
official capacities as members of the
Board of Trustees of Compton Unified
School District,

        Defendants.

Defendant Compton Unified School District (hereafter "CUSD"), and Defendants Darin Brawley, Micah Ali, Satra Zurita, Margie Garrett, Charles Davis, Skyy Fisher, Emma Sharif, and Mae Thomas (hereafter collectively the "Individual Defendants"), hereby oppose the Motion for Preliminary Injunction filed by Plaintiffs Peter P., Kimberly Cervantes, Phillip W., Virgil W., and Donte J., on behalf of themselves and all others similarly situated (hereafter collectively the "Student Plaintiffs"), and Rodney Curry, Armando Castro II, and Maureen Mccoy (hereafter collectively the "Teacher Plaintiffs"), and submit the following Memorandum of Points and Authorities in Opposition thereto.

///
///
///
///
///
///
///
///
///

ORBACH HUFF SUAREZ & HENDERSON LLP

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  FACTUAL ALLEGATIONS .....................................................................2

III. LEGAL STANDARD ON A PRELIMINARY INJUNCTION ...................4

IV.  GRANTING THE REQUESTED PRELIMINARY RELIEF WOULD
     BE PREMATURE AND INAPPROPRIATE.................................................5

     A.   Consideration of the Preliminary Injunction Should Be Deferred
          Pending the Ruling on Defendants' Motion to Dismiss. ....................5

     B.   CUSD Already Provides Appropriate Trauma-Sensitivity Training....5

     C.   The Requested Third-Party Training Is Premature and
          Inappropriate. ..................................................................................6

     D.   The Court Is Not Empowered to Dictate CUSD's Educational
          Policies. ...........................................................................................8

V.   THE PRELIMINARY INJUNCTION SHOULD BE DENIED
     BECAUSE PLAINTIFFS FAIL TO MAKE THE REQUIRED CLEAR
     SHOWING THAT THEY ARE ENTITLED TO SUCH
     EXTRAORDINARY RELIEF ....................................................................9

     A.   Plaintiffs Failed to Exhaust Their Administrative Remedies as
          Required. .......................................................................................10

     B.   Plaintiffs Are Not Likely to Succeed on the Merits of Their
          Claims.............................................................................................12

          1.   Plaintiffs Are Not Individuals with a Disability. .....................13

          2.   There Was No Denial of Benefits Solely by Reason of a
               Disability.................................................................................15

          3.   Plaintiffs' Proposed Accommodation Is Not the Required
               Response to Their Claims. .......................................................18

     C.   Plaintiffs Will Not Likely Be Irreparably Harmed in the Absence
          of the Proposed Relief....................................................................20

     D.   The Preliminary Injunction's Resulting Harm to Defendants
          Outweighs the Threatened Injury to Plaintiffs.................................23

VI.  CONCLUSION .......................................................................................25

ORBACH HUFF SUAREZ & HENDERSON LLP

# **TABLE OF AUTHORITIES**

## Cases

*Albino v. Baca*,
   747 F.3d 1162 (9th Cir. 2014)..................................................................10, 11

*Alexander v. Choate*,
   469 U.S. 287 (1985) .................................................................................16, 20

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011)........................................................................20

*Amoco Production Company v. Village of Gambell, AK*,
   480 U.S. 531 (1987) ......................................................................................23

*Anderson v. United States*,
   612 F.2d 1112 (9th Cir. 1980)..........................................................................5

*Board of Education of Hendrick Hudson Cental School District, Westchester County.*
   *v. Rowley*,
   458 U.S. 176 (1982) ...................................................................................8, 25

*Butt v. State of California*,
   4 Cal. 4th 668 (1992) .......................................................................................8

*D.R. ex rel. Courtney R. v. Antelope Valley Union High School District*,
   746 F. Supp. 2d 1132 (C.D. Cal. 2010) ..........................................8, 21, 22, 25

*Dahl v. HEM Pharm. Corporation*,
   7 F.3d 1399 (9th Cir. 1993).........................................................................5, 9

*Doe v. Eagle-Union Community School Corporation*,
   101 F. Supp. 2d 707 (S.D. Ind. 2000) ............................................................16

*Dutson v. Farmers Insurance Exchange*,
   815 F. Supp. 349 (D. Or. 1993) .....................................................................16

*Duvall v. County of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001).................................................................15, 16

*Earth Island Institute v. Carlton*,
   626 F.3d 462 (9th Cir. 2010)......................................................................4, 23

ORBACH HUFF SUAREZ & HENDERSON LLP

ii

*Garcia v. Google, Incorporated,*
766 F.3d 929 (9th Cir. 2014)...............................................................21

*Goldie's Bookstore, Incorporated v. Superior Court of State of California*,
739 F.2d 466 (9th Cir. 1984)...............................................................20

*Hedberg v. Indiana Bell Tel. Company*,
47 F.3d 928 (7th Cir. 1995)................................................................17

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003)................................................................17

*Hoeft v. Tucson Unified School District*,
967 F.2d 1298 (9th Cir. 1992).............................................................12

*Holt v. Grand Lake Mental Health Center, Incorporated*,
443 F.3d 762 (10th Cir. 2006).............................................................14

*J.W. ex rel. J.E.W. v. Fresno Unified School District,*
570 F. Supp. 2d 1212 (E.D. Cal. 2008).................................................13

*Lovell v. Chandler*,
303 F.3d 1039 (9th Cir. 2002).............................................................16

*Marlyn Nutraceuticals, Incorporated v. Mucos Pharma GmbH & Company*,
571 F.3d 873 (9th Cir. 2009)...........................................................5, 9

*Martin v. International Olympic Committee*,
740 F.2d 670 (9th Cir. 1984)................................................................9

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)............................................................................9

*McCarthy v. Madigan,*
503 U.S. 140 (1992).........................................................................12

*Midgett v. Tri-County Metropolitan Transporation District of Oregon,*
254 F.3d 846 (9th Cir. 2001)..............................................................20

*Nken v. Holder*,
556 U.S. 418, 435 (2009)..................................................................23

*Payne v. Peninsula School District*,
653 F.3d 863 (9th Cir. 2011).........................................................11, 12

ORBACH HUFF SUAREZ & HENDERSON LLP

iii

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Schrier v. University of Colorado*,
   427 F.3d 1253 (10th Cir. 2005)........................................................10

*Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist. #121*,
   1999 WL 1044832 (N.D. Ill. 1999) ................................................17

*Stearns v. Board of Education for Warren Township High Schooh District #121*,
   No. 99 C 5818, 1999 WL 1044832 ................................................17

*Vinson v. Thomas*,
   288 F.3d 1145 (9th Cir. 2002)........................................................13

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)......................................................................23

*Winter v. Natural Resources Defense Council, Incorporated*,
    555 US 7 (2008) ....................................................................passim

*Zukle v. Regents of University of California*,
   166 F.3d 1041 (9th Cir. 1999)............................................13, 18, 20

**Statutes**

20 U.S.C. § 1412................................................................................12

20 U.S.C. § 1415................................................................................11

29 U.S.C. § 705..................................................................................13

29 U.S.C. § 794....................................................................................1

42 U.S.C. § 12102..............................................................................14

Educ. Code § 56026............................................................................15

**Regulations**

29 C.F.R. § 1630.2.............................................................................14

29 C.F.R. app. § 1630.2......................................................................14

29 C.F.R. app. § 1630.2(h)..................................................................25

34 C.F.R. § 104.33(a).........................................................................18

34 C.F.R. app. A § 104.......................................................................14

ORBACH HUFF SUAREZ & HENDERSON LLP

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

# I.

## **INTRODUCTION**

Plaintiffs ask this Court to summarily order the mandatory, immediate training of over two thousand teachers, administrators, and staff of the Compton Unified School District ("CUSD"), have that training administered by the Plaintiffs' provider of choice, and do so without any regard for CUSD's professional educators and psychologists' considered approach towards the same harms Plaintiffs target.  Plaintiffs claim students who attend CUSD schools experience trauma from being exposed to incidents of violence, poverty, discrimination, and other socioeconomic hardships *outside* of school. Plaintiffs assert that the social and community disadvantages students face growing up in the underprivileged areas served by CUSD constitute a disability, thereby entitling all Student Plaintiffs to the heightened protections and rights of Section 504 of the Rehabilitation Act of 1973[1] and the Americans with Disabilities Act of 1990 ("ADA").

Today, inner-city life can be difficult for youth and the consequences for some children are no doubt of major social concern.  In this suit, rather than address this nationally systemic issue, Plaintiffs instead target only CUSD, and request the *extraordinary* remedy of preliminary relief prior to *any* meaningful analysis of or ruling on their factual allegations, which largely may only be supported by expert opinion. Moreover, because Plaintiffs seek to judicially legislate an expansion of the definition of "disability" under federal law, obtaining preliminary relief after only the first hearing in this matter, summarily, and without giving the parties and this Court the benefit of time to test such material concepts is prejudicial and premature.

Plaintiff's Motion should be denied for failing to make the clear showing of likelihood of success on the merits, irreparable harm in the absence of the injunction,

---

[1] Section 504 of the Rehabilitation Act of 1973 is often commonly referred to, and as is done in this Opposition, as either "Section 504" or the "Rehabilitation Act."

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

and a balancing of the harm in their favor required by the heightened scrutiny they must overcome to obtain preliminary relief.  Otherwise ordering the requested relief would be beyond the Court's authority and allow Plaintiffs to dictate CUSD's educational policies and training which only CUSD through the State is permitted to do.

## II.

## <u>FACTUAL ALLEGATIONS</u>

Plaintiffs are comprised of students and teachers at CUSD schools.  Compl. ¶¶ 40-47.  The Student Plaintiffs allege they suffer from trauma stemming from "such causes as exposure to violence and loss, family disruptions related to deportation, incarceration and/or the foster system, systemic racism and discrimination, and the extreme stress of lacking basic necessities, such as not knowing where the next meal will come from or where to sleep that night."  Compl. ¶¶ 1, 73.[2]  Plaintiffs characterize multiple persistent sources of these experiences as "complex trauma" and use this term interchangeably with trauma.  Compl. ¶ 1.  Plaintiffs expressly allege that trauma limits Student Plaintiffs' "ability to learn, read, concentrate, think, [and] communicate" (Compl. ¶¶ 193, 216) and "affects [their] neurological and brain functions" (Pls.' Mem. P. & A. Supp. Mot. Prelim. Inj. ("Pls.' Mem.") 18).

Student Plaintiffs allege that they have "not been able to access [their] education" because CUSD does not have "a system of accommodations and modifications to address" their trauma.  Compl. ¶¶ 20, 26, 30, 33, 36.  It is asserted that CUSD has allegedly failed to reasonably accommodate students affected by trauma by having a lack of training on the issue, providing insufficient mental health support, and utilizing counterproductive exclusionary discipline practices.  Compl. ¶¶ 183-191.

---

[2] The Complaint further describes CUSD students experiencing trauma because of: routine exposure to traumatic violence (Compl. ¶¶ 75-84); death of or separation from a loved one (Compl. ¶¶ 85-90); placement in the foster system (Compl. ¶¶ 91-94); extreme poverty, homelessness, and other socioeconomic hardships (Compl. ¶¶ 95-97); discrimination and racism (Compl. ¶¶ 98-105); and co-incidence and prevalence of multiple/re-occurring traumatic events (Compl. ¶ 106).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

Contrary to Plaintiffs' allegations, CUSD is committed to providing a working and learning environment that understands and addresses the needs of its students and staff.  Decl. of Darin Brawley ¶ 5.  CUSD does not discriminate against its students on any basis and is not indifferent to the needs of its students—especially those who are disabled.  Decl. of Brawley ¶ 4.  CUSD accordingly has adopted and implemented numerous policies and procedures in place to train staff to recognize the needs of any disabled or special needs student and to adequately address those needs.  *See* Decl. of Brawley ¶¶ 26-35 (discussing CUSD's policies regarding non-discrimination, Section 504, individualized education plan referrals and practices, counseling services, staff development, disciplinary practices, procedural safeguards, parental notification, etc.).  In fact, to identify strengths and further improve in this area, CUSD brought in outside specialists in the field to conduct a comprehensive review of the programs and services offered to its students with disabilities in 2012.  Decl. of Brawley ¶¶ 13-25.

Though CUSD undertakes these steps to provide an appropriate public education to its students and meet the law's requirements, CUSD goes beyond to ensure its staff is adequately trained on all pertinent concepts that may ultimately benefit the students.  Hence, CUSD implemented a series of training sessions for CUSD teachers and staff two years ago on trauma awareness and sensitivity.  Decl. of Javon Jacobs ¶¶ 26-36.  For example, long before this suit was filed, CUSD planned to host a trauma training program called "Transforming Trauma in Schools" on July 28, 2015.  Decl. of Javon Jacobs ¶ 26.

Nevertheless, Plaintiffs filed their Class Action Complaint on May 18, 2015, alleging violations of the Rehabilitation Act, the ADA, and the Department of Education implementing regulations.  Docket No. 1.  Defendants responded with a Motion to Dismiss on July 9, 2015, which is set to be heard by the Court on August 17,

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

2015.  Docket No. 41.  A few hours after submitting the Motion to Dismiss,[3] Plaintiffs brought this Motion for Preliminary Injunction for an order forcing Defendants to implement a third-party's as of yet undefined training program to every single one of CUSD's personnel on "trauma-sensitive" practices.  Plaintiffs admit that the training being requested is "not sufficient" to provide Student Plaintiffs meaningful access to education and is only a "first step to accommodate students."  Pls.' Mem. 2, 14.

## III.

## LEGAL STANDARD ON A PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.* 555 US 7, 22 (2008).  A preliminary injunction is "never awarded as of right."  *Id*. at 26.  Thus, "plaintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this 'extraordinary remedy.'"  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (finding it proper to characterize such a request as a "heavy burden").

Furthermore, mandatory injunctions that alter the status quo by ordering a responsible party to take action are "particularly disfavored."  *Marlyn Nutraceuticals,*

---

[3] On June 25, 2015, counsel for Defendants contacted Plaintiffs' counsel to meet and confer on Defendants' intention to move to dismiss the Complaint pursuant to Local Rule 7-3, which was agreed to be held by teleconference on June 30, 2015.  Plaintiffs suggested the issue of class certification also be discussed at that time and each side exchanged summaries of the points for their respective motions. It was not until the end of this discussion that Plaintiffs' counsel commented in passing that they intended to seek the implementation of trauma-related training.  Defendants' counsel requested the terms of this training be made in a settlement offer for CUSD's consideration, but Plaintiffs' counsel stated the request must be in the form of a formal motion to ensure the training's implementation before the school-year's start and it would be filed "very soon."  The Motion for Preliminary Injunction with its fifteen supporting declarations was then filed hours after Defendants' Motion to Dismiss. Defendants contend the Court's Local Rules were not properly complied with by not appropriately meeting and conferring on the preliminary injunction issue which was filed as a formally noticed motion.  *See* Decl. of Kimble Cook ¶¶ 5-20; C.D. Cal. R. 7-3 (requiring conference prior to filing any *motion* and exempting only *applications* for preliminary injunctions); Pls.' Not. of Mot. & Mot. Prelim. Inj. (Docket 42) (failing to state required language regarding meet and confer conference).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

*Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009), *quoting Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1980).  Mandatory injunctions "are not granted unless extreme or very serious damage will result"; such relief is not appropriate in doubtful cases. *Id.*  Accordingly, "mandatory preliminary relief is *subject to heightened scrutiny* and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (emphasis added).

## IV.

## GRANTING THE REQUESTED PRELIMINARY RELIEF WOULD BE PREMATURE AND INAPPROPRIATE

**A.** **Consideration of the Preliminary Injunction Should Be Deferred Pending the Ruling on Defendants' Motion to Dismiss.**

As a matter of judicial economy, the Court should defer consideration of Plaintiffs' extraordinary request until after the Court has ruled on Defendants' pending Motion to Dismiss.  If Defendants' Motion to Dismiss is successful, Plaintiffs will then be required to substantially alter their allegations or there will be a complete dismissal rendering the present Motion moot.   Consequently, it is premature for such extraordinary relief to be ordered at this stage of the proceedings.

**B.** **CUSD Already Provides Appropriate Trauma-Sensitivity Training.**

CUSD is dedicated to upholding its responsibility to every child to properly formulate each individual student's education and provide required training.  CUSD not only has extensive policies, procedures, and regulations in place to provide the required meaningful access to education to its handicapped and non-handicapped students, but is actively engaged in bettering those practices in order to improve upon them. *See* Decl. of Brawley ¶¶ 5-35.  In fact, as recent as the fall of 2012, CUSD undertook long-term efforts to identify those aspects of its program that could be further developed by engaging experts and specialists from the Urban Special Education Leadership

ORBACH HUFF SUAREZ & HENDERSON LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Collaborative to conduct a comprehensive review of programs and services offered to students with disabilities.  Decl. of Brawley ¶¶ 13-25.

As a result of these policies and efforts, contrary to Plaintiffs' general allegations, CUSD already provides its personnel training on trauma sensitivity and awareness. Decl. of Brawley ¶¶ 6-12.  On July 28, 2015, for example, CUSD will host a trauma training program called "Transforming Trauma in Schools."  Decl. of Jacobs ¶¶ 26-36. This program is based on the Adolescent Provider Toolkit—a model that is utilized by the San Francisco Unified School District, Plaintiffs' own example of an effective approach to this issue (Pls.' Mem. 12; Compl. ¶ 171).  Decl. of Jacobs ¶¶ 27-36.  In fact, this model references the work and contributions of Plaintiffs' own experts, Bruce Perry and Joyce Dorado.  *Id.* at ¶ 27. Topics covered include the impact of trauma on learning, resiliency, trauma-informed schools, trauma informed strategies, nonviolent crisis prevention, nonverbal behavior, and staff fear and anxiety. *Id.* at ¶ 31. Planning for this specific training began well-before the filing of this litigation and is part of a series of training sessions for CUSD teachers and staff implemented two years ago with the working goal being to fully verse CUSD staff on these topics.  *Id.* at ¶ 32.

Plaintiffs' request is inappropriate in light of CUSD's current policies and both long and short-term practices to effectively meet all of its students' and staffs' needs. The Motion for Preliminary Injunction should be denied as CUSD already provides appropriate training thereby rendering the requested relief moot.

**C.    The Requested Third-Party Training Is Premature and Inappropriate.**

The Motion for Preliminary Injunction should be denied because it would prematurely and inappropriately force CUSD to integrate third-party training - that Plaintiffs have never fully described to Defendants or this Court - into CUSD's educational program.  CUSD must be able to determine the full extent of the impact and effectiveness that any proposed training may have on its staff and students prior to implementation.  A thorough review and evaluation by CUSD of all trainings, let alone

ORBACH HUFF SUAREZ & HENDERSON LLP

1  the proposed training, is necessary before it can be provided on any scale.  Decl. of

2  Brawley ¶¶ 133-135.

3  Plaintiffs seek CUSD to provide ChildTrauma Academy's programs and

4  materials to every CUSD employee.  *See* Pls.' Mem. 23.  However, it is not the place

5  of Plaintiffs to dictate what programs must be incorporated into CUSD's educational

6  policies or the methods to remedy any claimed violation of a yet to be expanded

7  definition of disability under federal law.   A preliminary injunction on the stated

8  grounds is premature because Plaintiffs' request for third-party training is ambiguous,

9  unenforceable, and unclear as to its potential impact and effectiveness.  Moreover, to

10  do so now on this summary basis would be without regard to the deference CUSD's

11  administrative professionals must be afforded when carrying out what is, from their

12  experience and training, in the best interests for CUSD's educational program.  Decl.

13  of Jacobs ¶ 39; *see* Sections V.B and V. C, *infra*.

14  Simply identifying a form of relief that "is feasible to implement on a short time

15  frame" and is "free of charge" in no way means that the relief *should* be implemented.

16  Pls.' Mem. 2.  The vague and open-endedness of the Motion's Proposed Order reveals

17  the ambiguity and unenforceability such an order would create.  *See* Proposed Order

18  Granting Prelim. Inj. [Docket No. 42-2].  Plaintiffs ask this Court to order CUSD to

19  train every single employee on the issues of complex trauma; said training must be in

20  accordance with successful research-based practices Plaintiffs identify (without regard

21  to CUSD's own programs, policies and training), and as early as possible.  *Id.*  Because

22  Plaintiffs state the relief only needs implementation as soon as reasonably possible (*id.*),

23  Plaintiffs concede it very well could take significant time to properly implement this

24  sort of training at the levels requested.  The Motion is therefore premature for seeking

25  an extraordinary relief that would not be in place for months and prior to the

26  Defendants' opportunity to even answer Plaintiffs' allegations or conduct any sort of

27  discovery thereon.

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

For these reasons alone, the Court should decline Plaintiffs' request for such orders mandating a particular type of third-party training for education professionals.

**D.      The Court Is Not Empowered to Dictate CUSD's Educational Policies.**

The Supreme Court has "cautioned that courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 208 (1982) (internal quotations omitted).  Accordingly, a U.S. District Court, in matters like the subject of this suit, may not dictate the policies and procedures to be implemented by a local California school district.  Even if the Court finds some merit to Plaintiffs' cause, the Court should decline to substitute its own notions of sound educational policy for those of the school authorities.  *D.R. ex rel. Courtney R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1141 (C.D. Cal. 2010).[4]

Courts must therefore defer to states and local agents because Congress intended those entities, not the judiciary, to have the primary responsibility of formulating each individual child's education.  *D.R.*, *supra*, 746 F. Supp. 2d at 1141.  While courts may determine whether the requirements of Congress' acts are met, "questions of methodology are for resolution by the States" and thus the local districts.  *Id.*, *quoting Rowley, supra*, 458 U.S. at 208.  If a violation of the Rehabilitation Act or the ADA exists, it is up to CUSD to determine the most appropriate methodology to remedy that violation including any necessary training.  Consequently, the entire concept of

---

[4] If not explicit, the policies supporting this concept are sound, as explained by the California Supreme Court: public education is an obligation which the State assumed by the adoption of the Constitution; the system of public schools, although administered through local districts created by the Legislature, is one system applicable to all the common schools; management and control of the public schools is a matter of State care and supervision through local districts as its agents; the Legislature's plenary power over public education is subject only to constitutional restrictions; and, most importantly, the State's ultimate responsibility for public education cannot be delegated to any other entity.  *See, e.g., Butt v. State of California*, 4 Cal. 4th 668, 680-81 (1992).

ORBACH HUFF SUAREZ & HENDERSON LLP

Plaintiffs' extraordinary Motion of forcing Plaintiffs' specific third-party training program on CUSD is improper.

It would be premature and inappropriate to issue the requested injunctive relief and replace the CUSD's discretionary role and expertise in these vital matters with the Court's orders.

## V.

## THE PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFFS FAIL TO MAKE THE REQUIRED CLEAR SHOWING THAT THEY ARE ENTITLED TO SUCH EXTRAORDINARY RELIEF

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, *supra*, 555 U.S. at 20. Only upon a *clear showing* of their entitlement to this extraordinary relief can Plaintiffs meet their burden. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

A preliminary injunction can take the form of a prohibitory injunction, meant to preserve the status quo pending the outcome of the action, or a mandatory injunction, which orders a party to take an affirmative action and goes well beyond simply maintaining the status quo. *Marlyn Nutraceuticals, Inc.*, *supra*, 571 F.3d at 879.  In light of a mandatory injunction's invasiveness by upending the status quo, any such requests for a mandatory injunction are "particularly disfavored." *Id.*  The Ninth Circuit Court of Appeals has held that when "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a mandatory preliminary injunction." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).  Accordingly, Courts require a mandatory injunction to be more closely scrutinized and subject to a heightened standard in order to provide the disfavored relief. *Dahl*, *supra*, 7 F.3d at 1403; *Schrier v. Univ. of Co.*,

ORBACH HUFF SUAREZ & HENDERSON LLP

427 F.3d 1253, 1259 (10th Cir. 2005) (stating that the heightened scrutiny is to "assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course").

The Motion generally seeks an order for CUSD to take the affirmative act of requiring CUSD to "train all CUSD teachers, administrators, and school-site staff." Pls.' Mem. 1.  Plaintiffs' therefore request a mandatory injunction—a disfavored remedy.  Thus, the Motion must be closely scrutinized under the heightened standard applied to mandatory injunctions—a burden which Plaintiffs fail to carry.

Plaintiffs' claims must fail because: (1) they do not allege or prove exhaustion of administrative remedies; (2) Student Plaintiffs are not disabled under the current law; (3) there is no showing that any alleged violation was "solely by reason" of a disability; and (4) they propose an inappropriate accommodation for all students who have experienced some type and degree of trauma.  Each of these reasons prevents a finding of likelihood of success on the merits.  Nor can it be said that irreparable harm would be suffered if this extraordinary remedy is properly refused.  As well, a balancing of the harms strongly favors Defendants in this instance.

Because the facts and law do not clearly favor Plaintiffs, they have not met the requisite heavy-burden of a clear showing and the Motion for Preliminary Injunction should be denied.

## A.  Plaintiffs Failed to Exhaust Their Administrative Remedies as Required.

Without needing to reach the subsequent issues presented, this Court should rule in Defendants' favor as a threshold matter because Plaintiffs failed to exhaust the requisite administrative remedies.[5]  Without complying with this obligation, judicial

---

[5] Defendants did not raise the issue of Plaintiffs' failure to exhaust administrative remedies in Defendants' Motion to Dismiss [Docket No. 41] because the Ninth Circuit recently ruled in line with sister circuits that "an unenumerated motion under Rule 12(b) is not the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted"; rather, the proper means is as an affirmative defense and may be asserted by way of summary judgment. *Albino v. Baca*,

ORBACH HUFF SUAREZ & HENDERSON LLP

intervention is unwarranted here and Plaintiffs cannot succeed on the merits.

Plaintiffs' responsibility to exhaust their administrative remedies is set forth in the Individuals with Disabilities Education Act's ("IDEA") rule of construction provision, which states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, [the ADA, the Rehabilitation Act,] or other Federal laws protecting the rights of children with disabilities, except that *before the filing of a civil action* under such laws seeking relief that is also available under [IDEA], the procedures under subsections (f) [impartial due process hearing] and (g) [appeal] *shall be exhausted* to the same extent *as would be required* had the action been brought under this subchapter [of the IDEA].

20 U.S.C. § 1415(l) (emphasis added).

Exhaustion of administrative remedies is "clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent." *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 875 (9th Cir. 2011) *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). As well, "exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a [free appropriate public education] to provide the basis for the cause of action." *Id.*

Courts rely on sound policy reasons to demand that these requirements be met prior to bringing suit—and to not hear actions that fail to abide by these requirements. "The exhaustion doctrine embodies the notion that 'agencies, not the courts, ought to

---

747 F.3d 1162, 1171 (9th Cir. 2014). As Defendants' Motion to Dismiss is yet to be ruled upon, Defendants have not had the opportunity to assert its affirmative defenses. Nevertheless, the issue is highly relevant for this Motion in light of the Court's required analysis of whether Plaintiffs will likely succeed on the merits of their claims.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1    have primary responsibility for the programs that Congress has charged them to
2    administer.'"  *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992),
3    *quoting McCarthy v. Madigan,* 503 U.S. 140, 112 (1992), *superseded by statute on*
4    *other grounds.*  The Ninth Circuit further expanded upon these policy considerations in
5    stating that "[e]xhaustion of the administrative process allows for the exercise of
6    discretion and educational expertise by state and local agencies, affords full exploration
7    of technical educational issues, furthers development of a complete factual record, and
8    promotes judicial efficiency by giving these agencies the first opportunity to correct
9    shortcomings in their educational programs for disabled children.  *Id.*

10           The goal of these policies is precisely what is wanting in the instant action and
11   the basis for why this Court is not positioned to intervene.  IDEA ensures the provision
12   of a free appropriate public education ("FAPE") and the ability to enforce rights
13   connected to the denial thereof.  *See* 20 U.S.C. § 1412.  By way of this lawsuit, Plaintiffs
14   look to this Court to enforce the provision of a free appropriate public education—via
15   claims specifically seeking a remedy or functional equivalent available under IDEA.
16   Compl. ¶¶ 67, 211-214 ("As a result of Defendants' policies, the student class members
17   do not receive a free appropriate public education."); *Payne, supra*, 653 F.3d at 875.
18   Moreover, CUSD not only has express policies and regulations in place to allow
19   Plaintiffs to exhaust the administrative remedies required by law, but also the policies
20   and procedures to ensure the provision of a FAPE in the first place.  *See* Decl. of
21   Brawley ¶¶ 36-132.

22           Accordingly, Plaintiffs' Motion should be denied because it cannot be shown
23   judicial intervention is appropriate without having first exhausted their administrative
24   remedies.  *Hoeft, supra*, 967 F.2d at 1310 (holding that "[u]ntil such remedies are
25   exhausted, judicial involvement in this dispute … is unwarranted.").

26   **B.     Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims.**

27           In order for Plaintiffs' Motion to be granted, it must be established that ultimately
28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs will likely succeed on the merits. *Winter, supra*, 555 U.S. at 20. To prove Plaintiffs' claims for violation of the Rehabilitation Act and the ADA,[6] Plaintiffs must show that: (1) they are an individual with a disability; (2) they are otherwise qualified to receive the program's benefits; (3) they were excluded from, denied the benefits of, or subject to discrimination under the program solely by reason of their disability; and (4) the program receives federal financial assistance. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.,* 570 F. Supp. 2d 1212, 1226 (E.D. Cal. 2008). It is not disputed that CUSD's educational program receives federal funding and the Student Plaintiffs are qualified to receive that program's benefits.

However, aside from this case ultimately needing to be dismissed for Plaintiffs' failure to exhaust administrative remedies, Plaintiffs are not likely to succeed in establishing their claims because the Student Plaintiffs are not recognized as individuals with a disability under the law nor can they demonstrate that any alleged denial was "solely by reason of" a disability as required. The requested accommodation is also not the response to the alleged violations required by the Rehabilitation Act or the ADA. Accordingly, the preliminary relief requested is inappropriate and should be denied.

1. <u>Plaintiffs Are Not Individuals with a Disability.</u>

Plaintiffs are not likely to succeed on the merits because they cannot establish a fundamental concept of their claims: that under the law Student Plaintiffs are individuals with a disability. The ADA defines "disability"[7] as, "with respect to an individual—a physical or mental impairment that substantially limits one or more major

---

[6] Since there is no significant difference in the analysis of the Rehabilitation Act and the ADA's rights and obligations, courts apply the same analysis to claims brought under both statutes. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002). Defendants' therefore address Plaintiffs claims in tandem.

[7] The Rehabilitation Act, for purposes of Section 504, defines "disability" and "individual with a disability" as "the meaning given to it" in 42 U.S.C. § 12102 of the Americans with Disabilities Act. 29 U.S.C. § 705(9)(B), (20)(B).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

life activities of such individual." 42 U.S.C. § 12102. "To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 765 (10th Cir. 2006).

Major life activities are defined, among other things, to include learning, reading, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A). Under the ADA, "a major life activity also includes the operation of a major bodily function, including but not limited to … neurological [and] brain … functions." *Id.* § 12102(2)(B). Plaintiffs expressly allege that trauma limits Student Plaintiffs' "ability to learn, read, concentrate, think, [and] communicate" (Compl. ¶¶ 193, 216) and "affects [their] neurological and brain functions" (Pls.' Mem. 18). Plaintiffs consequently identify one or more appropriate major life activities / major bodily functions. Still, the allegations fail to establish Plaintiffs' are individuals with a disability because "trauma" does not constitute a physical or mental impairment recognized under the law.

Student Plaintiffs attempt to navigate around this obvious defect in their theory by instead asserting they suffer from systemic environmental, cultural, and economic disadvantages. But such harms, while obviously real and of significant social concern, are insufficient under the present construct of the law to establish a likelihood of success on the merits. "[N]ot every impairment will constitute a disability within the meaning" of the ADA. 29 C.F.R. § 1630.2(j)(1)(ii). The law expressly limits recognized physical or mental impairments by excluding the systemic, socioeconomic disadvantages of which Plaintiffs complain. "Environmental, cultural, or economic disadvantages such as poverty, lack of education, or a prison record *are not impairments*." 29 C.F.R. app. § 1630.2(h) (emphasis added); *see also* 34 C.F.R. app. A to Part 104 ("[T]he definition specifies that only physical and mental handicaps are included. Thus, *environmental, cultural, and economic disadvantages are not in themselves covered*; nor are prison

ORBACH HUFF SUAREZ & HENDERSON LLP

records, age, or homosexuality.") (emphasis added); Cal. Educ. Code § 56026(e) (limiting covered physical and mental impairments by explicitly precluding students whose educational needs are "due primarily to … social maladjustment; or environmental, cultural, or economic factors" from being considered individuals with exceptional needs entitled to accommodation under Education Code section 56040).

Although Plaintiffs contend that evaluations have "confirmed" the trauma they suffer limits Plaintiffs' major life activities / major bodily functions (Pls.' Mem. 19), such sweeping conclusions do not establish the law's definition of "individual with a disability."  When the many anecdotes, statistics, and generalizations Plaintiffs assert about "trauma" suffered by children are set aside, all that remains is a description of the exact socioeconomic disadvantages excluded by law from the definition of disability. Compl. ¶ 73 (Plaintiffs' trauma is the "witnessing or experiencing violence; grief over the loss of family members and friends; the loss of a caregiver due to deportation, incarceration, or family separation; the causes and consequences of involvement in the foster system; extreme socioeconomic hardship and its attendant consequences, including homelessness; and discrimination and racism.").  Moreover, if the Court were to accept the allegations that the Student Plaintiffs are disabled individuals, it would effectively allow claimants to draw a geographic boundary and conclude that *all* persons who grow up within CUSD's alleged area of systemic "violence, poverty, and discrimination" are to be treated as disabled.  Compl. ¶ 74.  Such a concept is not the intent of the Rehabilitation Act and the ADA.  Under current law, trauma is not a recognized impairment.

2. There Was No Denial of Benefits Solely by Reason of a Disability.

In order to be successful on a violation under the Rehabilitation Act and the ADA, Plaintiffs must prove they were denied the benefits of CUSD's program "solely by reason" of their alleged disability—trauma.  29 U.S.C. § 794(a); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

Plaintiffs claim in the Motion that proof of discriminatory animus or effect is not required to establish a violation, instead focusing only on whether "meaningful access" is required.  Pls.' Mem. 19-20 (relying on *Alexander v. Choate*, 469 U.S. 287 (1985) and *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002)).  However, this assertion simply obscures from Plaintiffs' inability to make the required clear showing and—like the Motion points out was the flaw in *Lovell*—Plaintiffs' "argument misses the point." *Lovell*, *supra*, 303 F.3d at 1053.  Though a "qualified handicapped individual must be provided with meaningful access," neither *Choate* nor *Lovell* stand for the proposition that proving a violation of the Rehabilitation Act or the ADA does not require proof that any denial was "solely by reason of" the alleged disability.  *See Choate*, *supra*, 469 U.S. 287, 301; *Lovell*, *supra*, 303 F.3d 1039; *Duvall, supra*, 260 F.3d at 1135.

Accordingly, rather than showing intent or animus, a defendant's "*knowledge* of the disability is an essential element."  *Doe v. Eagle-Union Cmty. Sch. Corp.*, 101 F. Supp. 2d 707, 719 (S.D. Ind. 2000) (emphasis in original), *aff'd in part, vacated in part on other grounds*, 2 F. App'x 567 (7th Cir. 2001).  Naturally "some causal connection between the disability and the exclusion" must be present, otherwise there is no liability and the claim fails.  *Id.*; *see also Dutson v. Farmers Ins. Exch.*, 815 F. Supp. 349, 352 (D. Or. 1993) (dismissing the plaintiff's ADA claim upon finding "no evidence that defendants knew of plaintiff's handicap" because the plaintiff could only be "within the protected class of handicapped persons" under federal discrimination statutes if plaintiff "establish[ed] that defendants knew … he was handicapped"), *aff'd*, 35 F.3d 570 (9th Cir. 1994).

Furthermore, Student Plaintiffs assert they are denied meaningful access because, as a consequence of their "trauma-induced behavior," Student Plaintiffs struggle to master the "academic problems posed" and are subject to "punitive removals... suspensions, and expulsions."  Pls. Mem. 21.  However, the knowledge required of Defendants must be of the disability itself, not just the consequences thereof.  *See*

*Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist. #121*, No. 99 C 5818, 1999 WL 1044832, at *3 (N.D. Ill. Nov. 16, 1999), *citing Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995) (rejecting ADA liability because doing so when a defendant "indisputably had no knowledge of the disability, but knew of the disability's effects, far removed from the disability itself and with no obvious link to the disability, would create an enormous sphere of potential liability").

In place of showing CUSD knew (or was at least on notice) of Students Plaintiffs' claimed disability, Plaintiffs instead rely on insufficient inferences related solely to the causes or consequences of the alleged disability.  For example, Plaintiffs point to physical altercations and fighting for which they were disciplined, truancy and absences leading to a lack of credits/poor academic performance, and commonplace challenges with learning new material.  Compl. ¶¶ 20, 22, 23, 29, 33.  But it is totally inappropriate and without basis to charge CUSD with the assumption that each and every single instance of these students' bad acts, struggles, or misbehavior is due to their "disability" of trauma.   Instead, these scenarios reasonably can be attributed instead to the "immaturity or poor judgement" of youth.  *See Stearns*, *supra*, 1999 WL 1044832, at *3 (finding student-plaintiff's "DUI car accident was not indicative of alcoholism—as opposed to, say, immaturity or poor judgment"; thus, the school would and should not have assumed plaintiff was therefore an alcoholic); *see also* Decl. of Marleen Wong filed in support of Pls.' Mot. Prelim. Inj. ¶ 22 (stating a parent or teacher "may view a child's behavior as defiance or disobedience, rather than as a symptom of traumatic stress or complex trauma").

Without establishing CUSD's knowledge or at least notice, there is no likelihood of success on the merits here because Plaintiffs fail to show any alleged denial of meaningful access was "solely by reason of" Plaintiffs' trauma—that is, there was no denial "because of" a disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003) ("by reason of" a disability "essentially means that the plaintiff must prove that

the denial is 'because of' the disability").

### 3. Plaintiffs' Proposed Accommodation Is Not the Required Response to Their Claims.

In proposing to the Court what Plaintiffs assert is a reasonable accommodation, they fail to recognize that a remedy properly fashioned to address a violation of the Rehabilitation Act or the ADA does not require the implementation of that specific accommodation. As the ones best trained and situated to determine the educational needs of its students, Defendants not Plaintiffs should decide the right course for fashioning any remedy, if necessary. It is Plaintiffs' burden to show "the existence of a reasonable accommodation that would enable [them] to meet the educational institution's essential eligibility requirements." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1047 (9th Cir. 1999). The Ninth Circuit has stated that CUSD can then show that the requested accommodations would *either* require a fundamental or substantial modification of its program or standards *or* would not enable the student to meet its academic standards regardless of whether the accommodations are reasonable. *Id.*

To specifically address the protections afforded in the Rehabilitation Act, the Department of Education's implementing regulations require that CUSD "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). "[T]he provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are *designed to meet individual educational needs* of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements" of the other implementing regulations. *Id.* § 104.33(b)(1). The only guidance the Department of Education put forth for schools to meet and satisfy the Rehabilitation Act's standards was the "[i]mplementation of an Individualized

ORBACH HUFF SUAREZ & HENDERSON LLP

Education Program [IEP] developed in accordance with the Education of the Handicapped Act [IDEA]." *Id.* § 104.33(b)(2).

Consequently, CUSD has adopted and implement detailed policies and procedures for the provision of a free appropriate public education to disabled students in a manner that is uniquely designed to meet those students' needs and in adherence with the regulations. *See* Decl. of Brawley ¶¶ 36-132. Yet, Plaintiffs ask this Court to replace with its own orders the judgment of the educators who work with CUSD's disabled students day in and day out by forcing Plaintiffs' notions of what is right on CUSD and these children—despite not being the response contemplated by law. The requested accommodations therefore would amount to a fundamental and substantial modification to CUSD's IEP program and standards; as well, without being provided specially tailored services through an IEP, students suffering trauma (assuming such constitutes a disability) would not be enabled to meet academic standards under the requested accommodations. Decl. of Jacobs ¶¶ 38-39.

The crux of this inquiry, therefore, is will the harm be remedied by the accommodation if there truly has been a violation. Plaintiffs claim that their alleged disability limits their ability to "learn, read, concentrate, think, [and] communicate." Compl. ¶¶ 193, 216. Thus, for any accommodation to be both reasonable and appropriate, it must focus on addressing these specifics issues through an individual plan designed to ensure the student receives a free appropriate public education as the law requires (whether that be by way of specialized tutoring, extra testing time, personalized counseling, or any of the other numerous ways CUSD regularly accommodates its disabled students). Decl. of Jacobs ¶¶ 37-39.

Without needing to concede one way or the other whether nation-wide awareness on such issues of trauma would ultimately benefit our country's struggling inner-city children, Plaintiffs' proposed disability rights accommodations attempt to legislate this systemic problem through this Court using CUSD as the exemplar. The Court should

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1   decline this requested action and instead, after applying the statutes in question to

2   Plaintiffs' allegations, find the facts of this case do not call for or require CUSD to do

3   as Plaintiffs ask.  *See Choate*, *supra*, 469 U.S. at 306 ("Whatever the merits of this

4   conception of meaningful access, it is clear that § 504 does not require the changes

5   respondents seek.")

6        Based upon the foregoing, Plaintiffs fail to make a clear showing of likelihood of

7   success on the merits necessitating that their request for extraordinary relief be denied.

8   **C.   Plaintiffs Will Not Likely Be Irreparably Harmed in the Absence of the**

9        **Proposed Relief.**

10        For the Court to grant this extraordinary request, there must be a clear showing

11   that irreparable harm will likely be suffered if the preliminary relief is not provided.

12   *Winters*, *supra*, 555 U.S. at 20.  However, a preliminary injunction should not be issued

13   simply to prevent the "possibility of some remote future injury."  *Id.* at 22.  In fact, the

14   Supreme Court explained its disagreement with the Ninth Circuit's former "possibility"

15   approach by stating that the issuance of such relief "based only on a possibility of

16   irreparable harm is inconsistent with our characterization of injunctive relief as an

17   extraordinary remedy that may only be awarded upon a clear showing that the plaintiff

18   is entitled to such relief."  *Id.*; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

19   1131 (9th Cir. 2011) ("*Winter* explicitly rejected that approach.").  Furthermore, the

20   demonstration of only harm in the indefinite future is insufficient as the harm must be

21   real and immediate.  *Midgett v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846,

22   850 (9th Cir. 2001).  Hence, "[s]peculative injury does not constitute irreparable injury."

23   *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir.

24   1984).

25        Plaintiffs fail to meet their burden because they have done nothing more than

26   make broad assertions as to the possibility of some future, speculative harm.  The

27   Motion contends that the "denial of the full benefit of public education would cause

28

lifelong irreparable harm." Pls.' Mem. 25. However, Plaintiffs speak only to the occurrence of the full gamut of injuries if all aspects of the claimed violations were to continue, but preliminary relief is not appropriate solely because Student Plaintiffs could suffer irreparable injury without the final remedy of a successful trial on the merits. Rather, it must be shown irreparable harm would occur in the absence of just the specific relief currently being sought. *Winters*, *supra*, 555 U.S. at 22.

First, Plaintiffs fail to show the injunction itself would curb the risk of Student Plaintiffs being denied a FAPE. Plaintiffs proclaim that forcing CUSD to implement the desired training would only "*begin* to modify practices and policies to provide Student Plaintiffs with" a FAPE and it is "*only the initial component* of the full remedy necessary." Pls.' Mem. 1 (emphasis added). Even the "nation's leading expert" on the issue describes the training as "intended to be *an introduction* to trauma for educators and … the *framework* upon which *more in-depth program elements*" will be necessary. Decl. of Perry ¶ 41 (emphasis added). Because the proposed training merely begins to address any alleged violations as one of many steps to actually do so, this preliminary relief fails to establish a sufficient causal connection between the actual injury faced (denial of a FAPE) and the conduct required by the injunction (training) "such that the injunction would effectively curb the risk" of irreparable injury in its absence. *Garcia v. Google, Inc.*, 766 F.3d 929, 938 (9th Cir. 2014), *on reh'g en banc,* 786 F.3d 733, 746 (9th Cir. 2015) ("The district court did not abuse its discretion in determining that Garcia failed to muster a clear showing of irreparable harm."). Accordingly, any harm faced without the immediate implementation of the training would not be irreparable.

Plaintiffs rely on *D.R. ex rel. Courtney R. v. Antelope Valley Union High School District, supra,* 746 F. Supp. 2d 1132 (C.D. Cal. 2010) ("*D.R.*") to support the likelihood of irreparable harm. *D.R.* is clearly distinguishable from the present matter because there was no question that the injunctive relief would immediately resolve the real harm the student faced. In *D.R.*, the student-plaintiff claimed a denial of meaningful access

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

to education because her recognized disability required elevator access for which she had to wait for a school representative to operate each time she needed to use an elevator; thus, the plaintiff "frequently missed 10 to 45 minutes of class while waiting." *Id*. at 1145.  The plaintiff merely sought the use of a key for the elevator to eliminate the delay in use and subsequent missed class time.  *Id.* at 1137.  Hence, the preliminary relief was directly connected to and would curb the harm that the plaintiff faced.  The circumstances of *D.R.* do not resemble those faced by Student Plaintiffs here—the training requested simply would not accommodate their harm with the turn of a key. *See* Pls.' Mem. 12 (describing the multi-faceted approach "require[d]" to "effectively" accommodate such students).

Second, assuming the training was sufficiently tied to the injury faced allowing for such extraordinary relief, any harm likely to be suffered is mere speculation of some remote future injury, constituting nothing more than an insufficient possibility of irreparable harm.  The reality of Plaintiffs' request is that, for there to be real and immediate irreparable harm, an exhaustive list of assumptions would have to be made. For example, it must be assumed that it is imminent a student will engage in some conduct or activity that is harmful to the student; assumed that this conduct is because of the student's substantial limitation due to exposure to some type and degree of trauma; assumed that the student will somehow miss out on the benefits of CUSD's educational program because of that substantial limitation; assumed that CUSD teachers, administrators, or school staff would not otherwise "locate and notify" the student based upon other criteria; assumed that CUSD teachers, administrators, or school staff would avert that denial of benefits because they were given the requested training; and assumed that the requested training would actually enable CUSD personnel to effectively intervene in that instance.  These assumptions demonstrate how speculative and remote the "possibility" of this harm is and why Plaintiffs are not entitled to the extraordinary remedy of immediate implementation prior to affording

CUSD the full course of due process in this litigation.

Therefore, Plaintiffs have not made the clear showing of likelihood of irreparable harm in the absence of the injunction that should be denied.

**D.     The Preliminary Injunction's Resulting Harm to Defendants Outweighs the Threatened Injury to Plaintiffs.**

The preliminary injunction should not be granted here as Plaintiffs do not establish a clear showing that the balance of harms tips in their favor.  A "court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987).  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).[8]

It was stated at the outset that Plaintiffs face a difficult task in proving the heavy burden of their request.  *Earth Island Inst.*, *supra*, 626 F.3d at 469.  Yet, Plaintiffs use a mere three sentences to encompass their entire position on one of the most critical and fundamental elements of preliminary relief.  Pls.' Mem. 25.  Moreover, the proposition that Defendants' "only possible interest" in this matter is financial is a perfect exemplification of the narrow view and thin conclusions Plaintiffs are applying to this matter. *Id.*

On its face, the harm Student Plaintiffs would suffer in the absence of this preliminary relief would be the denial of meaningful access to education.  No doubt a serious contention if true, but in reality does not and will not occur.  Plaintiffs admit that the training being requested is "not sufficient" to provide the FAPE required by

---

[8] Assessing the harm to the opposing party and weighing the public interest "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

law.  Pls.' Mem. 2, 14.  Being only a "first step to accommodate students," the relief requested does not rise to the urgency or extraordinary level necessitating preliminary relief.  Pls.' Mem. 14.

However, on the other side of the scale, the harm which Defendants would face if the injunction were granted is not only considerable but could ultimately cause great harm to both Student Plaintiffs and third-parties not parties to this litigation including teachers, administrators, parents, and other CUSD students.  Defendants' primary interest in opposing the Motion is not financial, but rather the very well-being and interests of all impacted persons. If the requested training is implemented without proper and prior evaluation, CUSD teachers, administrators, and staff would then perhaps apply incorrect methods in their interactions with CUSD students—causing endless ramifications from erroneously labeling non-handicapped students as disabled to incorrectly refusing to enforce proven disciplinary practices.  Teachers, students, and parents would receive mixed messages as what is permissible and the consequences of certain conduct.  In effect, years of established policies and procedures would be upended with a "single training session of less than a day." Pls.' Mem. 15.  Any sort of such false sense of a remedy cannot be permitted and is not well grounded in the realistic administration of school district policies and training on such vital matters.

Furthermore, simply asserting the training is one response to the claimed violations does not establish authority that it is the sole or best response—let alone the required response.  If a student in a wheelchair hypothetically claimed a violation for lack of access at CUSD schools and the need for immediate relief, that student would absolutely not be permitted to direct whether CUSD must provide a ramp rather than an elevator lift where either would suffice; such a decision would clearly be in Defendants' sole and sound discretion as trained school officials.  Again, neither Plaintiffs nor the Court are empowered to dictate CUSD's approach to its educational policies and training—a role reserved for the legislature and Defendants only. *See Rowley*, *supra*,

458 U.S. 176; *D.R., supra*, 746 F. Supp. 2d 1132.  Nor should this litigation similarly attempt to address systemic socioeconomic issues outside the bounds of the federal statutes at issue.  29 C.F.R. app. § 1630.2(h) (environmental, cultural, and economic disadvantages are not an impairment).  Providing the requested relief would overstep these bounds and represents the very harm to Defendants that outweighs Plaintiffs' "showing" in this instance.

Moreover, many unknowns surround Plaintiffs' requested relief.   As the requested training is the mere "introduction" to and "framework" for "more in-depth program elements," it seems as Plaintiffs' request is portrayed more as a sales-pitch than as an effort to help the disabled.  Decl. of Perry ¶ 41 ("The ChildTrauma Academy would be willing to further expand upon these elements and process.")  Would the necessary subsequent trainings be for a fee?  Would the Court also order CUSD to undertake this third-party's training at a fee regardless of the financial impact upon the school district?

Therefore, Plaintiffs fail to make the clear showing required on any of the elements permitting preliminary relief, especially in light of the heightened scrutiny required by the Court in this instance.  Accordingly, the Motion should be denied.

## VI.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that Plaintiffs' Motion for Preliminary Injunction be denied.

DATED:  July 27, 2015        **ORBACH HUFF SUAREZ & HENDERSON LLP**

By:  _____ /s/ David M. Huff _____
          David M. Huff, Esq.
          Enrique M. Vassallo, Esq.
          Kimble R. Cook, Esq.
          Jeremy P. Ehrlich, Esq.
          Attorneys for Defendants COMPTON UNIFIED
          SCHOOL DISTRICT, DARIN BRAWLEY, MICAH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORBACH HUFF SUAREZ & HENDERSON LLP

ALI, SATRA ZURITA, MARGIE GARRETT, CHARLES DAVIS, SKYY FISHER, EMMA SHARIF, and MAE THOMAS

26