**David M. Huff, Esq. (State Bar No. 161607)**
**dhuff@ohshlaw.com**
**Enrique M. Vassallo, Esq. (State Bar No. 153778)**
**evassallo@ohshlaw.com**
**Kimble R. Cook, Esq. (State Bar No. 163148)**
**kcook@ohshlaw.com**
**Jeremy P. Ehrlich, Esq. (State Bar No. 284656)**
**jpehrlich@ohshlaw.com**
**ORBACH HUFF SUAREZ & HENDERSON LLP**
**1901 Avenue of the Stars, Suite 575**
**Los Angeles, California 90067-6007**
**Telephone:  (310) 788-9200**
**Facsimile: (310) 788-9210**

Attorneys for Defendants
COMPTON UNIFIED SCHOOL DISTRICT,
DARIN BRAWLEY, MICAH ALI, SATRA ZURITA, MARGIE GARRETT,
CHARLES DAVIS, SKYY FISHER, EMMA SHARIF and MAE THOMAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER P., a minor, by Carolina Melendrez, guardian ad litem; KIMBERLY CERVANTES; PHILLIP W., a minor, by Beatrice W. guardian ad litem; VIRGIL W., a minor, by Beatrice W., guardian ad litem; DONTE J., a minor, by Lavinia J., guardian ad litem; on behalf of themselves and all others similarly situated; RODNEY CURRY; ARMANDO CASTRO II; and MAUREEN MCCOY,<br><br>       Plaintiffs,<br><br>v.<br><br>COMPTON UNIFIED SCHOOL DISTRICT; DARIN BRAWLEY, in his official capacity as Superintendent of | CASE NO. LA CV15-3726 MWF (PLAx)<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:       August 17, 2015<br>Time:      10:00 A.M.<br>Ctrm.:     1600<br>Judge:   Hon. Michael W. Fitzgerald<br><br>Complaint Filed:   May 18, 2015 |

ORBACH HUFF SUAREZ & HENDERSON LLP

1  Compton Unified School District;
2  MICAH ALI, SATRA ZURITA,
   MARGIE GARRETT, CHARLES
3  DAVIS, SKYY FISHER, EMMA
   SHARIF and MAE THOMAS, in their
4  official capacities as members of the
   Board of Trustees of Compton Unified
5  School District,

6                    Defendants.

7

8

9          Defendant Compton Unified School District (hereafter "CUSD"), and

10  Defendants Darin Brawley, Micah Ali, Satra Zurita, Margie Garrett, Charles Davis,

11  Skyy Fisher, Emma Sharif, and Mae Thomas (hereafter collectively the "Individual

12  Defendants"), hereby oppose the Motion for Class Certification filed by Plaintiffs Peter

13  P., Kimberly Cervantes, Phillip W., Virgil W., and Donte J., on behalf of themselves

14  and all others similarly situated (hereafter collectively the "Student Plaintiffs"), and

15  submit the following Memorandum of Points and Authorities in Opposition thereto.

16

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

ORBACH HUFF SUAREZ & HENDERSON LLP

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................1

II.     FACTUAL ALLEGATIONS ........................................................................1

III.    LEGAL STANDARD FOR CLASS CERTIFICATION ...........................3

IV.     PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE
        PROPOSED CLASS IS INHERENTLY TOO INDEFINITE TO BE
        CERTIFIED ..................................................................................................4

V.      PLAINTIFFS' MOTION FOR CERTIFICATION SHOULD BE
        DENIED FOR FAILURE TO SATISFY THE REQUIREMENTS OF
        RULE 23(a) ...................................................................................................8

        A.     Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to
               Establish the Numerosity Required by Rule 23(a)(1)...........................8

        B.     Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to
               Establish the Commonality Required by Rule 23(a)(2)......................11

               1.     Commonality Is Not Present Because Each Student's Claim
                      Is Based on Individualized Questions of Law and Fact. ..........12

               2.     Commonality Is Not Present Because No Uniform
                      Resolution Is Possible to Create Classwide Relief..................17

        C.     Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to
               Establish the Typicality Required by Rule 23(a)(3). .........................19

               1.     The Student Plaintiffs' Claims Are Not Typical of the Class
                      Because of Their Individual Harm Suffered and Interests
                      Possessed..................................................................................20

               2.     The Student Plaintiffs' Claims Are Not Typical of the Class
                      Because They Have Failed to Exhaust Their Administrative
                      Remedies...................................................................................20

        D.     Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to
               Establish the Fair and Adequate Representation Required by Rule
               23(a)(4)...............................................................................................22

VI.     PLAINTIFFS' MOTION FOR CERTIFICATION SHOULD BE
        DENIED FOR FAILURE TO MEET THE CONDITIONS OF RULE
        23(b)(2)........................................................................................................23

VII.    CONCLUSION ...........................................................................................25

ORBACH HUFF SUAREZ & HENDERSON LLP

i

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3

*Albino v. Baca*,
4
    747 F.3d 1162 (9th Cir. 2014)........................................................................21

5

*Califano v. Yamasaki*,
6
    442 U.S. 682 (1979) ....................................................................................3

7

*Carrera v. Bayer Corporation*,
8
    727 F.3d 300 (3d Cir. 2013)........................................................................7

9

*Crawford v. Honig*,
    37 F.3d 485 (9th Cir. 1994)........................................................................22
10

*Daniel F. v. Blue Shield of California*,
11
    305 F.R.D. 115 (N.D. Cal. 2014)...........................................................4, 23

12

*DeBremaecker v. Short*,
13
    433 F.2d 733 (5th Cir. 1970)......................................................................5

14

*Eisenburg v. Gagnon*,
15
    766 F.2d 770 (3rd Cir. 1985) .....................................................................19

16

*General Telephone Company of Southwest v. Falcon*,
17
    457 U.S. 14 (1982) .............................................................................passim

18

*Hoeft v. Tucson Unified School District*,
    967 F.2d 1298 (9th Cir. 1992).....................................................................22
19

20

*In re Allstate Ins. Co.*,
    400 F.3d 505 (7th Cir. 2005).......................................................................24

21

*In re Hydrogen Peroxide Antitrust Litigation*,
22
    552 F.3d 305 (3d Cir. 2009).........................................................................4

23

*J.B. ex rel. Hart v. Valdez*,
24
    186 F.3d 1280 (10th Cir. 1999)...................................................................16

25

*Jamie S. v. Milwaukee Public Schools*,
26
    668 F.3d 481 (7th Cir. 2012)...............................................................passim

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

*Kamm v. California City Development Company*,
  509 F.2d 205, 209-10 (9th Cir. 1975) ...................................................................25

*Langbecker v. Electronic Data Systems Corporation*,
  476 F.3d 299 (5th Cir. 2007)...............................................................................24

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012)...................................................................11, 13, 14

*Marcus v. BMW of North America*,
  687 F.3d 583 (3rd Cir. 2012) .................................................................................4, 9

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014)...................................................................................15, 16

*Payne v. Peninsula School District*,
  653 F.3d 863 (9th Cir. 2011)...................................................................................21, 22

*Reinholdson v. State of Minnesota*,
  No. CIV. 02-795 ADM/AJB, 2002 WL 31026580 (D. Minn. Sept. 9, 2002) ....14, 15

*Roe v. Town of Highland*,
  909 F.2d 1097 (7th Cir. 1990)...................................................................................9

*Taylor v. Screening Reports, Inc.*,
  289 F.R.D. 370 (N.D. Ga. 2013)...............................................................................9

*Vietnam Veterans of America v. C.I.A.*,
  288 F.R.D. 192 (N.D. Cal. 2012) .............................................................................5

*Wal-Mart Stores, Incorporated v. Dukes*,
  131 S. Ct. 2541 (2011) ...................................................................................passim

*Zeidman v. J. Ray McDermott & Company*,
  651 F.2d 1030 (5th Cir. 1981)...............................................................................8, 9, 10

**Statutes**

20 U.S.C. § 1412 .........................................................................................................21

20 U.S.C. § 1415 .........................................................................................................21

29 U.S.C. § 794 ...........................................................................................................2

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Other Authorities**

American Psychiatric Association,
*Highlights of Changes from DSM-IV-TR to DSM-5*, 2013 ......................................... 8

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................. passim

Fed. R. Civ. P. 23(b) ................................................................................. passim

**Regulations**

34 C.F.R. § 104.33 ................................................................................. 7, 17

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# I.

# **INTRODUCTION**

Plaintiffs ask this Court to certify a proposed class of CUSD students despite the individual nature of each student's claims and the incapability of a uniform resolution for all class members. Plaintiffs' Motion for Class Certification ("Motion for Certification") should be denied based upon: (1) the inherent indefiniteness of the proposed class; (2) the failure to satisfy Rule 23(a) requirements of numerosity, commonality, typicality, and fair and adequate representation; and (3) the failure to satisfy Rule 23(b)(2).

Both the representative Student Plaintiffs and the individual class members' claims arise out of highly individualized circumstances with vastly different situations, harms, and interests, thereby preventing the ability to obtain either uniform relief for any one class member or class-wide resolution as a whole. The district-wide trauma-sensitive practices Plaintiffs claim are necessary would not provide appropriate, final relief to each class member and any alternative relief would require highly individualized determinations to address the widely-varying circumstances of each particular class member. The Federal Rules' purpose in allowing class actions for judicial economy and the interests of the class members would not be satisfied here by certification. Class treatment is therefore inappropriate in this matter and the Court should deny Plaintiff's Motion for Certification.

# II.

# **FACTUAL ALLEGATIONS**

Plaintiffs are comprised of students and teachers at CUSD schools. Compl. ¶¶ 40-47. The Student Plaintiffs allege they suffer from trauma stemming from socioeconomic disadvantages such as "exposure to violence and loss, family disruptions related to deportation, incarceration and/or the foster system, systemic racism and discrimination, and the extreme stress of lacking basic necessities, such as not knowing

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ORBACH HUFF SUAREZ & HENDERSON LLP

**ORBACH HUFF SUAREZ & HENDERSON LLP**

where the next meal will come from or where to sleep that night."  Compl. ¶¶ 1, 73.[1] Plaintiffs characterize multiple persistent sources of these experiences as "complex trauma" and use this term interchangeably with trauma.  Compl. ¶ 1.  Plaintiffs allege that trauma limits Student Plaintiffs' "ability to learn, read, concentrate, think, [and] communicate" (Compl. ¶¶ 193, 216) and "affects [their] neurological [and] brain functions" (Pls.' Mem. P. & A. Supp. Mot. Class Certification ("Pls.' Mem.") 11). Student Plaintiffs assert that their and all similarly situated CUSD students' exposure to trauma automatically "constitute[s] a disability."  Pls.' Mem. 11.

It is claimed that as a result Student Plaintiffs have "not been able to access [their] education" because CUSD does not have "a system of accommodations and modifications to address" their trauma.  Compl. ¶¶ 20, 26, 30, 33, 36.  CUSD has allegedly failed to reasonably accommodate students affected by trauma by having a lack of training on the issue, providing insufficient mental health support, and utilizing counterproductive exclusionary discipline practices.  Compl. ¶¶ 183-191.

Plaintiffs filed this suit claiming violations of Section 504 of the Rehabilitation Act of 1973[2] and the Americans with Disabilities Act of 1990 ("ADA").  The Motion for Certification asks the Court to certify the following proposed class:

> All present and future students in Compton Unified School District with trauma-induced disabilities, as defined under Section 504 of the Rehabilitation Act and Americans with Disabilities Act, who are, will be, or have been denied meaningful access to education.

---

[1] The Complaint further describes CUSD students experiencing trauma because of: routine exposure to traumatic violence (Compl. ¶¶ 75-84); death of or separation from a loved one (Compl. ¶¶ 85-90); placement in the foster system (Compl. ¶¶ 91-94); extreme poverty, homelessness, and other socioeconomic hardships (Compl. ¶¶ 95-97); discrimination and racism (Compl. ¶¶ 98-105); and co-incidence and prevalence of multiple/re-occurring traumatic events (Compl. ¶ 106).

[2] Section 504 of the Rehabilitation Act of 1973 is often commonly referred to, and as is done in this Opposition, as either "Section 504" or the "Rehabilitation Act."

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Pls.' Mem. 4-5.  "The class includes, but is not limited to, students with trauma-related conditions recognized by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), including post-traumatic stress, anxiety, dissociative, conduct, somatoform, depressive, and substance-related and addictive disorders."  Compl. ¶ 55; Pls.' Mem. 5.

CUSD is committed, however, to providing a working and learning environment that understands and addresses the needs of all students and staff.  Decl. of Darin Brawley ¶ 5.  CUSD does not discriminate against its students on any basis and is not indifferent to the needs of its students—especially those who are disabled.  Decl. of Brawley ¶ 4.  CUSD accordingly has adopted and implemented numerous policies and procedures to train staff to recognize the needs of any disabled or special needs student and to adequately address those needs.  Decl. of Brawley ¶¶ 26-35.  CUSD also has detailed policies and procedures for the provision of a free appropriate public education to disabled students in a manner that is uniquely designed to meet those students' needs and in adherence with the applicable regulations.  *See* Decl. of Brawley ¶¶ 36-132.  Furthermore, without being provided specially tailored services through an Individualized Education Program ("IEP"), students suffering trauma (assuming such constitutes a disability) would not be enabled to meet academic standards as a whole under the requested accommodations.  Decl. of Jacobs ¶¶ 38.

## III.

## LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  Under the Federal Rules, certification of Plaintiffs' proposed class should be allowed "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

ORBACH HUFF SUAREZ & HENDERSON LLP

or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to proving each of Rule 23(a)'s requirements, Plaintiffs must also establish grounds under Rule 23(b) upon which the class may be maintained. *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 120 (N.D. Cal. 2014) ("Plaintiffs must prove… at least one of the requirements of Rule 23(b).").

The requirements of Rule 23 do not, however, set forth a mere pleading standard. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, *supra,* 131 S. Ct. at 2551. In discussing Plaintiffs' burden in seeking class certification, the court in *Marcus v. BMW of North America* explained:

> "[T]he requirements set out in Rule 23 are not mere pleading rules." [Citation.] The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. [Citation.] Echoing the Supreme Court, we have repeatedly "emphasize[d] that '[a]ctual, not presumed[,] conformance' with Rule 23 requirements is essential." [Citation.]

687 F.3d 583, 591 (3rd Cir. 2012), *citing Dukes, supra,* 131 S. Ct. 2541, and *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009).

## IV.

## PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE PROPOSED CLASS IS INHERENTLY TOO INDEFINITE TO BE CERTIFIED

Plaintiffs' proposed class should not be certified because the members and their claims cannot be appropriately ascertained or identified. "While it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented *must be adequately defined and clearly*

ORBACH HUFF SUAREZ & HENDERSON LLP

*ascertainable*.'"  *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012), *quoting DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) (emphasis added).

In the factually analogous case of *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012), the Seventh Circuit found that one basis for reversing the district court's class certification was that the indefiniteness of the class created an "obvious defect" prohibiting certification.  There, a cognitively-impaired student, Jamie S., and six other students with disabilities ranging from Asperger's to various emotional disturbances brought a putative class action against Milwaukee Public Schools and Wisconsin's Department of Public Instruction seeking structural reform of special education for various "systemic" violations of the Individuals with Disabilities Education Act ("IDEA").  *Id.* at 485.  The plaintiffs brought suit on behalf of themselves and a class of "all school age children with disabilities who reside in the Milwaukee Public School District boundaries and who are or may be eligible for special education and related services under IDEA and Wisconsin law."  *Id.*

The court in *Jamie S.* held that the district court's rejection of the plaintiff's initially proposed class was proper because it "effectively included all students eligible for special education and related services."  *Id.* at 493.  While the district court's rejection of "this sweeping class definition" was "based on IDEA's requirement that administrative remedies be exhausted before filing suit"—an impediment similarly faced by Plaintiffs in this case (*see* Section V.C.2, *infra*)—the Seventh Circuit was clear when stating certification denial would also be appropriate "for the obvious reason that [the proposed class] sought to lump together thousands of disparate plaintiffs with widely varying individual claims."  *Id*. at 493.  Although the lower court in *Jamie S.* certified a narrower class of its own creation in attempts to get around the exhaustion

of remedies issue,[3] the Seventh Circuit nevertheless determined that a "significant segment of the class (of unknown and unknowable size) comprises disabled students who may have been eligible for special education but were *not identified* and *remain unidentified.*" *Id.* at 495 (emphasis in original).

The reasoning provided in *Jamie S.* for refusing certification based on the indefiniteness of the proposed class was that:

> The problem with a class of potentially eligible but unidentified students is not that their rights might not been violated but that the relevant criteria for class membership are unknown. By what standard is class membership to be determined? … It's not hard to see how this class lacks the definiteness required for class certification; there is no way to know or readily ascertain who is a member of the class…. *[I]dentifying disabled students* who might be eligible for special-education services *is a complex, highly individualized task, and cannot be reduced to the application of a set of simple, objective criteria….* In short, a class of unidentified but potentially IDEA-eligible disabled students is inherently too indefinite to be certified…. In theory such a class might make sense if the process of identifying unknown class members was relatively simple. But *because the task of identifying learning-disabled children is a long, arduous process, and the proposed class of plaintiffs [is] so highly diverse and so difficult to identify*, we [hold] that the class [is] not adequately defined or nearly ascertainable and the class action [cannot] be maintained.

*Id.* at 495-96 (emphasis added, internal citations and quotations omitted).

---

[3] The class ultimately certified by the district court in *Jamie S.* was defined as: "Those students eligible for special education services from the Milwaukee Public School System who are, have been or will be either denied or delayed entry or participation in the processes which result in a properly constituted meeting between the IEP team and the parents or guardians of the student." *Id.* at 495.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, like that in *Jamie S.*, Plaintiffs' proposed class is indefinite.  Plaintiffs seek to certify a class that can be characterized as all CUSD students who have any one of a number of their major life activities substantially limited, who have or will ever suffer from any form of trauma whatsoever, and who could benefit from any sort of accommodation for many potential impediments.  *See* Compl. ¶ 55; Pls.' Mem. 4-5.  Consequently, the bounds on membership in Plaintiffs' proposed class are almost limitless, except that the members must attend CUSD schools.

Certification of this class would require bypassing the "long, arduous process" of identifying children who suffer from trauma by seemingly applying a "set of simple, objective criteria" to a group that is "so highly diverse and so difficult to identify." *Jamie S.*, *supra*, 668 F.3d at 495-96.  Plaintiffs attempt to refute this by claiming district-wide trauma-sensitive practices are the only means of accommodating students, but this allegation merely circumvents their inability to establish the requirements of Rule 23. Pls.' Mem. 16.  This global approach ignores the fact that, to achieve a free appropriate public education under the Rehabilitation Act, schools are required to provide "regular or special education and related aids and services" that are "*designed to meet individual educational needs* of handicapped persons."  34 C.F.R. § 104.33(b)(1) (emphasis added).  If a student is not receiving meaningful access to education, the necessary response is the development of an individualized education plan—and the need for such individual responses required by law results in a proposed class neither adequately defined nor clearly ascertainable.  Decl. of Jacobs ¶¶ 38, 50; *Carrera v. Bayer Corporation*, 727 F.3d 300, 305 (3d Cir. 2013) (finding a class is inappropriate where members must be identified by extensive and individualized fact-finding).

Moreover, assuming *in arguendo* that Student Plaintiffs' alleged "disability" could be characterized by the effects described in the Diagnostic and Statistical Manual of Mental Disorders as claimed (Pls.' Mem. 5), the extent of the class still could not be fully ascertained for the fact that the multitude of conditions attributed by the DSM-5

7

ORBACH HUFF SUAREZ & HENDERSON LLP

as "trauma-related" are both far-reaching and ever-changing. *See, e.g.,* American Psychiatric Association, *Highlights of Changes from DSM-IV-TR to DSM-5*, 2013, *available at* http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf (discussing *some* of the DSM's major changes in conditions from just its fourth to fifth versions).  An effect of trauma may not have been one in the past or be one in the future leading to a continually unascertainable class.  Additionally, Plaintiffs' vague definition nevertheless fails to set the limits on the universe of potential class members.  Compl. ¶ 55 ("The class includes, *but is not limited to*, students with trauma-related conditions recognized by the [DSM-5]…") (emphasis added).

Therefore, Plaintiffs' Motion for Certification should be denied based on the inherent indefiniteness of the proposed class that seeks to lump together an unascertainable amount of disparate plaintiffs with widely varying individual claims.

## V.

## PLAINTIFFS' MOTION FOR CERTIFICATION SHOULD BE DENIED FOR FAILURE TO SATISFY THE REQUIREMENTS OF RULE 23(a)

In addition to the obvious indefiniteness of Plaintiffs' class, the Motion for Certification should also be denied on the grounds that Plaintiffs cannot properly satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and fair and adequate representation.  Fed. R. Civ. P. 23(a).

## A.   Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to Establish the Numerosity Required by Rule 23(a)(1).

Plaintiffs have not established that the class is "so numerous that joinder of all members is impracticable" because only conclusory allegations with no reasonable basis have been put forward to satisfy the numerosity prerequisite of Rule 23.  Fed. R. Civ. P. 23(a)(1).  "[A] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).  While the actual number of

class members is not necessarily the determinative question (*id.*), a court "*may not rely upon mere speculation*, no matter how reasonable the speculation appears." *Taylor v. Screening Reports, Inc.*, 289 F.R.D. 370, 373 (N.D. Ga. 2013) (emphasis added); *see also Marcus v. BMW, supra*, 687 F.3d at 596 ("Mere speculation is insufficient."); *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n. 4 (7th Cir. 1990) ("The party supporting the class cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity.") (quotation marks omitted).  Additionally, "a number of facts other than the actual or estimated number of purported class members" are also highly relevant to the question of numerosity. *Zeidman*, *supra,* 651 F.2d at 1038.  These other critical factors "include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.*

To show joinder of all members is impracticable, Plaintiffs hypothesize through mere guesswork that numerosity is present here, but such conclusory allegations are insufficient to meet their burden.  For support, Plaintiffs speculate that "CUSD serves a student population that is *highly likely* to be *exposed* to complex trauma" and "the class constitutes a *significant percentage* of students" enrolled in CUSD.  Compl. ¶ 56 (emphasis added).  However, nothing further justifies these contentions other than generalized, anecdotal allegations. Pls.' Mem. 9-10.  Plaintiffs erroneously conclude that the vast majority of CUSD students experience adverse childhood experiences from their assertion that "Compton is among the most socioeconomically distressed cities in California, and it experiences high rates of violent crime."  Pls.' Mem. 10.  Plaintiffs stretch their contention further by essentially declaring that any CUSD students who have an adverse childhood experience are therefore automatically disabled. *Id.*  These sweeping conclusions that the majority of present and future CUSD students categorically are and will be disabled do not support numerosity.

In addition to the vagueness of what "percentage" of students are "highly likely"

ORBACH HUFF SUAREZ & HENDERSON LLP

to be exposed to trauma (Compl. ¶ 56), Plaintiffs have not provided a reasonable basis for the issue actually in question: whether there are enough students whose rights have been violated to make joinder of those claims infeasible.  Pls.' Mem. 9-11.  That is, whether sufficient numerosity exists of students who have a recognized impairment, are substantially limited by that impairment, and have been *denied* the benefits of CUSD's educational program solely because of their disability.  Thus, it has not been stated with *any* level of certainty the number of potentially viable class members; rather, Plaintiffs inappropriately cast a broad net of speculation in an unsuccessful attempt to establish numerosity.  *Id.*

Furthermore, along with Plaintiff's speculation on numerosity, this case does not support the other factors that may show the impracticability of joinder—factors left unaddressed in Plaintiffs' Motion for Certification.  First and foremost, students who may have claims subject to joinder would all be within immediate approximation of each other—confined solely to the limits of the City of Compton and portions of Carson and Los Angeles.  Compl. ¶ 13.  Geographic dispersion therefore in no way presents a bar to finding similarly situated students because any claimants would be located within the CUSD boundaries; thus there is no merit to the assertion that school dispersal makes joinder impractical.  Compl. ¶ 56.  As well, t

The extreme scenarios in which students would be potentially exposed to "trauma" that impedes their ability to learn (*see* Compl. ¶ 56 ("violence, loss of a loved one, removal from home and placement in the foster system, homelessness and extreme socioeconomic hardship, and discrimination")) could be recognized to determine whether a violation of their rights constitutes a suitable claim for joinder.  Finally, due to the highly individualized nature of the claims in question, students' claims could and should—if feasible—be joined only with other similarly effected and impacted students.  Labeling an extremely diverse group of individual students with wholly unique circumstances as a class in no way furthers the purpose of the Rule 23

10

1    numerosity limitation or judicial economy.

2        Therefore, Plaintiffs' Motion for Certification should be denied because the

3   numerosity requirement has not been satisfied; instead, Plaintiffs' have merely put forth

4   conclusory allegations to establish the impracticability of joinder of what potentially

5   may only be a small number of claimants.

**B.**    **Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to Establish**

7        **the Commonality Required by Rule 23(a)(2).**

8        Plaintiffs should not be permitted to maintain this action on behalf of a class

9   because Plaintiffs cannot establish that "there are questions of law or fact common to

10   the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated this requirement "is

11   easy to misread, since [a]ny competently crafted class complaint literally raises

12   common 'questions.'" *Dukes*, *supra,* 131 S. Ct. at 2551 (internal quotations omitted;

13   citing Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev.

14   97, 131-32 (2009)). Since the *Dukes* ruling*,* it has been held that "Rule 23(a)(2)'s

15   commonality requirement demands more than the presentation" of just questions that

16   are common to the class. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir.

17   2012). "'What matters in class certification … is not the raising of common

18   "questions"—even in droves—but, rather the capacity of a classwide proceeding to

19   generate common *answers* apt to drive the resolution of the litigation. Dissimilarities

20   within the proposed class are what have the potential to impede the generation of

21   common answers.'" *Dukes*, *supra,* 131 S. Ct. at 2551 (emphasis in original).

22        "Commonality requires the plaintiff to demonstrate that the class members 'have

23   suffered the same injury.'" *Id.* (quoting *General Telephone Co. of Southwest v. Falcon*,

24   457 U.S. 147, 156 (1982)). "This does not mean merely that they have all suffered a

25   violation of the same provision of law"; rather, the common contention "must be of

26   such a nature that it is capable of classwide resolution—which means that determination

27   of its truth or falsity will resolve an issue that is central to the validity of each one of

ORBACH HUFF SUAREZ & HENDERSON LLP

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

---

the claims in one stroke." *Id.*

Plaintiffs do not present appropriate questions of law or fact common to the class because each class member's claim consists of highly individualized and personal circumstances that do not have the capacity to generate uniform answers or classwide resolution. The Plaintiffs therefore have failed to meet their burden of satisfying the Rule 23(a)(2) standard and the Motion for Certification should be denied.

1. <u>Commonality Is Not Present Because Each Student's Claim Is Based on Individualized Questions of Law and Fact.</u>

In *Dukes, supra,* 131 S. Ct. 2541, the Supreme Court found no commonality and accordingly denied certification of a class of current and former female employees who alleged the discretion exercised by their local supervisors over pay and promotions violated Title VII by discriminating against women. In finding no commonality amongst the class members, Justice Scalia explained that, despite any complaint being able to raise common questions ("For example: Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?"), recitation of these questions is *not* sufficient to demonstrate commonality. *Id.* at 2551. Broadly stated questions do not demonstrate the class members suffered the same injury or that the class even suffered a violation of the same provision of law. *Id.* Accordingly, the Supreme Court held that, "[q]uite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury … gives no cause to believe that all their claims can productively be litigated at once." *Id.*

The Supreme Court in *Dukes* concluded that the individual circumstances of each proposed class member resulted in the failure to establish "the existence of any common question." *Id.* at 2556-57. The reasoning for this is exemplified by the Supreme Court's quote of Chief Judge Kozinski's dissent in the Ninth Circuit's opinion of the appeal:

"[The members of the class] held a multitude of jobs, at different levels of

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

Wal–Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed depending on each class member's job, location and period of employment. Some thrived while others did poorly. They have little in common but their sex and this lawsuit."

*Id.* at 2557 (quoting *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 652 (9th Cir. 2010) (Kozinski, Chief J., dissenting), *rev'd*, 131 S. Ct. 2541 (2011)). This characterization aptly exhibits how individuals with differing situations like Student Plaintiffs do not share a common contention capable of maintaining claims as a class. *See M.D., supra*, 675 F.3d at 843 (holding that, "if the merits of each class member's … claims depend on an individualized inquiry regarding the harm or risk of harm experienced by each class member," then such dissimilarities within the proposed class prevent the class claims from asserting a common question that will satisfy *Dukes*' one stroke test).

Similarly, in *Jamie S, supra,* 668 F.3d at 498, the plaintiffs could not demonstrate commonality of their disabled-student claims to the Seventh Circuit because "resolving any individual member's claim for relief under the IDEA requires an inherently particularized inquiry into the circumstances of the child's case." Applying the Supreme Court's standard in *Dukes*, it was found that the plaintiffs' "superficial common questions—like whether each class member is [a Milwaukee Public School] student or whether each class member 'suffered a violation of the same provision of law'—are not enough." *Id.* at 497. The court in *Jamie S.* explained:

The plaintiffs identify the following common issue: "[A]ll potential class members have suffered as a result of MPS' failure to ensure their Child Find rights under IDEA and Wisconsin law." This completely misunderstands Rule 23(a)(2). Whether MPS failed in its obligations under the IDEA and thereby deprived an eligible disabled child of a free

ORBACH HUFF SUAREZ & HENDERSON LLP

appropriate public education is the bottom-line liability question in any individual plaintiff's IDEA claim…. [T]o litigate as a class, the plaintiffs must show that they share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims. That all the class members have "suffered" as a result of disparate individual IDEA child-find violations is not enough; it does not establish that the individual claims have any question of law or fact in common.

*Id.* (emphasis in original). The Seventh Circuit concluded that questions of violations of disabled student laws must "be answered separately for each child based on individualized questions of fact and law, and the answers are unique to each child's particular situation." *Id.* at 498. Hence, commonality could and would not be satisfied.

The flaws related to commonality in *Dukes* and *Jamie S.* are evident in the class proposed by Plaintiffs. The issues concerning Plaintiffs' Rehabilitation Act and ADA claims are too individualized to unify them as common questions. Pls.' Mem. 14-17. Plaintiffs' assertions of systemic violations throughout CUSD are attempts to force together individual claimants with widely-varying situations, circumstances, and outcomes in order to establish commonality, but that is not permissible under the Federal Rules. *See M.D., supra*, 675 F.3d at 844, *quoting Reinholdson v. State of Minnesota*, No. CIV. 02-795 ADM/AJB, 2002 WL 31026580, at *8 (D. Minn. Sept. 9, 2002) ("The reciting of the word 'systemic' in mantra-like fashion throughout the briefing and argument does not overcome the prerequisites to class certification.").

There lacks even commonality among the alleged conditions of the students since "trauma" is not itself a recognized impairment, but instead may potentially impact each student only via individually diagnosed impairments (as a few of the many examples, one student may suffer only PTSD while another may have anxiety disorders combined with depression) which may or may not substantially limit a students' major life

ORBACH HUFF SUAREZ & HENDERSON LLP

1    activities.[4]

2         Just as the class of female Wal-Mart employees had different jobs, at different

3    levels, for different lengths of times, in different stores, with different supervisors; every

4    single claim within Plaintiffs' proposed class will consist of individual trauma-related

5    experiences, conditions, and limitations.   Each class member may suffer from a

6    completely different trauma-related condition in a totally unique way and will therefore

7    require specialized accommodations unique to that child.

8         A review of just the five Student Plaintiffs in this case reveals that they are

9    students who either witnessed family/friends' deaths, were raised in foster homes,

10   experienced sexual assault, were subject to gang violence, or faced another type of

11   personal suffering, but have *no* common scenario unifying *any* of them except that they

12   go to school in Compton.   Compl. ¶¶ 14-36.   Plaintiffs assert the impact of these

13   distinctive experiences is seen in some by suspensions or expulsions, others have

14   trouble focusing in class, or been involved in criminal activity for example.   *Id.*   These

15   varying instances create the need to address and accommodate the students in a

16   multitude of individual ways that may or may not be effective for any other class

17   member.

18        Plaintiffs' rely heavily on the Ninth Circuit case of *Parsons v. Ryan*, 754 F.3d

19   657 (9th Cir. 2014), to support their commonality argument; however, the facts of this

20   matter are clearly distinguishable from that case which involved prisoners' claims

21   against senior officials of the Arizona Department of Corrections for serious systemic

22   deficiencies in conditions of confinement and in provision of health care services.   *Id.*

23   at 662-63 (allegations included exposing all inmates "to a substantial risk of serious

24   harm, including unnecessary pain and suffering, preventable injury, amputation,

25   disfigurement, and death").   In analyzing and distinguishing the facts in *Parsons* from

26   _____

27   [4] The issue of whether "complex trauma" constitutes a viable "disability" under the Rehabilitation Act
     and ADA was discussed in depth in Defendants' Motion to Dismiss.  Docket No. 41.

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

the Supreme Court's decision in *Dukes*, the Ninth Circuit found commonality existed because there was only a single answer to questions such as "do ADC staffing policies and practices place inmates at a risk of serious harm?"  *Id.* at 681.  This was because the facts of *Parsons* specifically involved "statewide practices created and overseen by two individuals," inmates who were located at only ten sites and therefore not scattered, and no need to look to "the varied reasons for millions of decisions."  *Id.*

But those are not the circumstances of this case which are more closely aligned with *Dukes*.  For example, the proposed class members are scattered throughout forty different school sites in CUSD.  As well, Student Plaintiffs challenge the handling of literally thousands of daily decisions on regular academic performance and discipline made by hundreds of different teachers, principals, and administrators specific to the current circumstances for any given student.  These facts—unlike the systemic practices in *Parsons*—do not support commonality and show an inability to satisfy the Supreme Court's requirements in *Dukes*.

Accordingly, Plaintiffs' allegations of systemic failures do not remove the students' individuality from the situation and do not satisfy their burden of proving commonality.  *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (affirming the denial of class certification of Rehabilitation Act and other claims and holding that, "rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of 'systematic failures.'  We refuse to hold, as a matter of law, that any allegation of a systematic violation of various laws automatically meets Rule 23(a)(2).").  To borrow from Chief Judge Kozinski, the proposed class members "have little in common but their [school district] and this lawsuit."  *Dukes*, *supra,* 603 F.3d at 652 (Kozinski, Chief J., dissenting).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

2.  <u>Commonality Is Not Present Because No Uniform Resolution Is Possible to Create Classwide Relief.</u>

Commonality also cannot be established by Plaintiffs because classwide relief is unobtainable since no uniform resolution is possible.  *Dukes*, *supra,* 131 S. Ct. at 2551.  In tandem with the individual nature of Plaintiffs' claims is the reality that this litigation cannot reach a common resolution as a classwide proceeding.  *Id.*

Plaintiffs cannot realistically prove a common contention capable of classwide resolution due to the singular fact that each student's individual experiences leading to dozens of trauma-related conditions will manifest in varying ways and potential limitations.  This variance necessitates particularized circumstances of both assessment and accommodation for each student as appropriate.  In fact, the Rehabilitation Act's implementing regulations specifically call for the *design* of regular and special education related aids and services that will provide each individual handicapped student a free appropriate public education as adequately as non-handicapped students.  34 C.F.R. § 104.33(b)(1).  Hence, there is no classwide resolution capable of addressing each of the individual Student Plaintiffs' claims, situation, or needs; rather, the "complex, highly individualized task" of identifying and providing appropriate accommodations must be undertaken for each claimant thereby preventing commonality amongst Plaintiffs' proposed class.  *Jamie S.*, 668 F.3d at 496.

In *Dukes*, the Supreme Court put forward the "one stroke" test for determining Rule 23(a)(2)'s commonality requirement.  Under this test, commonality might be satisfied if it can be determined that the truth or falsity of a common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  131 S. Ct. at 2551.  Common answers among the claimants are what drive a classwide resolution; however, an impediment to common answers and uniform relief is "dissimilarities within the proposed class."  *Id.*  The Supreme Court explained that the plaintiffs there "wish to sue about literally millions of employment decisions at once.

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1   Without some glue holding the alleged *reasons* for all those decisions together, it will

2   be impossible to say that examination of all the class members' claims for relief will

3   produce a common answer to the crucial question *why was I disfavored*." *Id.* at 2552

4   (emphasis in original).  Because the female Wal-Mart employees could not put forward

5   "convincing proof" of any biased testing procedure or general policy of discrimination,

6   it was concluded that classwide relief was not possible and plaintiffs did not establish

7   the existence of commonality.  *Id.* at 2556-57.

8        The Plaintiffs' here also lack any "glue" holding together the circumstances

9   giving rise to the individual class members' purported denial of benefits or the

10   accommodations that would be necessary to address their alleged impairments.  There

11   is no common answer to Student Plaintiffs' questions of "why was I disciplined" and

12   "why do I struggle academically" as an infinite number of possibilities would have to

13   go into answering these types of questions for each class member.  CUSD maintains all

14   appropriate policies and practices for non-discrimination and to address the needs of

15   any disabled or special needs students. Decl. of Brawley ¶¶ 36-135 (discussing CUSD's

16   policies regarding non-discrimination, Section 504, individualized education plan

17   referrals and practices, counseling services, staff development, disciplinary practices,

18   procedural safeguards, parental notification, etc.).  Specifically, CUSD Board Policy

19   0410 states "District programs and activities shall be free from discrimination based on

20   gender, sex, race, color, religion, ancestry, national origin, ethnic group identification,

21   marital or parental status, physical or mental disability, sexual orientation or the

22   perception of one or more of such characteristics.  The Board shall promote programs

23   which ensure that discriminatory practices are eliminated in all district activities." Decl.

24   of Brawley ¶ 37.  Without some "convincing proof" of a District-wide discriminatory

25   policy which is wholly absent from Plaintiffs' allegations (*Dukes, supra,* 131 S. Ct. at

26   2556-57), it too will be impossible to find a *common* answer to the crucial question here

27   why, if at all, a student's "trauma" caused him or her to be denied the benefits of

28

CUSD's educational program.

The dissimilarities amongst the proposed class members prevent the truth or falsity of any common contention from resolving an issue central to the validity of each claim in one stroke. Most notably, even full implementation of every single accommodation requested by Plaintiffs (Compl., Request for Relief, ¶ 2) would not provide resolution to each class member because the students' disparities require particularized responses to their alleged conditions. This alone demonstrates that Plaintiffs cannot satisfy the Rule 23(a)(2) requirement of commonality amongst *all* class members.

Plaintiffs' claims are highly-individualized in nature and not subject to a uniform remedy appropriate for the entire class. The Rule 23(a)(2) commonality requirement has not been established by Plaintiffs and the Motion for Certification should be denied.

**C.    Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to Establish the Typicality Required by Rule 23(a)(3).**

Denial of class certification is appropriate here because the Student Plaintiffs in this case cannot establish the Rule 23 requirement that the representative parties' claims be "typical of the claims" of the class. Fed. R. Civ. P. 23(a)(3). The purpose of this typicality requirement is to ensure that the Student Plaintiffs will be motivated to protect the interests of the class—the Student Plaintiffs' vigorous prosecution of claims typical of the class should effectively inure to the benefit of the class. *Eisenburg v. Gagnon*, 766 F.2d 770, 786 (3rd Cir. 1985). On the other hand, it would be a critical detriment to the entire class if the Student Plaintiffs' claims were not typical; thereby making class certification improper. While the claims of the purported class representatives need not be identical to the claims of other class members, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, *supra*, 457 U.S. at 156.

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1.   <u>The Student Plaintiffs' Claims Are Not Typical of the Class Because of Their Individual Harm Suffered and Interests Possessed.</u>

Plaintiffs' failures to establish the typicality requirement overlap with the defects of indefiniteness and lack of commonality discussed above. *Id.* at 157 n.13. The pure individuality of each of the Student Plaintiffs' claims demonstrate that no two class members suffer from the same harm or require the same relief to redress any alleged violation. Consequently, it cannot be said that the Student Plaintiffs possess the same *interests* as each other either—let alone every single member of Plaintiffs' broadly defined class. *Jamie S.*, *supra*, 668 F.3d at 486 ("Complying with this requirement [of providing a free appropriate public education to all disabled students] is a complex and inherently child-specific undertaking.").

By way of example: Student Plaintiff Kimberley Cervantes is a senior who struggled with discrimination and sexual assault, but also received five years of free mental health services from CUSD dating back to elementary school (Compl. ¶¶ 21-26); Student Plaintiff Donte J. on the other hand is only 13-years-old, recently moved to Compton, had experiences with gang violence, and was suspended after slamming a counselor's door after feeling his request for assistance was not properly addressed (Compl. ¶¶ 34-36). It is evident from just these two scenarios how different from one another are the class members' claims, harm, relief, and interests. Not only do Kimberley Cervantes and Donte J. require specialized accommodations to address the specific limitations they each may have, if any, but the Court should be concerned that their prosecution of this case would differ greatly given their individual needs, frustrations, and motivations—all to the detriment of the class as a whole.

2.   <u>The Student Plaintiffs' Claims Are Not Typical of the Class Because They Have Failed to Exhaust Their Administrative Remedies.</u>

The Student Plaintiffs' failure to exhaust the administrative remedies required by law prior to filing suit also deems their claims not typical of the class. Plaintiffs'

ORBACH HUFF SUAREZ & HENDERSON LLP

responsibility to exhaust their administrative remedies is set forth in the Individuals with Disabilities Education Act's ("IDEA") rule of construction provision, which states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, [the ADA, the Rehabilitation Act,] or other Federal laws protecting the rights of children with disabilities, except that *before the filing of a civil action* under such laws seeking relief that is also available under [IDEA], the procedures under subsections (f) [impartial due process hearing] and (g) [appeal] *shall be exhausted* to the same extent *as would be required* had the action been brought under this subchapter [of the IDEA].

20 U.S.C. § 1415(l) (emphasis added).

Exhaustion of administrative remedies is "clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent." *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 875 (9th Cir. 2011) *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). As well, "exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, *whether pled as an IDEA claim or any other claim that relies on the denial of a [free appropriate public education]* to provide the basis for the cause of action." *Id.* (emphasis added). IDEA ensures the provision of a free appropriate public education ("FAPE") and the ability to enforce rights connected to the denial thereof. *See* 20 U.S.C. § 1412. By way of this lawsuit, Plaintiffs look to this Court to enforce the provision of a free appropriate public education—via claims specifically seeking a remedy or functional equivalent available under IDEA. Compl. ¶¶ 67, 211-214 ("As a result of Defendants' policies, the student class members do not receive a free appropriate public education."); *Payne, supra*, 653 F.3d at 875.

This was a critical issue at the outset in *Jamie S.*, *supra,* 668 F.3d at 487, as the lower court refused certification of the class originally sought "based largely on

ORBACH HUFF SUAREZ & HENDERSON LLP

concerns about exhaustion of administrative remedies." *See also Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1309 (9th Cir. 1992) (holding "judicial involvement in this dispute" was unwarranted "until such remedies were exhausted" and explaining "[a]dministrative remedies are not inadequate simply because a large class of plaintiffs is involved"); Decl. of Brawley ¶¶ 36-132 (describing CUSD's policies and procedures related to procedural safeguards and administrative remedies pursuant to IDEA and the Rehabilitation Act).  Missing from the Complaint are any allegations of the Student Plaintiffs seeking, complying with, or exhausting their administrative remedies.  *Payne*, *supra*, 653 F.3d at 875.

Student Plaintiffs' failure to exhaust their administrative remedies—in addition to the unique nature of each of their claims, harms, and interests—prohibit their claims from being considered typical of those of the class members.  Plaintiffs' cannot satisfy Rule 23(a)(3) and their Motion for Certification should appropriately be denied.

**D.    Plaintiffs' Motion Should Be Denied Because Plaintiffs' Failed to Establish the Fair and Adequate Representation Required by Rule 23(a)(4).**

The final requirement of Rule 23 is that the Student Plaintiffs must "fairly and adequately protect the interests of the class"; however, Plaintiffs fail to also establish this necessary element.  Fed. R. Civ. P. 23(a)(4).  Adequacy of representation of the present class members is crucial to assuring the due process of absent and unnamed class members who are nevertheless bound by the suit's judgment. *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995).  The requirements of Rule 23(a) merge in the adequacy analysis because a plaintiff's ability to provide adequate class representation depends upon whether his or her claims "are *so interrelated* that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, *supra,* 457 U.S. at 157 n.13 (concluding that Rule 23(a) elements "also tend to merge with the adequacy-of-representation requirement") (emphasis added).  Without sufficiently establishing the requirements of Rule 23(a),

1   Student Plaintiffs fail to demonstrate adequate representation sufficient enough for
2   "maintenance of a class action [to be] economical." *Id.*

3       As discussed with each element above, Plaintiffs cannot fairly and adequately
4   represent the interests of the class due to each individual's own circumstances, harms,
5   and interests.  The necessity of finding individual remedies for each student based upon
6   particular need prevents a classwide resolution of the claims.  In addition, Student
7   Plaintiffs' failure to exhaust administrative remedies raises incurable flaws in the due
8   process afforded by law to Defendants, and thus makes Student Plaintiffs incapable of
9   being to fair and adequate representatives in this matter.  Plaintiffs' Motion for
10  Certification should therefore be denied.

## VI.

## PLAINTIFFS' MOTION FOR CERTIFICATION SHOULD BE DENIED FOR
## FAILURE TO MEET THE CONDITIONS OF RULE 23(b)(2)

14      Denial of the Motion for Certification is appropriate because of Student
15  Plaintiffs' failure to satisfy the Rule 23(a) requirements as well as Plaintiffs inability to
16  establish one or more of the grounds for maintaining a class action under Rule 23(b).
17  Fed. R. Civ. P. 23(b)(2); *Daniel F., supra,* 305 F.R.D. at 120.  Plaintiffs' seek to certify
18  the class under Rule 23 (b)(2) requiring that the party opposing the class has acted (or
19  refused to act) in a manner applicable to the class generally, so that "final injunctive
20  relief or corresponding declaratory relief is appropriate respecting the class as a whole."
21  Pls.' Mem. 20-21.

22      In light of the individualization of each class member's particular circumstances
23  and treatment—that is, the varying reasons for *why* a student was disciplined, performs
24  poorly academically, or any other consequence of CUSD's alleged conduct—it cannot
25  be said CUSD acted in a manner "applicable to the class generally."  Fed. R. Civ. P.
26  23(b)(2) Nevertheless, it is the final clause of Rule 23(b)(2) that is key to Plaintiffs'
27  inability to meet the Rules' required conditions.  Injunctive relief *must* be "final" to the

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ORBACH HUFF SUAREZ & HENDERSON LLP

1   "class as a whole." *Id*.  The Supreme Court has held that "claims for *individualized*

2   relief … do not satisfy the Rule." *Dukes*, *supra,* 131 S. Ct. at 2557 (emphasis in

3   original).

4        In reasoning that the relief sought must apply to all of the class members or to

5   none of them, the Court stated:

6        Rule 23(b)(2) applies only when a single injunction or declaratory

7        judgment would provide relief to each member of the class.  It does not

8        authorize class certification when each individual class member would be

9        entitled to a *different* injunction or declaratory judgment against the

10       defendant.

11  *Id*. (emphasis in original).  Additionally, a Rule 23(b)(2) class is not appropriate where,

12  "though the suit is for declaratory relief, the effect of the declaration on individual class

13  members will vary with their particular circumstances …" *In re Allstate Ins. Co.*, 400

14  F.3d 505, 508 (7th Cir. 2005); *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d

15  299, 317 (5th Cir. 2007).

16       In the education and disability discrimination context, the Seventh Circuit applied

17  these principles in *Jamie S., supra,* 668 F.3d at 499, and held that class certification was

18  improper because the "relief sought will neither be final nor appropriate for the class as

19  a whole."  The Seventh Circuit found "there can be no single injunction that provides

20  final relief to the class as a whole" because "as a substantive matter the relief sought

21  would merely initiate a process through which highly individualized determinations of

22  liability and remedy are made; this kind of relief would be class-wide in name only, and

23  it would certainly not be final." *Id.*

24       The same would be true for any injunctive relief requested by Plaintiffs here.

25  Even entertaining Student Plaintiffs' contention that individual relief is not necessary

26  (Pls.' Mem. 21 ("individualized relief would not be effective")), any order for the global

27  remedies sought would at best have the *potential* to address *some* class members'

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ORBACH HUFF SUAREZ & HENDERSON LLP

circumstances, but would in no way assure *every* member of the class as a whole received final relief.  The claims at issue are for the denial of a free public appropriate education thereby demanding that any final injunctive relief provide such a remedy.  Compl. ¶¶ 192-200, 215-223.  However, Student Plaintiffs' cannot show specifically, for example, that training or restorative practices would in fact address Kimberley Cervantes' truancy problems allowing her to get the credits she needs or stop Virgil W. from initiating unacceptable physical altercations with other students thereby providing them meaningful access to education—and as a result such relief would not provide a final remedy to the whole class.

Any ultimate injunctive or declaratory relief that may be granted would either not provide final relief to the entire class or require highly individualized determinations because the relief would vary so widely with each class members' particular circumstances.  Therefore, Plaintiffs' claims are not appropriate to satisfy Rule 23(b)(2)'s conditions and class certification should not be granted.

## VII.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that Plaintiffs' Motion for Class Certification be denied.  Alternatively, if the Court is inclined to grant the Motion to Certify, Defendants respectfully request the opportunity to conduct discovery into whether the requirements of Rule 23 are satisfied.  *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209-10 (9th Cir. 1975).

DATED:  July 27, 2015          **ORBACH HUFF SUAREZ & HENDERSON LLP**

By:  _____/s/ David M. Huff_____
                          David M. Huff, Esq.
                          Enrique M. Vassallo, Esq.
                          Kimble R. Cook, Esq.
                          Jeremy P. Ehrlich, Esq.
                          Attorneys for Defendants COMPTON UNIFIED

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ORBACH HUFF SUAREZ & HENDERSON LLP

1   SCHOOL DISTRICT, DARIN BRAWLEY, MICAH
2   ALI, SATRA ZURITA, MARGIE GARRETT,
    CHARLES DAVIS, SKYY FISHER, EMMA
3   SHARIF, and MAE THOMAS

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORBACH HUFF SUAREZ & HENDERSON LLP

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION