Mark D. Rosenbaum (SBN 59940)
(mrosenbaum@publiccounsel.org)
Kathryn A. Eidmann (SBN 268053)
(keidmann@publiccounsel.org)
Laura Faer (SBN 233846)
(lfaer@publiccounsel.org)
Anne Hudson-Price (SBN 295930)
(aprice@publiccounsel.org)
Alisa Hartz (SBN 285141)
(ahartz@publiccounsel.org)
PUBLIC COUNSEL LAW CENTER
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

Morgan Chu (SBN 70446)
(mchu@irell.com)
Michael H. Strub, Jr. (SBN 153828)
(mstrub@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 282-5600

*Attorneys for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER P.; et. al,<br><br>*Plaintiffs,*<br><br>v.<br><br>COMPTON UNIFIED SCHOOL DISTRICT; et. al,<br><br>*Defendants.* | Case No. LA CV-15-3726 MWF (PLAx)<br><br>**CLASS ACTION**<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 17, 2015<br>Time: 10:00 A.M.<br>Ctrm: 1600<br>Judge: Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 2
  A. The Class Meets All Requirements of Rule 23(a) .......... 2
    1. Numerosity .......... 2
    2. Commonality .......... 4
    3. Typicality .......... 11
    4. Adequacy .......... 12
  B. The Class Meets All Requirements of Rule 23(b)(2) .......... 13
    1. Class-wide injunctive relief .......... 13
    2. Ascertainability .......... 15
III. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberto v. GMRI, Inc.*,
252 F.R.D. 652 (E.D. Cal. 2008)....................2

*Allen v. Hyland's Inc.*,
300 F.R.D. 643 (C.D. Cal. 2014)....................4

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)....................16

*Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008)....................2

*Doe v. L.A. Unified Sch. Dist.*,
48 F. Supp. 2d 1233 (C.D. Cal. 1999)....................4

*Dunakin v. Quigley*,
No. C14-0567 JLR, 2015 WL 1619065 (W.D. Wash. April 10, 2015)....................15

*Escalante v. Cal. Physicians' Serv.*,
No. CV14-03021 DDP, 2015 WL 4477721 (C.D. Cal. July 14, 2015)....................15, 16

*Goodnight v. Shalala*,
837 F. Supp. 1564 (D. Utah 1993)....................3

*Horn v. Associated Wholesale Grocers, Inc.*,
555 F.2d 270 (10th Cir. 1977)....................3

*In re Yahoo Mail Litig.*,
No. 13-CV-04980 LHK, 2015 WL 3523908 (N.D. Cal. May 26, 2015)....................15

*Jamie S. v. Milwaukee Pub. Sch.*,
668 F.3d 481 (7th Cir. 2012)....................passim

*Jordan v. L.A. County*,
669 F.2d 1311 (9th Cir.1982)....................3

*Joyce v. City & County of San Francisco*,
No. C-93-4149 DLJ, 1994 WL 443464 (N.D. Cal. Aug. 4, 1994)....................16

*K.M. v. Regence BlueShield*,
No. C13-1214 RAJ, 2014 WL 801204 (W.D. Wash. Feb. 27, 2014)....................16

*Katie A. v. Diana Bonta*,
433 F. Supp. 2d 1065 (C.D. Cal. 2006)....................16

**Page(s)**

*Lane v. Kitzhaber*,
283 F.R.D. 587 (D. Or. 2012) ............ 6, 14, 16

*Lopez v. San Francisco Unified Sch. Dist.*,
No. C 99-3260 SI, 2003 WL 26114018 (N.D. Cal. Sept. 8, 2003) ............ 4

*Multi-Ethnic Immigrant Workers Org. Network v. City of L.A.*,
246 F.R.D. 621 (C.D. Cal. 2007) ............ 16

*Nordstrom v. Ryan*,
762 F.3d 903 (9th Cir. 2014) ............ 16

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,
303 F.R.D. 337 (E.D. Cal. 2014) ............ 3

*Ollier v. Sweetwater Union High Sch. Dist.*,
251 F.R.D. 564 (S.D. Cal. 2008) ............ 4

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ............ passim

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ............ 10

*Shelton v. Bledsoe*,
775 F.3d 554 (3rd Cir. 2015) ............ 15

*Shook v. El Paso County*,
386 F.3d 963 (10th Cir. 2004) ............ 15

*Stockwell v. City & County of San Francisco*,
749 F.3d 1107 (9th Cir. 2014) ............ 9

*Vietnam Veterans of Am. v. C.I.A.*,
288 F.R.D. 192 (N.D. Cal. 2012) ............ 11

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ............ passim

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ............ 10

*Yaffe v. Powers*,
454 F.2d 1362 (1st Cir. 1972) ............ 15

**Rules**

Fed. R. Civ. P. 23(a)(1) ............ 3

Fed. R. Civ. P. 23(b) ............ 16

Fed. R. Civ. P. 23(b)(2) ............ 13, 14, 15

**Page(s)**

Fed. R. Civ. P. 23(b)(3) ........................................................................ 15, 16

**Statutes**

42 U.S.C. § 12102 ........................................................................ 10

**Other Authorities**

NEWBERG ON CLASS ACTIONS § 3:7 (5th Ed.) ........................................ 15

# I. INTRODUCTION

The crux of Defendants' argument is that Plaintiffs' class claims are, or should be, individualized because the relief sought necessarily involves, or should involve, Individualized Education Plans ("IEPs") to accommodate disabled students. This shows a fundamental misunderstanding of the lawsuit. Plaintiffs do not assert that a certain CUSD employee discriminated against a certain student by a particular action. Instead, Plaintiffs assert, and have presented evidence, that Defendants have a policy of not providing students suffering from trauma-related impairments with a trauma-sensitive school environment in which to learn. Defendants themselves acknowledge that they do not consider the effects of trauma to be a disability, MTD at 7 [Dkt. 41-1], and that their policy is to not provide the "one size-fits all" approach, Jacobs ¶ 37 [Dkt. 58-10; 60-10 (same)], that the nation's leading brain scientists have identified as necessary to providing trauma-affected students access to public education.

This case is governed in every critical respect by *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). In *Parsons*, approximately 33,000 inmates in ten prison facilities challenged a system-wide policy of deliberate indifference to their medical, dental, and mental health care needs. The prisons turned a blind eye to the inmates' medical, dental, and mental health needs, resulting in a gruesome encyclopedia of widely-differing medical harms: a nurse gave a prisoner expired eye medication, worsening his vision and causing a new condition; the prison delayed scanning a prisoner who observed masses growing on her breasts, mouth, and arms for almost a year; guards watched a severely mentally ill prisoner bleed to death after his second suicide attempt, intervening only by calling his name. *Id.* at 665 nn.5-7. The court found that the root of these individual injuries was the class's "exposure . . . to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent." *Id.* at 678. The fact that injuries were necessarily to individuals, and could have had any number of causes, was no barrier to

certification. "[A]lthough a presently existing risk may ultimately result in different future harm for different inmates–ranging from no harm at all to death–every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm." *Id.*

This case concerns a similar, albeit simpler, type of deliberate indifference. Where the prisons in *Parsons* were medically insensitive, providing inmates insufficient care for multiple types of medical, dental, and mental health conditions, the Defendants here run a school system that is entirely insensitive to a single condition: trauma. The remedy is not treatment of individual students for trauma, but, as in *Parsons*, a systemic transformation: Compton schools must implement universal policies of *trauma-sensitivity* if they are to accommodate, as they must, children who have experienced complex trauma.

## II. ARGUMENT

### A. The Class Meets All Requirements Of Rule 23(a)

#### 1. Numerosity

Based on uncontroverted declarations from experts Drs. Christina Bethell, Bruce Perry, and Nikolaos Stefanidis, among others, Plaintiffs conservatively estimated the class size to be 5412 students. Mtn. for Class Cert. at 11 [Dkt. 57-1]. Plaintiffs' estimated class size of 5412 far exceeds the minimum requirement for numerosity in the Ninth Circuit. Courts have found that "the numerosity factor is satisfied if the class comprises 40 or more members." *Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). Plaintiffs' estimate is a permissible evidence-based estimate of class size.[1]

[1] *See, e.g., Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008) (finding that plaintiffs satisfied the numerosity requirement based on their estimated class size of 18,000 based on declaratory evidence, and noting that "even if the actual class size falls below plaintiff's valuation of 18,000 members, it is reasonable to assume that its size will surpass previous Ninth Circuit thresholds"); *Californians for Disability Rights, Inc.*, 249 F.R.D. at 347 (in a class action for violations of the

Ignoring all the scientific evidence submitted by Plaintiffs, and without providing any evidence to the contrary, Defendants assert that Plaintiffs' estimate of the class size is "conclusory" and based on "generalized, anecdotal allegations." Opp. at 8-9 [Dkt. 60]. This is patently false.[2] Plaintiffs' experts Drs. Bethell, Dorado, Perry, Stefanidis, and others are highly regarded researchers, published in peer-reviewed journals, and leaders in their fields. Bethell ¶¶ 1-5 [Dkt. 42-12]; Dorado ¶¶ 1-4 [Dkt. 42-14]; Perry ¶¶ 1-9 [Dkt. 42-15]; Stefanidis ¶¶ 1-6 [Dkt. 42-16] (manually filed in full). Indeed, Defendants have acknowledged Dr. Perry's expertise and leadership in the field of trauma and education. Jacobs ¶ 28. By contrast, Defendants introduce no evidence disputing the well-founded opinions of these experts, offering only conclusory critiques in argument with no basis in any fact. *See, e.g.*, Opp. at 9 ("Plaintiffs erroneously conclude that the vast majority of CUSD students experience adverse childhood experiences . . .").

Defendants also appear to assert, without authority, that in addition to establishing numerosity, Plaintiffs must separately establish the "impracticability of joinder." Opp. at 10. The Federal Rules, however, have a single requirement that a class be "*so numerous* that joinder of all members is impracticable," a requirement that Plaintiffs easily meet.[3] Fed. R. Civ. P. 23(a)(1) (emphasis added). Defendants

---

ADA, plaintiffs submitted evidence that there are 1.5 million Californians with disabilities relevant to the lawsuit, and the court made the permissible assumption that enough of those individuals used sidewalks and handrails maintained by Caltrans to satisfy the numerosity requirement).

[2] Plaintiffs have presented far more than conclusory evidence of numerosity. However, at least one court has held that "when injunctive relief is the only relief requested, even speculative or conclusory representations regarding numerosity will suffice to permit class certification." *Goodnight v. Shalala*, 837 F. Supp. 1564, 1582 (D. Utah 1993) (citing *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275-76 (10th Cir. 1977)).

[3] Typically, courts look to non-numerical factors to determine whether joinder is impracticable only if the class is small. *See, e.g.*, *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 345 (E.D. Cal. 2014) (quoting *Jordan v.*

assert nonetheless that joinder is not impracticable because class members are all within the CUSD boundaries. Opp. at 10. But countless classes comprised of members living in the same school district, or even attending the same school, have been certified.[4]

Defendants' further assertion that "students' claims could and should—if feasible—be joined only with other similarly [a]ffected and impacted students," Opp. at 10, appears to be grounded in a misunderstanding of the relief Plaintiffs seek. As explained further below, Plaintiffs' argument is that all students suffering the effects of complex trauma *are* similarly affected and impacted. The size of the class and the district-wide nature of the relief sought make joinder "impracticable," if not "impossible," *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 660 (C.D. Cal. 2014), and make a class action the most efficient way of pursuing the relief sought.

### 2. Commonality

#### (a) Plaintiffs challenge a system-wide policy

Defendants assert that the putative class suffers from the same flaws as classes rejected by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and by the Seventh Circuit in *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012). Opp. at 14. This is incorrect. Plaintiffs do not challenge individual decisions, but rather CUSD's system-wide policy of not providing a school-wide trauma-sensitive learning environment. Plaintiffs' claim is

---

*L.A. County*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810 (1982)).

[4] *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 251 F.R.D. 564, 564 (S.D. Cal. 2008) (certifying a class of students in a single school in the Sweetwater Union School District); *Doe v. L.A. Unified Sch. Dist.*, 48 F. Supp. 2d 1233, 1235 (C.D. Cal. 1999) (certifying a class of students who are enrolled or who will be enrolled in LAUSD). *Lopez v. San Francisco Unified Sch. Dist.*, No. C 99-3260 SI, 2003 WL 26114018, at *1 (N.D. Cal. Sept. 8, 2003) (denying decertification for a class of current and former students with mobility or visual impairments in the San Francisco Unified School district).

analogous to *Parsons*, the binding Ninth Circuit opinion governing this action. 754 F.3d 657.

In *Dukes* the Court considered a class of about one-and-a-half million current and former female employees of 3400 Wal-Mart stores in fifty states who alleged discrimination on the basis of their sex. 131 S. Ct. at 2547. The Court rejected the class because the plaintiffs were suing "about literally millions of employment decisions at once" without providing "some glue holding the alleged *reasons* for all those decisions together." *Id.* at 2252. The Court held that the question "*why was I disfavored*" would not produce a "common answer" for all class members. *Id.* at 2552. The individual could have been disfavored, the Court speculated, for any number of reasons, such as performance-based criteria, general aptitude or educational achievements, or intentional discrimination. *Id.* at 2554. Without "some glue holding the alleged reasons for all those decisions together," there was no common answer to the question of discrimination. *Id.* at 2552.

Similarly, in *Jamie S.*, the Seventh Circuit found a class of students alleging violations of the IDEA's "child find" requirements (requiring districts to identify children with disabilities, determine whether they need special education services, and develop individualized education programs tailored to each student's needs) to be lacking in commonality. 668 F.3d at 495. To illustrate the lack of common issues, the court compared "two hypothetical students," both class members—one who "has a disability and would be eligible for special education but has never been identified as being disabled nor gone through the IEP process," and another who was "identified as disabled and received a timely IEP meeting, but the child's parents did not attend the IEP meeting and were not notified of their right to do so." *Id.* at 498. The court found that while the generic question of whether MPS fulfilled its IDEA obligations to each child was part of both children's claims, "it must be answered separately for each child based on individualized questions of fact and law, and the answers are unique to each child's particular situation." *Id.* at 498. In

other words, plaintiffs' claims were "based on multiple, disparate failures to comply with the school district's statutory child-find obligations rather than a truly systemic policy or practice which affects them all." *Id.* at 505 (Rovner, J., dissenting).

Defendants attempt to frame the issues of this case, by reference to *Dukes* and *Jamie S.*, as concerning "the handling of literally thousands of daily decisions on regular academic performance and discipline made by hundreds of different teachers, principals, and administrators specific to the current circumstances for any given students." Opp. at 16. On that basis, they assert that "[t]here is no common answer to the Student Plaintiffs' questions of 'why was I disciplined' and 'why do I struggle academically.'" Opp. at 18. But these are not Plaintiffs' questions. Plaintiffs do not challenge any particular decision of a particular employee concerning a particular student, as in *Dukes*, nor do they seek individual IEPs, as in *Jamie S.*[5]

Instead, just as the inmates in *Parsons* asserted system-wide deliberate indifference to their medical needs, here there is significant evidence that CUSD has a policy of deliberate indifference to trauma. The District claims it has been "well aware of the impact of trauma on its students for quite some time," Jacobs ¶ 18; Brawley ¶ 4, and Defendant CUSD School Board President Micah Ali has

---

[5] *Jamie S.* was an IDEA case in which the plaintiffs, ultimately seeking individual IEPs, attempted to circumvent the exhaustion requirement by challenging a systemic deficiency. 668 F.3d at 498; *see also Lane v. Kitzhaber*, 283 F.R.D. 587,596 (D. Or. 2012). The Seventh Circuit stated that "[t]hat there is no such thing as a 'systemic' failure to find and refer individual disabled children for IEP evaluation--except perhaps if there was 'significant proof' that MPS operated under child-find *policies* that violated the IDEA." *Id.* Here, in contrast, Plaintiffs are seeking relief that is not available under the IDEA, and that does not require any individualized determinations. *See* Reply ISO PI at 7-10. Far from merely "reciting the word 'system' in mantra-like fashion," as Defendants assert, Plaintiffs seek system-wide and system-level change that is by its nature not individualized. Moreover, Plaintiffs offer significant proof of the CUSD policies that violate the ADA and Section 504.

repeatedly acknowledged the "unique education challenges" facing CUSD, including "higher than normal rates of poverty, single parent families, . . . foster youth, [and] violence." Eidmann Dec. ISO PI, Ex. E [Dkt. 42-3]. Nonetheless, the District expressly denies that trauma is a medical condition requiring accommodations, MTD at 7; Opp. to PI at 14 [Dkt. 58], and that any school-wide approach is required, Brawley ¶ 134 [Dkt. 58-1; 60-1 (same)]; Jacobs ¶ 37 ("There is no 'one-size fits all' policy that can be established to address each individual student's needs."[6]). The CUSD policies described and endorsed by Superintendent Brawley and SELPA Director Jacobs contain none of the district-wide and school-wide measures established as necessary by undisputed evidence to accommodate students whose learning is impaired by exposure to complex trauma.[7] *See* Reply ISO PI at 4-7.

Specifically, CUSD has policies of:

- Insufficient or non-existent training in trauma-sensitivity. Undisputed evidence demonstrates CUSD's teacher and staff training policies do not meet professional standards of trauma-sensitivity training. *See* Reply ISO PI at 4-6; Sullivan ¶ 3 (84 of 85 responding teachers reported having never

[6] Plaintiffs take this statement as an expression of CUSD policy by one of its administrators, but object to it insofar as it is purported to be a statement of scientific opinion. *See* Plaintiffs' Objections to Evidence [Dkt. 64]. Jacobs has no scientific training, he is not a qualified expert, and the statement has no scientific foundation.

[7] The clear insufficiency of Defendants' policies is well illustrated by Defendants' repeated suggestion that Student Plaintiffs' manifestations of trauma are simply "bad acts, struggles, or misbehavior" that can reasonably be attributed to "the 'immaturity or poor judgment' of youth." Opp. to PI at 17. As Dr. Dorado explains: "Instead of asking what is wrong with a student and labeling a child as dangerous, uncooperative, rude, or inappropriate, a teacher looking at the situation through a trauma lens would instead ask what has happened to the student and try to understand whether the child's response may have been triggered by traumatic experiences." Dorado ¶ 22.

"received [professional development] on trauma provided by CUSD.").

- Inadequate mental health support. There is undisputed evidence that the mental health support available to students across the CUSD system is inadequate or nonexistent. Curry ¶¶ 37-39 [Dkt. 42-8]; McCoy ¶ 26 [Dkt. 42-9]; Castro ¶ 26-30 [Dkt. 42-10]; Mtn. for PI at 14 [Dkt. 42-1]. Defendants present no affirmative evidence to the contrary.
- Exclusionary discipline. Undisputed evidence shows CUSD discipline policies are not trauma-sensitive. When Student Plaintiffs predictably behave in ways induced by trauma, CUSD schools respond to such actions with punitive suspensions, involuntary transfers, or expulsions. *See* Mtn. for PI at 13-14. Defendants neither dispute Plaintiffs' evidence nor introduce affirmative evidence that appropriate trauma-sensitive measures are in place.[8] *See* Reply ISO PI at 6-7.

As in *Parsons*, where the complaint alleged not "that the care provided on any particular occasion to any [individual] was insufficient," but that the "policies and practices of statewide and systemic application expose all inmates" to the same harm, so here, Defendants' policy of not providing trauma-sensitive accommodations exposes students to the same injury by limiting their access to their education. 754 F.3d at 676 (citation omitted). The question of whether Defendants' policy of failing to provide school-wide accommodations for trauma-affected students discriminates against those students[9] can be answered in one stroke:

---

[8] Some policies highlighted by Defendants in fact re-traumatize students and contribute to the denial of access to public education for students with trauma-induced disabilities: for example a board policy permitting disabled students to be suspended for up to twenty days per school year. Brawley ¶ 62.

[9] Defendants point to CUSD's policies of non-discrimination, but at the same time acknowledge a policy of not providing whole-school accommodations to students affected by complex trauma, thus distinguishing this case from *Dukes*, where the company's policies against discrimination were not countered by evidence of any discriminatory policies. 131 S. Ct. at 2553.

"[E]ither each of the policies and practices is unlawful as to every inmate or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination." *Id.* at 678; *see also Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1116 (9th Cir. 2014) (in an age discrimination case, "the officers are all challenging a single policy they contend has adversely affected them. The question whether the policy has an impermissible disparate impact on the basis of age necessarily has a single answer.").

**(b) This class action poses numerous questions of fact and law that are common to the class**

In the Complaint, ¶ 56 [Dkt. 1], and Motion for Class Certification, at 14, Plaintiffs enumerate six questions common to the class.[10] Those questions include:

- Whether the effects of complex trauma can substantially limit one or more of a student's major life activities, including learning, reading, concentrating, thinking, and communicating.

In other words: do the effects of complex trauma result in a disability that is cognizable under the ADA and Section 504? As explained in Plaintiffs' Motion for Preliminary Injunction, the scientific record—uncontroverted by Defendants—conclusively establishes that complex trauma affects "neurological [and] brain" functions, and that these neurobiological changes impair "learning, reading, concentrating, thinking, [and] communicating." Perry ¶ 26; Dorado ¶¶ 6-12; Bethell ¶¶ 12-18; Mtn. for PI at 7-8; Reply ISO PI at 11. Complex trauma thus qualifies as

[10] The six questions track the elements of Plaintiffs' claims under the ADA and Section 504 of the Rehabilitation Act. Mtn. for PI at 16-24. Answering these questions "will resolve an issue that is central to the validity of each one of the [class members'] claims." *Stockwell*, 749 F.3d at 1114 (quoting *Dukes*, 131 S. Ct. at 2551). "[E]ven a single common question will do." *Dukes*, 131 S. Ct. at 2556 (alterations omitted). Plaintiffs here focus only on the questions Defendants have challenged as involving individualized determinations.

a disability under 42 U.S.C. § 12102. Defendants implicitly acknowledge this common question when they assert, without evidence, that "[t]rauma does not constitute a physical or mental impairment recognized under law." MTD at 7-13; *see also* Opp. at 15 n.4. This question will be answered "in one stroke" for all class members: either class members with effects of complex trauma will have a cognizable disability because of that condition, or they will not.

- Whether such interference with education-related life activities impairs a student's ability to receive the benefits of a public education.

This question asks not whether a particular student's trauma-related condition impairs his ability to access education, but whether complex trauma *as a condition* can do so.[11] Plaintiffs' experts have explained the impairments caused by the physiological effects of trauma, Perry ¶¶ 18, 22-24, 26; Mtn. for PI at 8-9, as well as the academic consequences and effects on attendance and behavior that result from these neurological impairments, Dorado ¶¶ 15-16; Bethell ¶¶ 28-37; Wong ¶¶ 17, 19 [Dkt. 42-17]; Mtn. for PI at 9-10. Defendants have presented no evidence to the contrary. These expert declarations answer the question for the class as a whole.

- Whether accommodations exist that can be reasonably implemented by Defendants to ensure that students with complex trauma do have meaningful access to a public education.

Defendants dispute that there are school-wide reasonable accommodations that will assist in providing trauma-affected students meaningful access to education. They assert, without foundation,[12] that there is no "'one-size fits all' policy" and that trauma-affected students may only benefit from "specially tailored

[11] "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (quoting *Walters*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

[12] *See* Plaintiffs' Objections to Evidence Nos. 3, 4, 74 [Dkt. 64].

services through an IEP." Jacobs ¶¶ 37-38. On that basis, they assert that there are individualized questions regarding the proper accommodations for each student. Opp. at 15. Plaintiffs have presented significant scientific evidence to the contrary, and the merits of this issue are addressed at length in the Motion for Preliminary Injunction at 22-23 and the Reply in support of the Preliminary Injunction at 13-15.

For the purposes of class certification, however, the issue is not whether accommodations must be individualized, but instead whether there is a class-wide answer to the question of whether accommodations must be individualized. This question can be answered, and has been answered by Plaintiffs' experts, in one stroke for the entire class.

Defendants' assertion that "even full implementation of every single accommodation requested by Plaintiffs would not provide resolution to each class member because the students' disparities require particularized responses to their alleged conditions" is misplaced. Opp. at 19. Plaintiffs claim not that the district-wide trauma-sensitive school approach will resolve every issue of every student or will eliminate the need for IEPs, but that such an accommodation is necessary to provide students with meaningful access to their education and to allow students to benefit from any individualized educational services to which they are also, separately entitled. *See Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 212 (N.D. Cal. 2012) ("[T]he cause of action seeks to remedy, not the denial of benefits, but the denial of a neutral, unbiased adjudicator to review a claim for benefits.").

**3. Typicality**

As explained in the Motion at 17-18, to meet the requirements of typicality, named plaintiffs need not "be identically positioned to each other or to every class member." *Parsons*, 754 F.3d at 686. Thus, in *Parsons*, the Ninth Circuit held that "[i]t does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs." *Id.* at 686. It

was sufficient for typicality that the named plaintiffs are all inmates in the relevant facilities, exposed to "a substantial risk of serious harm by the challenged ADC policies and practices," and that "they allege that the injury follows from the course of conduct at the center of the class claims." *Id.* at 685.

This is exactly the case with respect to the named Plaintiffs here. As in *Parsons*, each named Plaintiff has his or her own history of trauma, manifestations of the effects of trauma, and, in some cases, individualized education plan. Nonetheless, each has been injured by Defendants' failure to accommodate his or her trauma-related disability, and each requires, as Dr. Stefanidis determined, the same school-wide relief that experts recommend for the class as a whole. Dorado ¶¶ 29, 47-48; Stefanidis ¶ 30; Courtney ¶ 17 [Dkt. 42-13]; Perry ¶¶ 32-41; Bethell ¶ 57; Wong ¶ 39. Defendants' assertion that "the Court should be concerned that [Kimberly Cervantes' and Donte J.'s] prosecution of this case would differ greatly given their individual needs, frustrations, and motivations" is at best speculative and at worst an *ad hominem* attack.[13]

**4. Adequacy**

Defendants assert that Named Plaintiffs are not adequate class representatives "due to each individual's own circumstances, harms, and interests" because "[t]he necessity of finding individual remedies for each student based upon particular need prevents a classwide resolution of the claims." Opp. at 23. As explained above, Plaintiffs' claims require no individualized analysis or remedy, and they have met

[13] Defendants also argue that the Named Plaintiffs are not typical of the class because they have failed to exhaust administrative remedies. Opp. at 20-22. As explained in the Reply in Support of Plaintiffs' Preliminary Injunction, Plaintiffs do not need to exhaust their administrative remedies in this case because they are seeking relief that is not available under the IDEA. Reply ISO PI at 7-10. This issue has no apparent connection to typicality; no named plaintiff or class member has exhausted administrative remedies on this issue, because it is not necessary to do so.

the adequacy requirement as explained in their Motion at 18-19.

**B. <u>The Class Meets All Requirements Of Rule 23(b)(2)</u>**

**1. Class-Wide Injunctive Relief**

Defendants incorrectly assert that Plaintiffs do not meet the requirements of Rule 23(b)(2) because the requested injunctive relief must be "final" to the "class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants compare this case to *Jamie S.*, in which the Seventh Circuit rejected a complex injunction that involved notices being sent out, an opt-in scheme, and professional evaluations "to determine whether or not [a] child was a member of the class," followed by a specialized IEP team involving a court-appointed monitor. 668 F.3d at 489. The court found that this scheme

> requires thousands of individual determinations of class membership, liability, and appropriate remedies. . . . It does not, on its own, provide "final" relief to any class member. . . . That the putative class members must *opt in* after notice and then be evaluated for membership in the class—*before* making a claim for entitlement to compensatory education—belies the notion that the court can provide final injunctive relief to the class as a whole.

*Id.* at 499.

The injunction in *Jamie S.* was not final because it provoked a complex series of individualized determinations intended to result in an IEP. *See id.* Here, in contrast, Plaintiffs seek a single injunction "requiring Defendants to implement reasonable accommodations in the form of trauma-sensitive policies and procedures" including: comprehensive and ongoing training for all adult staff; implementation of restorative practices; and access to appropriately trained mental health counselors. Compl. at 75-76 (Request for Relief). As in *Parsons*, Plaintiffs do not seek specific accommodations for individual students, but rather to raise "the

level of care and resources" for all trauma-affected students in Compton. 754 F.3d at 687. A trauma-sensitive environment is uniform relief provided to all class members, with no additional steps required. The training and additional staff provided as part of the requested relief may result in the identification of students who require IEPs, just as the systemic changes in *Parsons* may result in additional diagnoses and treatment of individuals' uncovered medical problems. But the fact that additional benefits may flow from systemic changes produced by an injunction—here, from a trauma-sensitive environment—does not render that relief any less final.[14]

According to Defendants, the injunction sought by Plaintiffs is not final because "any order for the global remedies sought would at best have the *potential* to address *some* class members' circumstances, but would in no way assure *every* member of the class as a whole received final relief." Opp. at 24-25 (emphasis in original). Defendants maintain that if the injunction does not directly address what they characterize as "Kimberley Cervantes' truancy problems" or Virgil W.'s "unacceptable physical altercations with other students" is not a "final remedy." But the remedy sought by Plaintiffs will, in fact, eliminate or substantially reduce the manifestations of trauma expressed by Kimberly Cervantes and Virgil W. Stefanidis ¶ 29. The whole-school trauma-sensitive environment is a tested evidence-based method that addresses precisely those issues. Dorado ¶¶ 34-36; *accord* Perry ¶ 32; Bethell ¶ 57; Wong ¶ 30; Stefanidis ¶ 30. Moreover, the injunction provides a remedy that corrects the denial of a free public appropriate education by removing a significant barrier to learning for trauma-affected students.

---

[14] Courts regularly approve Rule 23(b)(2) injunctions as sufficiently final when they make systemic improvements to a system that provides services. *See, e.g.*, *Lane*, 283 F.R.D. at 602 (approving an injunction that is "aimed at providing classwide alternatives to segregated employment, regardless of a person's individualized support needs, by modifying the way defendants fund, plan, and administer the existing employment service system.").

**2. Ascertainability**

Although ascertainability, or definiteness, is accepted as an implicit requirement of Rule 23(b)(3) damages class actions, it has never been required by the Ninth Circuit for class actions seeking injunctive relief under Rule 23(b)(2). All courts of appeal considering whether ascertainability is a requirement in cases seeking only injunctive relief under Rule 23(b)(2) have held that it is not. For example, the Third Circuit recently held that "a judicially-created implied requirement of ascertainability—that the members of the class be *capable* of specific enumeration—is inappropriate for (b)(2) classes." *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3rd Cir. 2015); *see also, e.g.*, *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972); NEWBERG ON CLASS ACTIONS § 3:7 (5th Ed.). "Moreover, the enforcement of the remedy usually does not require individual identification of class members in (b)(2) class actions." *Id*. Courts within the Ninth Circuit have likewise consistently found that no ascertainability requirement is applicable to Rule 23(b)(2) classes, adopting the reasoning of *Shelton*. *In re Yahoo Mail Litig.*, No. 13-CV-04980 LHK, 2015 WL 3523908, at * 16 (N.D. Cal. May 26, 2015) (adopting the reasoning of *Shelton* and noting that "as a matter of practical application, the ascertainability requirement services little purpose in Rule 23(b)(2) classes, as there will generally be no need to identify individual class members"); *Dunakin v. Quigley*, No. C14-0567 JLR, 2015 WL 1619065, at *22 (W.D. Wash. April 10, 2015) (adopting the reasoning of *Shelton*); *see also Escalante v. Cal. Physicians' Serv.*, No. CV14-03021 DDP, 2015 WL 4477721, at *6 (C.D. Cal. July 14, 2015).

Even if there were some type of ascertainability required for injunctive relief classes under Rule 23(b)(2)—which there is not—it would be clear that plaintiffs bringing a case under that rule are not required to define the class with the same definiteness as under 23(b)(3). Rule 23(b)(2) was designed for "various actions in the civil-rights field where a party is charged with discriminating unlawfully against

a class, *usually one whose members are incapable of specific enumeration.*" Fed. R. Civ. P. 23(b), advisory committee notes (emphasis added); *see also, e.g.*, *Joyce v. City & County of San Francisco*, No. C-93-4149 DLJ, 1994 WL 443464, at *4 (N.D. Cal. Aug. 4, 1994). This is because "procedural protections" such as "predominance, superiority, mandatory notice, and the right to opt out" are considered "unnecessary to a (b)(2) class." *Dukes*, 131 S. Ct. at 2558 (emphasis omitted). Because notice to class members is not required, "less precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(3)." *Multi-Ethnic Immigrant Workers Org. Network v. City of L.A.*, 246 F.R.D. 621, 630 (C.D. Cal. 2007); *see also Escalante*, 2015 WL 4477721, at *6.

This case is a classic civil rights case for injunctive relief, defining its class around a qualifying condition or a need for particular types of services.[15] There is no need to identify class members because the relief will be school-wide. In fact,

---

[15] *See, e.g.*, *Parsons*, 754 F.3d at 678 (affirming certification of a class of "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practice of the A[rizona] D[epartment of] C[orrections]"); *Armstrong v. Davis*, 275 F.3d 849, 856-57 (9th Cir. 2001) (affirming class "of all present and future California state prisoners and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities"), *abrogated in non-pertinent part as recognized by*, *Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014); *Lane*, 283 F.R.D. at 594 (certifying "[i]ndividuals with intellectual or developmental disabilities . . . who are qualified for supported employment services"); *Katie A. v. Diana Bonta*, 433 F. Supp. 2d 1065, 1067 (C.D. Cal. 2006) (certifying class of foster children who "have a mental illness or condition that has been documented or, had an assessment already been conducted, would have been documented; and . . . who need individualized mental health services"), *overruled on other grounds*, 481 F.3d 1150 (9th Cir. 2007); *K.M. v. Regence BlueShield*, No. C13-1214 RAJ, 2014 WL 801204, at *12 (W.D. Wash. Feb. 27, 2014) (certifying class of beneficiaries who "require neurodevelopmental therapy for the treatment of a qualified mental health condition.").

individualized assessments[16] of students could prove harmful. Dorado ¶ 33; Wong ¶ 36. Plaintiffs do not seek to bypass the "long, arduous process" of identifying children who suffer from trauma. Opp. at 7. This identification is not necessary or beneficial and, indeed, would be in vain in the absence of the requested system-wide injunction.

Because of the nature of the relief sought, the Seventh Circuit's analysis of definiteness in *Jamie S.* is inapplicable. There, the court was concerned with the difficulty of identifying class members in order to implement the complex, individualized remedial scheme, described above, which involved the issuing of notices and individual student evaluations. 668 F.3d at 489, 496 ("In theory such a class might make sense if the process of identifying unknown class members was relatively simple."). The court noted that "the elaborate scheme for identifying class members via a hybrid IEP process dramatically illustrates the fatal indefiniteness of this class." *Id.* at 497.

Here, there are no such issues in implementing the injunctive relief, which is not at all individualized, and there is no need to identify class members.

## III. CONCLUSION

For the reasons articulated above and in Plaintiffs' Motion for Class Certification, Plaintiffs respectfully request that this Court certify the student class.

DATED: August 3, 2015 Respectfully submitted,

By: /s/ Mark D. Rosenbaum
Mark D. Rosenbaum

---

[16] Defendants' point that the class is undefinable because the "multitude of conditions attributed by the DSM-5 as 'trauma-related' are both far-reaching and ever-changing," is also irrelevant; the relief sought here applies school-wide, not to specific etiologies of trauma. Dorado ¶¶ 29-30; Perry ¶ 32; Bethell ¶ 57; Wong ¶ 30; Stefanidis ¶ 30; Courtney ¶ 17. Defendants are not relieved of a responsibility to provide accommodations to students simply because medical science is evolving.

By: /s/ Kathryn A. Eidmann
Kathryn A. Eidmann

By: /s/ Alisa Hartz
Alisa Hartz

Laura Faer
Anne Hudson-Price
PUBLIC COUNSEL LAW CENTER

By: /s/ Michael H. Strub, Jr.
Michael H. Strub, Jr.

Morgan Chu
IRELL & MANELLA LLP

*Attorneys for Plaintiffs and the Proposed Class*

## FILER'S ATTESTATION

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all signatories on whose behalf this filing is jointly submitted concur in the filing's content and have authorized me to file this document.

DATED: August 3, 2015

Respectfully submitted,

/s/ Kathryn A. Eidmann
Kathryn A. Eidmann

PUBLIC COUNSEL LAW CENTER
*Attorneys for Plaintiffs and the Proposed Class*