UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)               Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

              Deputy Clerk:                          Court Reporter:
              Rita Sanchez                            Not Reported

              Attorneys Present for Plaintiff:        Attorneys Present for Defendant:
              None Present                            None Present

Proceedings (In Chambers):   ORDER DENYING PLAINTIFFS' MOTION FOR
                             CLASS CERTIFICATION [57]


        Before the Court is Plaintiffs' Motion for Class Certification (the "Motion").
(Docket No. 57).  The Court has read and considered the papers filed on the Motion,
and held a hearing on **August 20, 2015**.  As set forth below, the Motion is **DENIED**
***without prejudice***.  Plaintiffs have not met their burden in establishing "numerosity."
The current estimate of the proposed class requires more extrapolation than what is
permissible for a good faith estimate of the class size.  Furthermore, Plaintiffs have not
yet demonstrated that the named Student Plaintiffs satisfy "typicality," as their
membership in the proposed class is uncertain based on the current evidentiary record.

## I.    **BACKGROUND**

        On May 18, 2015, students Peter P. (by Carolina Melendez, guardian ad litem),
Kimberly Cervantes, Phillip W. (by Beatrice W., guardian ad litem), Virgil W. (by
Beatrice W., guardian ad litem), Donte J. (by Lavinia J., guardian ad litem) (the
"Student Plaintiffs"), on behalf of themselves and all others similarly situated, along
with teachers Rodney Curry, Armando Castro, II, and Maureen McCoy (the "Teacher
Plaintiffs") (collectively, "Plaintiffs") initiated the present suit by filing a Complaint.
(Docket No. 1).

        Plaintiff Peter P. is seventeen years old, resides within the boundaries of the
Compton Unified School District ("CUSD") and Dominguez High School, and attends

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Dominguez High School.  (Compl. ¶ 40).  Plaintiff Kimberly Cervantes is eighteen years old, resides within the boundaries of CUSD and Dominguez High School, and attends Cesar Chavez Continuation School.  (*Id*. ¶ 41).  Plaintiff Phillip W. is fifteen years old, resides within the boundaries of CUSD and Compton High School, "is currently in expulsion procedures from Dominguez High School," and attends school at "Team Builders, an alternative school in CUSD."  (*Id*. ¶ 42).  Plaintiff Virgil W.— Phillip W.'s twin brother — is fifteen years old, resides within the boundaries of CUSD and Compton High School, and attends Dominguez High School.  (*Id*. ¶ 43). Plaintiff Donte J. is thirteen years old, resides within the boundaries of CUSD and Whaley Middle School, and attends Whaley Middle School.  (*Id*. ¶ 44).

Plaintiff Rodney Curry is a teacher at Dominguez High School in CUSD."  (*Id*. ¶ 45).  "Plaintiff Armando Castro II is a teacher at Cesar Chavez Continuation School in CUSD."  (*Id*. ¶ 46).  "Plaintiff Maureen McCoy is a teacher at Centennial High School in CUSD."  (*Id*. ¶ 47).

Defendants in this action are CUSD, as well as Darin Brawley (in his official capacity as Superintendent of CUSD), and Micah Ali, Satra Zurita, Margie Garrett, Charles Davis, Skyy Fisher, Emma Sharif, and Mae Thomas in their official capacities as members of the Board of Trustees of CUSD (the "Individual Defendants") (collectively, "Defendants").

The Student Plaintiffs represent a putative class of current and future students in CUSD.  (Compl. ¶ 55).  "Defendant CUSD operates schools in the south central region of Los Angeles County and encompasses the city of Compton and portions of the cities of Carson and Los Angeles."  (*Id*. ¶ 48).  "Compton is among the most socioeconomically distressed cities in Southern California, and it experiences attendant high rates of violent crime."  (*Id*. ¶ 74).  The Complaint notes that "[d]ecades of research have proven that children who grow up in high-poverty neighborhoods characterized by minimal investment in schools, quality housing, after-school programs, parks, and other community resources are disproportionately likely to be exposed to trauma and complex trauma."  (*Id*. ¶ 1 (footnote omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

"Trauma," as described in the Complaint, "stems from such causes as exposure
to violence and loss, family disruptions related to deportation, incarceration and/or the
foster system, systemic racism and discrimination, and the extreme stress of lacking
basic necessities, such as not knowing where the next meal will come from or where to
sleep that night."  (*Id.* ¶ 1).  Similarly, "[c]omplex trauma stems from the exposure to
multiple persistent sources of violence, loss, and other adverse childhood experiences
('ACEs'), and describes children's exposure to these events and the impact of this
exposure."  (*Id.* (footnote omitted)).

The Student Plaintiffs and class members are alleged to "have experienced and
continue to experience traumatic events that profoundly affect their psychological,
emotional, and physical well-being."  (*See id.* ¶¶ 14-35, 73, 75-76).  For example, the
Complaint alleges that the following are "[r]epresentative examples of the traumatic
incidents of violence that [Student] Plaintiffs have experienced or witnessed":

- Plaintiff Peter P. was repeatedly physically and sexually abused by his
  mother's boyfriends and witnessed physical abuse of his siblings and
  mother.
- Plaintiff Peter P. reports that he watched as his best friend was shot and
  killed.
- Plaintiff Peter P. was stabbed with a knife while trying to protect a friend.
- Plaintiff Peter P. reports that he has witnessed over twenty people being
  shot.
- Plaintiff Kimberly Cervantes was sexually assaulted on the bus on her
  way home from school.
- Plaintiff Phillip W. estimates that he has witnessed more than twenty
  people being shot, one of whom was a close friend who died when shot in
  the head.
- Plaintiff Virgil W. witnessed his father pointing a gun at his mother.
- A stranger attempted to stab Plaintiff Donte J. and his friends when they
  were standing in front of the Whaley Middle School campus.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

- Plaintiff Donte J. was arrested by police at gunpoint on school campus when he was mistaken for someone else.
- Plaintiff Donte J. was attacked by four people on his way to school.

(*Id.* ¶ 76).  Other sources of trauma include: the death of or separation from a loved one (*see id.* ¶¶ 85-90); placement of children in the foster system (*see id.* ¶¶ 91-94); extreme poverty, homelessness, and other socioeconomic hardship (*see id.* ¶¶ 95-97); and discrimination and racism (*see id.* ¶¶ 98-105).

Peter P., for example, was initially separated from his siblings when he was placed in the foster system, has "moved in and out of a series of foster homes," has two older brothers and a prior caretaker who are currently incarcerated, and "spent two months of homelessness sleeping on the roof of his high school cafeteria." (*Id.* ¶¶ 14-18, 97).  Similarly, Kimberly Cervantes has "experienced multiple incidents of racism," got into an altercation with a security guard at Dominguez High School while returning a book to the library, witnessed the deaths of two students, and informed a fellow student that she identified as bisexual only to have her teacher say in front of her class that Cervantes "shouldn't be gay" and that it was "wrong." (*Id.* ¶¶ 22-23). Phillip W. "has experienced the deaths of two close friends—one of whom he witnessed get shot in the head last September," and "lost a close family member to cancer." (*Id.* ¶ 28).  Virgil W. "also recently experienced the death of a close friend and a cousin, and nearly lost another close friend and cousin." (*Id.* ¶ 89).  Finally, Donte J. has experienced gang-related violence, despite his "lack of involvement with any gang," and was approached by an assailant with a knife who threatened to stab him. (*Id.* ¶ 35).

The Complaint alleges that the neurobiological effects of the complex trauma to which Student Plaintiffs have been subjected impair their ability to perform activities essential to education—including, but not limited to, learning, thinking, reading, and concentrating—and thus constitute a disability under Section 504 of the Rehabilitation Act ("Section 504") and the Americans With Disabilities Act ("ADA"). (*See id.* ¶¶ 2,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015

Title:      P.P., et al. -*v-* Compton Unified School District, et al.

4, 54-66, 71).  The Complaint details the body's response to trauma, including how trauma affects the brain.  (*See, e.g.*, Compl. ¶¶ 107-22).

In this vein, Peter P. states that, as a result of the "repeated and sustained trauma" he has experienced, "he often experiences uncontrollable anger, as well as "deep sadness and depression." (*Id*. ¶ 19).  Peter P. "previously had shown an ability to achieve high grades in certain honors classes," but the Complaint alleges that the "complex trauma in his life has at times caused his grades to decline sharply." (*Id*. ¶ 20).  "Over the course of his academic career, [Peter P.] has been repeatedly suspended for disobedient, angry, or aggressive behavior, and has been involuntarily transferred (or 'expelled')" from a number of CUSD schools. (*Id*.).  Similarly, the Complaint alleges that Kimberly Cervantes "had trouble focusing and concentrating in class and has missed a significant amount of class" as a result of the multiple traumas she has suffered. (*Id*. ¶¶ 22, 24, 26).  Moreover, Phillip W. allegedly "has difficulty focusing, concentrating, and recalling information in school" and "feels detached or angry much of the time." (*Id*. ¶ 29).  Phillip W. has been expelled from three mainstream high schools in his freshman year because he has been in physical altercations with other students. (*Id*. ¶ 31).  Virgil W. is also alleged to "struggle[] with anger due to the traumatic violence and loss he has endured." (*Id*. ¶ 33).  As a result of fights he has been involved in at school, Virgil W. has been repeatedly suspended and was "expelled" this year from Centennial High School. (*Id*.).  Finally, the Complaint alleges that, due to the traumatic events he has suffered, Donte J. "has had difficulty focusing in class . . . and was recently suspended for slamming the door to the counselor's office when he tried to request help and felt that he was getting none." (*Id*. ¶ 36).

Trauma-sensitive schools are alleged to exhibit the following core components: "(1) training educators to recognize, understand, and proactively recognize and address the effects of complex trauma, in part through building students' self-regulation and social-emotional learning skills; (2) developing restorative practices to build healthy relationships and resolve conflicts peacefully and avoid re-traumatizing students

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

through the use of punitive discipline; and (3) ensuring consistent mental health support is available to appropriately meet student needs."  (*Id*. ¶ 6).

In contrast, CUSD is alleged to have failed to "train and sensitize teachers or administrative personnel to recognize, understand, and address the effects of complex trauma"; provide staff and teachers with "training in evidence-based trauma interventions that have been demonstrated to reduce the effects of trauma"; "notify parents of its obligation to identify and provide accommodations to students whose learning may be impaired due to the experience of trauma"; "implement restorative practices necessary to support healthy relationships"; "address conflict and violence in a manner that recognizes the impact of complex trauma on the ability to self-regulate in high stress or anxiety situations"; or provide adequate (or any) mental health support.  (*Id*. ¶ 7).

Consequently, Plaintiffs contend that Defendants "have ignored and affirmatively breached their responsibility to accommodate students whose access to education is fundamentally impaired by reason of the trauma they have endured" (*id*. ¶ 7); rather, Defendants are alleged to have "subject[ed] trauma-impacted students to punitive and counter-productive suspensions, expulsions, involuntary transfers, and referrals to law enforcement that push them out of school, off the path to graduation, and into the criminal justice system" (*id*. ¶ 8).

The Complaint alleges that the Student Plaintiffs have been, and without school-wide trauma-sensitive accommodations will continue to be, denied meaningful access to public education on account of their disabilities.  (*See id*. ¶¶ 7, 13, 197, 220). Further, the Complaint alleges that "[a]s a consequence of Defendants' failure to provide teachers with the support, resources, and training to address the high concentration of CUSD students who have experienced trauma, [the Teacher Plaintiffs] report experiencing burnout and secondary traumatic stress."  (*Id*. ¶¶ 45-47, 156). Defendants' alleged failure to accommodate students suffering from complex trauma has also purportedly resulted in the Teacher Plaintiffs "exert[ing] significant additional effort both in teaching and" managing the classroom, as well as spending their own

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                    Date:  September 29, 2015
Title:        P.P., et al. -*v-* Compton Unified School District, et al.

"money and personal time in attempting to alleviate the effects of complex trauma on" students.  (*Id*. ¶¶ 45-47).

The Complaint asserts claims for (1) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (2) violation of Department of Education regulations regarding "location and notification," 34 C.F.R. § 104.32; (3) violation of Department of Education regulations regarding "procedural safeguards," 34 C.F.R. § 104.36; (4) violation of Department of Education regulations regarding "free appropriate public education," 34 C.F.R. § 104.33; and (5) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

On July 17, 2015, Plaintiffs filed the Motion.  The Motion requests that Court determine that a class action is proper as to Plaintiffs' claims under Section 504 of the Rehabilitation Act and Title II of the ADA, as well as Plaintiffs' claim for declaratory and injunctive relief.  Moreover, the Motion requests that the Court certify a class defined as:

> All present and future students in Compton Unified School District with trauma-induced disabilities, as defined under Section 504 of the Rehabilitation Act and Americans with Disabilities Act, who are, will be, or have been denied meaningful access to education (the "Plaintiff Class").

(Mot. at 4-5).  "The class includes, but is not limited to, students with trauma-related conditions recognized by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)," including post-traumatic stress, anxiety, dissociative, conduct, somatoform, depressive, and substance-related and addictive disorders.  (*Id*. at 5).  The Motion further requests that the Court appoint Student Plaintiffs as class representatives, and appoint Public Counsel and Irell & Manella LLP as class counsel.

On July 27, 2015, Defendants filed an Opposition to Plaintiffs' Motion for Class Certification (the "Opposition").  (Docket No. 60).  On August 3, 2015, Plaintiffs filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

a Reply in Support of Plaintiffs' Motion for Class Certification (the "Reply").  (Docket No. 65).

## II.   EVIDENTIARY OBJECTIONS

Defendants have filed Objections to Evidence in Support of Plaintiffs' Motion for Preliminary Injunction ("Defendants' Objections").  (Docket No. 59).  As many of the documents at issue in these objections are also cited in connection with the Motion, the Court briefly addresses the Objections here.  Similarly, Plaintiffs have filed Objections to Evidence in Defendants' Oppositions to Motions for Preliminary Injunction and Class Certification ("Plaintiffs' Objections").  (Docket No. 64).  Plaintiffs also filed Responses to Defendant' Objections to Evidence in Support of Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Response").  (Docket No. 62).

Ultimately, the Court declines to rule individually on each evidentiary objection, as it concludes below that it is largely able to evaluate the merits of the Motion without resort to the challenged portions of the documents provided.  To the extent any particular objection is relevant to the analysis, the Court addresses it separately below.  All other objections are **OVERRULED *without prejudice*** to these challenges being raised later in the proceedings.

## III.   MOTION FOR CLASS CERTIFICATION

The party seeking to certify a class bears the burden of formulating a sufficient class definition and demonstrating that the class meets the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *See, e.g., United Steel, Paper & Forestry, Rubber Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010) ("Where a putative class satisfies all four requirements of Rule 23(a), it still must meet at least one of three additional requirements outlined in Rule 23(b) in order to be eligible for certification.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

Under Rule 23(a), a class action is only proper if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "Rule 23 does not set forth a mere pleading standard"; rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

Although Rule 23(b) provides for several different types of class actions, Plaintiffs move for certification under Rule 23(b)(2), which requires "the party opposing the class [to have] acted or [have] refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

A.    **Rule 23(a)**

1. **Numerosity**

Numerosity requires that the class be so numerous that joinder of all members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  "Though some courts have said that a class action determination may not be based on mere speculation or allegation, it is well settled that a plaintiff need not allege the exact number or specific identity of proposed class members."  *Newberg on Class Actions,* § 3:13 (5th ed.) (footnotes omitted).  Although no specific number is necessary for satisfaction of numerosity, as Plaintiffs point out, "district courts in this Circuit have found that classes with as few as 39 members met the numerosity requirement."  *Franco-Gonzales v. Napolitano*, No. CV 10-02211, 2011 U.S. Dist. LEXIS 158130, at *26 (C.D. Cal. Nov. 21, 2011).

Here, Plaintiffs argue that numerosity is satisfied because, "[u]sing a conservative measure, an estimated 24.6 percent of CUSD's 22,000 students—or

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015

Title:       P.P., et al. -*v*- Compton Unified School District, et al.

approximately 5,412 students—have experienced two or more severe traumas."  (Mot. at 11 (citing Declaration of Christina Bethell ("Bethell Declaration") (Docket No. 42-12) ¶¶ 39, 41)).

Defendants, in contrast, contend that "Plaintiffs have not established that the class is 'so numerous that joinder of all members is impracticable' because only conclusory allegations with no reasonable basis have been put forward to satisfy the numerosity prerequisite of Rule 23."  (Opp. at 8 (quoting Fed. R. Civ. P. 23(a)(1))).  In this regard, Defendants argue that "Plaintiffs have not provided a reasonable basis for the issue actually in question: whether there are enough students whose rights have been violated to make joinder of those claims infeasible."  (*Id*. at 10 (citing Mot. at 9-11)).  Moreover, Defendants argue that Plaintiffs have not demonstrated why joinder is impracticable, as all of the putative class members reside in the same school district.  (*Id*. at 10-11).

Addressing the last of these contentions first, and as Plaintiffs point out, classes have previously been certified comprising members residing within the same school district.  (Reply at 4).  To the extent Defendants argue that this geographical issue defeats satisfaction of Rule 23(a)(1) here, the Court disagrees.  *See, e.g*., *Ollier v. Sweetwater Union High Sch. Dist*., 251 F.R.D. 564, 564 (S.D. Cal. 2008) (certifying class of Castle Park High School female students who participate or could participate in athletics at the school in action alleging violations of Title IX and the Equal Protection clause of the Fourteenth Amendment).  Although geographic issues might demonstrate that joinder is impracticable in some cases, under the facts of this case, the Court does not conclude that the relative geographic proximity renders joinder practicable.

As to the remaining contentions made by Defendants, Plaintiffs have provided expert testimony regarding "adverse childhood experiences" ("ACEs"), noting that "[a]ny references to ACEs implicitly refers to the existence of trauma events," and summarizing "quantitative estimates of the population prevalence of ACEs . . . within the geographical borders of Compton, California" based on "specific data from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                    Date:  September 29, 2015
Title:      P.P., et al. -v- Compton Unified School District, et al.

most recent [as of June and July of 2015] National Survey of Children's Health and
Compton specific data obtained through the National Census Bureau's confidential
American Community Survey data files," methods "approved by the National Census
Bureau's Disclosure Review Board."  (Bethell Decl. ¶¶ 9, 38).  This data revealed that
"54.2 percent of children in Compton are estimated [to] have experienced one or more
of the 9 types of ACEs assessed through the NSCH," and "[o]ne in four (24.6 percent)
children in Compton were estimated to experience 2 or more [of] these ACEs."  (Id. ¶
39).

       In evaluating expert testimony provided in connection with a class certification
motion, this Court applies the evidentiary standard set forth in *Daubert v. Merrell Dow
Pharms., Inc.*, 509 U.S. 579, 597 (1993).  *See Ellis*, 657 F.3d at 982 (stating that
*Daubert* is the correct evidentiary standard to apply to expert testimony at the class-
certification stage); *cf. Dukes*, 131 S. Ct. at 2553 ("The District Court concluded that
*Daubert* did not apply to expert testimony at the certification stage of class-action
proceedings. . . . We doubt that is so . . . .").

       At the outset, the Court notes that Federal Rule of Evidence 702 provides as
follows:

              If scientific, technical, or other specialized knowledge will
              assist the trier of fact to understand the evidence or to determine
              a fact in issue, a witness qualified as an expert by knowledge,
              skill, experience, training, or education, may testify thereto in
              the form of an opinion or otherwise, if (1) the testimony is
              based upon sufficient facts or data, (2) the testimony is the
              product of reliable principles and methods, and (3) the witness
              has applied the principles and methods reliably to the facts of
              the case.

Fed. R. Evid. 702.  "Under *Daubert*, the trial court must act as a 'gatekeeper' to
exclude junk science that does not meet Federal Rule of Evidence 702's reliability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                 Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

standards by making a preliminary determination that the expert's testimony is
reliable." *Ellis*, 657 F.3d at 982 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,
145, 147–49 (1999)).  "*Daubert* does not require a court to admit or to exclude
evidence based on its persuasiveness; rather it requires a court to admit or exclude
evidence based on its scientific reliability and relevance." *Id*. (citing *Kumho Tire Co*.,
526 U.S. at 589-90).  "A trial court has broad latitude not only in determining whether
an expert's testimony is reliable, but also in deciding how to determine the testimony's
reliability." *Id*. (citing *Kumho Tire Co.*, 526 U.S. at 152).  "The focus, of course, must
be solely on principles and methodology, not on the conclusions that they generate."
*Daubert*, 509 U.S. at 595.

        Pursuant to *Daubert*, a district court conducts a two-pronged preliminary
assessment that the expert testimony "is not only relevant but reliable." *Daubert*, 509
U.S. at 589.

        First, the district court determines "whether the reasoning or methodology
underlying the testimony is scientifically valid." *Ellis,* 657 F.3d at 592-93; *see also
Kennedy v. Collagen Corp.* 161 F.3d 1226, 1228 (9th Cir. 1998) (applying *Daubert* to
expert testimony).  In evaluating the validity of the methodology, the district court may
consider the following factors: (1) whether the theory "can be (and has been) tested";
(2) whether it "has been subjected to peer review and publication"; (3) the "known or
potential rate of error," if applicable; and (4) whether the theory or methodology is
generally accepted in the "relevant scientific community." *Daubert*, 509 U.S. at 593-
94; *see also Kumho Tire Co*., 526 U.S. at 153 ("[W]hether *Daubert's* specific factors
are, or are not, reasonable measures of reliability in a particular case is a matter that the
law grants the trial judge broad latitude to determine.").  Reliable testimony must be
grounded in the methods and procedures of science and signify something beyond
"subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.  The Ninth
Circuit has observed:

                When considering the applicability of *Daubert* criteria to the
                particular case before the court, the inquiry must be flexible.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

> Peer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest, to be in the literature. . . . '[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'

*Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (footnotes omitted).  Rather, "'[e]xpert opinion testimony . . . is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.'"  *Id.*

The second prong under *Daubert* requires the expert testimony to be "relevant to the task at hand."  *Id.* at 597.

In the class certification context, moreover, it is not enough for the district court to determine the admissibility of the expert testimony at issue; rather, the Court must be mindful to weigh the persuasiveness as well.  *Ellis,* 657 F.3d at 982 (noting that, when discussing competing expert testimony, the district court "confused the *Daubert* standard it correctly applied to Costco's motions to strike with the 'rigorous analysis' standard to be applied when analyzing" a Rule 23(a) factor).

Here, Defendants have made no objections to the Bethell Declaration.  Dr. Bethell is "a Professor of Population, Family and Reproductive Health at Johns Hopkins Bloomberg School of Public Health and [is] the founding director of The Child and Adolescent Health Measurement Initiative ('CAHMI') and the National Data Resource Center for Child and Adolescent Health."  (Bethell Decl. ¶ 1).  Prior to teaching at Johns Hopkins, Dr. Bethell "was a professor in the Department of Pediatrics, School of Medicine at Oregon Health and Science University for over ten years."  (*Id.*).  Dr. Bethell "received a bachelor's degree in psychology from the University of California, Los Angeles, a master's in public health and a master's in business administration from the University of California, Berkeley, and a doctorate in health services and policy research from the University of Chicago."  (*Id.* ¶ 2).  Dr. Bethell's "research and work focus on the performance and improvement of public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

systems of care in protecting and promoting the healthy development of children,
youth, and families," and she has "published over 100 peer-reviewed articles and
reports and present frequently at national conferences."  (*Id.* ¶ 3).  In preparing her
Declaration, Dr. Bethell "relied on peer-reviewed academic literature on the
neurobiology of trauma that [she has] previously referenced in [her] own publications,
academic literature concerning adverse childhood experiences, nationwide and
Compton-specific data gathered by CAHMI, and [her] personal experience researching
and identifying children suffering from or at risk of suffering from emotional,
developmental, and behavioral conditions in both the educational and health care
contexts."  (*Id.* ¶ 6).

       In her Declaration, Dr. Bethell provides the statistics discussed above regarding
the prevalence of ACEs among children in the Compton area.  (*See id.* ¶¶ 38-39).  Dr.
Bethell states that "[i]t is significant to note that these figures represent a conservative
estimate of the prevalence of exposure to adverse childhood experiences that often
result in serious, persistent and chronic trauma and stress known to impact child
development and cognitive and social and emotional skills."  (*Id.* ¶ 41).  Dr. Bethell
further states that "[t]he surveys upon which this data relies are reported by parents
about their children's experiences"; "[a]n extensive survey design and testing process,
co-led by [Dr. Bethell] and colleagues at the Child and Adolescent Health
Measurement Initiative and under leadership of the federal Centers for Disease Control
and Prevention and federal Maternal and Child Health Bureau, ensured that the data
collected captures only children's experiences about which parents are aware and can
validly report on."  (*Id.*).  "For this reason, some types of ACEs are not asked about,"
and, additionally, "methods were designed to ensure reports are highly sensitive to
ACEs known to be predictive of the type of childhood trauma and chronic stress
impacting child development."  (*Id.*).  In sum, "survey instruments were intentionally
designed to create a relatively high threshold and only identify the most serious
instances of trauma and adverse experiences with potential to have significant effects
on a child's health and development."  Dr. Bethell states that, "[w]hat this means is
that, as high as rates of ACEs are for Compton, if there is a bias, it is in the direction of
underestimating the scope of this problem for children and families."  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -v- Compton Unified School District, et al.

For the moment, the Court will postpone ruling on the admissibility or persuasiveness of the statistics presented because, even if the Court were to conclude that the methodology used to generate them was reliable and the testimony is persuasive, there remain questions as to actual class size (which are tied to the relevance of Dr. Bethell's testimony).

Plaintiffs have also provided evidence from the Educational Demographics Unit of the California Department of Education that CUSD enrollment for the 2014-15 school year was 22,106.  (Declaration of Sally Chung ("Chung Declaration") (Docket No. 42-4), ¶¶ 23-25, Ex. 2).  When combined with the statements above in the Bethell Declaration, this yields an estimate of 24.6 percent of CUSD's 22,000 students—or approximately 5,412 students—who have experienced two or more ACEs.

Defendants object to the majority of the Chung Declaration on the basis that, *inter alia*, the statistics cited are unauthenticated, the statistics are inadmissible hearsay, and the declarant, an "Organizer/Researcher," lacks personal knowledge or expertise regarding the truth of the statistics being cited.  (Defendants' Objection No. 9).  However, the Chung Declaration describes Sally Chung's qualifications as a current "Organizer/Researcher" for Public Counsel, prior employment as an Educational Justice Research Analyst at the American Civil Liberties Union of Southern California, and use of "Data Quest, an online data reporting system developed and maintained by the California Department of Education" in gathering the relevant statistics.  (Chung Decl. ¶¶ 2-3).  Ms. Chung further outlines the steps that she performed through DataQuest in order to access the district-level enrollment for CUSD during the 2014-15 school year.  (*Id*. ¶¶ 23-25).  As Plaintiffs point out, "Ms. Chung is not offering her declaration as an expert statement, but rather as an individual who is fully capable of compiling publicly available materials for the Court's notice." (Plaintiffs' Response ¶ 9).  As to this numerosity discussion, therefore, the Court **OVERRULES** Defendants' Objection Number 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

The presented statistics, in short, suggest that there are sufficient numbers of students enrolled in CUSD who have experienced two or more ACEs to make joinder of ***that*** group impracticable.  However, the Court is left with some questions as to how many of the identified children in CUSD who have been exposed to two or more ACEs are (1) actually suffering from cognizable trauma-induced disabilities for purposes of the proposed class definition, and (2) have been denied meaningful access to their education for purposes of the proposed class definition.

The Court recognizes that, "although the plaintiff has the burden of showing that joinder is impracticable, a good-faith estimate of the class size is sufficient when the precise number of class members is not readily ascertainable."  *Newberg on Class Actions*, § 3:13 (5th ed. 2011) (footnote omitted).

Nevertheless, the Court is not convinced that the statistics cited by Plaintiffs reflect an estimate of the class size.  The Court is aware that the Bethell Declaration talks about the relationship between trauma and ACEs generally, and states that "[a]ny reference to ACEs implicitly refers to the existence of trauma events."  (*See, e.g.*, Bethell Decl. ¶¶ 8-9).  The following paragraphs describe the effect traumatic stress "may" have, "can" have, or even "often" has on a child's development.  (*Id.* ¶¶10, 12-17).  The Bethell Declaration further presents statistics demonstrating the relationship between children exposed to trauma and children with behavioral, emotional, or developmental problems ("EBD"), discussion of the fact that "[c]hildren with EBD are often significantly inhibited in their ability to participate in life activities or accomplish basic life tasks," description of a study that measured "the prevalence of poor health and performance indicators, including general poor health, special health care needs, emotional, behavioral, or developmental disabilities, asthma, ADHD, autism, obesity/overweight, and behavioral problems, in children exposed to ACEs, a strong predictor of childhood trauma," results from the same study regarding the relationship between ACEs and negative educational results, and results from a 2012 study demonstrating that "[o]n the whole, the existence of EBD was more harmful to academic performance than were traditional – and more easily identified and accepted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

– forms of disabilities, highlighting the severity of the impacts of trauma on school performance."  (*Id.* ¶¶ 19-37).

In support of their numerosity argument, Plaintiffs also cite to the Declaration of Bruce Perry ("Perry Declaration") (Docket No. 42-15) ¶ 26, and Declaration of Joyce Dorado ("Dorado Declaration") (Docket No. 42-14) ¶¶ 6-12 (in addition to the Bethell Declaration ¶¶ 12-18) to support their contention that "[t]he scientific record conclusively establishes that complex trauma affects 'neurological [and] brain' functions, and that these neurobiological changes impair 'learning, reading, concentrating, thinking, [and] communicating.'"  (Mot. at 11).  Plaintiffs go on to argue:

> The brain of a young person who has been exposed to complex trauma undergoes substantial neurobiological changes.  Perry ¶ 12.  The effect of these changes is to demonstrably impair the ability of the brain to store and retrieve information—impeding memory, concentration, and communication—and to regulate emotion and impulses.  Perry ¶ 26.  Psychological evaluations of the Student Plaintiffs have confirmed that the effects of the complex trauma the Student Plaintiffs have experienced substantially limit one or more life activities, including: learning, reading, concentrating, thinking, and/or communicating.  Stefanidis ¶ 29.  Medical science gives every reason to believe that class members exposed to similar complex trauma will experience similar limitations.

> Using a conservative measure, an estimated 24.6 percent of CUSD's 22,000 students—or approximately 5,412 students— have experienced two or more severe traumas.  *See* Bethell ¶¶ 39, 41.  Because the effects of such cumulative exposure constitute a disability limiting access to education, the putative class tragically includes thousands of CUSD students.

---

CIVIL MINUTES—GENERAL                                        17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 15-3726-MWF (PLAx)                **Date:  September 29, 2015**

Title:        P.P., et al. -*v*- Compton Unified School District, et al.

(Mot. at 11 (footnote omitted)).

Even so, and notwithstanding any admissibility/persuasiveness inquiries the Court might otherwise have to engage in regarding the cited testimony, the Court is inclined to conclude that numerosity has not been sufficiently demonstrated based on the record before it.  For instance, the Court is not prepared to conclude that students who have experienced two or more ACEs are automatically suffering from cognizable trauma-induced disabilities and have been (or will be or are being) denied meaningful access to their education for purposes of the proposed class definition; nor is the Court prepared to estimate the prevalence with which exposure to two or more ACEs results in cognizable trauma-induced disabilities and lack of meaningful access to education, such that a class size estimate could be extrapolated from the CUSD ACE statistics. Without such a link between the statistics presented and the class definition, the Court is not prepared to conclude that numerosity is satisfied.  *See Siles v. ILGWU Nat'l Retirement Fund*, 783 F.2d 923, 930 (9th Cir. 1986) (upholding district court's denial of class certification because plaintiff failed to introduce evidence linking the number of employees who lost their jobs to the number who did not receive a pension, worked ten years in covered employment, etc.); *Rozema v. The Marshfield Clinic*, 174 F.R.D. 425, 437 (W.D. Wis. 1997) (abrogated on other grounds) (although courts permitted to make common sense assumptions in support of finding numerosity, plaintiffs failed to cite evidence to tie their estimate to relevant product and geographic markets).  The Court acknowledges, however, that Plaintiffs might very well be able to satisfy this requirement upon further development of the record.

As a general note, the Court recognizes that Plaintiffs have provided extensive expert testimony in support of their Motion, as well as their Motion for Preliminary Injunction (Docket No. 42).  The Court is also aware that Defendants have failed to object to the majority of Plaintiffs' expert testimony.  Moreover, the decisions the Court reaches in connection with the Motion may well be resolved through further argument and evidentiary submissions from the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)               Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

However, without further development of the record (and any attendant *Daubert* or related analysis and, to the extent necessary, hearings), the Court is largely unable to reach resolution of these issues for purposes of granting the Motion.

## 2.  Commonality

The primary differences between the parties' theories of this case appear to revolve around issues of commonality.

### a.  *Legal Standard*

Rule 23(a)(2)'s "commonality" requirement is satisfied if 'there are questions of law or fact common to the class.'"  Fed. R. Civ. P. 23(a)(2).  For purposes of this rule, "'[e]ven a single [common] question'" will do.  *Dukes,* 131 S. Ct. at 2556 (alterations in original) (quoting *id*. at 2566 n. 9 (Ginsberg J., dissenting)).

The Supreme Court has clarified that "[c]ommonality requires the plaintiff to demonstrate that class members 'have suffered the same injury.'"  *Dukes,* 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  The class members' "claims must depend upon a common contention."  *Id.*  The common contention "must be of such a nature that it is capable of classwide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  However, the common questions of law or facts cannot "mean merely that [the class members] have all suffered a violation of the same provision of law."  *Id.*  In short, "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id*. (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015

Title:        P.P., et al. -*v*- Compton Unified School District, et al.

As discussed above, "Rule 23(a)(2) is not 'a mere pleading standard,' so establishing commonality sometimes requires affirmative evidence, which the courts must subject to 'rigorous analysis.'"  *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting *Dukes*, 131 S.Ct. at 2551).  This "rigor often 'will entail some overlap with the merits of the plaintiff's underlying claim.'"  *Id*. (quoting *Dukes*, 131 S. Ct. at 2551).  Nevertheless, "[w]hile some evaluation of the merits frequently 'cannot be helped' in evaluating commonality," *id*. (quoting *Dukes*, 131 S. Ct. at 2551), "that likelihood of overlap with the merits is 'no license to engage in free-ranging merits inquiries at the certification stage'" *id*. (quoting *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)).  Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc*., 133 S. Ct. at 1195.  "'[W]hether class members could actually prevail on the merits of their claims' is not a proper inquiry in determining the preliminary question 'whether common questions exist.'"  *Stockwell*, 749 F.3d at 1112 (quoting *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 983 n. 8 (9th Cir. 2011)).  The Court is, therefore, mindful that the proper inquiry here is "whether the questions presented, whether meritorious or not, [are] common to the members of the putative class."  *Id*. at 113-14.

### b.  *Claims for Relief*

"To assess whether the putative class members share a common question, the answer to which 'will resolve an issue that is central to the validity of each one of the [class members's] claims,' [the Court] must identify the elements of the class members's case-in-chief."  *Stockwell*, 749 F.3d at 1114 (first alteration in original) (quoting *Dukes*, 131 S.Ct. at 2551).  Here, Plaintiffs generally assert claims for violation of Section 504 (as well as select Section 504 regulations) and Title II of the ADA.

To state a Section 504 claim, Plaintiffs must establish that: (1) they are individuals with a disability; (2) they are otherwise qualified to receive the benefit; (3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015

Title:      P.P., et al. -*v*- Compton Unified School District, et al.

they were "denied the benefits of the program solely by reason of" their disability; and (4) "the program receives federal financial assistance."  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (citing *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).  Similarly, to prove a violation of Title II of the ADA, Plaintiffs must show: (1) they are qualified individuals with a disability; (2) they were "either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination was by reason of" their disability.  *Weinreich*, 114 F.3d at 978 (emphasis omitted).

For purposes of the ADA, "[t]he term 'qualified individual with a disability' means an individual with a disability who, ***with or without reasonable modifications*** to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131 (emphasis added).  In the "Findings" section of the ADA, Congress observed that "individuals with disabilities continually encounter various forms of discrimination, including . . . failure to make modifications to existing facilities and practices."  42 U.S.C. § 12101 (a)(5).  The Department of Justice's ADA implementing regulations specify that a public entity must "make ***reasonable modifications*** in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."  28 C.F.R. § 35.130(b)(7) (emphasis added); *see also Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1046 (9th Cir. 1999).

Similarly, in the "public preschool elementary, secondary, or adult educational services" context, the Department of Education's implementing regulations for Section 504 define a "qualified handicapped person" as "a handicapped person (i) of an age during which nonhandicapped persons are provided such services, (ii) of any age

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015

Title:        P.P., et al. -*v-* Compton Unified School District, et al.

during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act."  34 C.F.R. § 104.3(l)(2).  "[T]he focus of the prohibition in § 504 is 'whether disabled persons were denied meaningful access to state-provided services.'"  *Mark H. v. Lemahieu,* 513 F.3d 922, 937 (9th Cir. 2008) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)) (internal quotation marks omitted).  In this vein, "although § 504 does not require 'substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals,' it, like the ADA, does require ***reasonable*** modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access to a benefit because of their disability.'"  *Id.* (emphasis in original) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979); *Alexander v. Choate,* 469 U.S. 287, 301 (1985)) (internal quotation marks omitted).  In fact, the Ninth Circuit has noted that "[p]laintiffs may establish that an organization violated § 504 by showing that the public entity discriminated against, excluded, or denied the benefits of a public program to a qualified person with a disability," which "includes showing that the public entity denied the plaintiff a reasonable accommodation."  *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010) (citing *Lemahieu*, 513 F.3d at 924-25).

The Ninth Circuit has recognized that, "[a]lthough Title II of the ADA uses the term 'reasonable modification' rather than 'reasonable accommodation,' these terms do not differ in the standards they create."  *Wong v. Regents of Univ. of California*, 192 F.3d 807, 816 n. 26 (9th Cir. 1999), *as amended* (Nov. 19, 1999).

"There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act."  *Zukle*, 166 F.3d at 1045 n.11; 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims].").  Consequently, "courts have applied the same analysis to claims brought under both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -v- Compton Unified School District, et al.

statutes." *Zukle,* 166 F.3d at 1045 n.11; *see also Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

As is relevant to this case, the ADA defines a "disability . . . with respect to an individual" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  Subject to exceptions not relevant in this case, Section 504 defines "disability" and "individual with a disability" as "the meaning given to it" in 42 U.S.C. § 12102.  29 U.S.C. § 705(9)(B), (20)(B); 29 U.S.C. § 794(a).

The Equal Employment Opportunity Commission's regulations implementing the ADA define a "physical or mental impairment" as: "'(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities.'"  29 C.F.R. § 1630.2(h).  *See also* 28 C.F.R. § 35.104.

The Rehabilitation Act's regulations define "physical or mental impairment" in substantially the same manner.  34 C.F.R. § 104.3(j)(1), (j)(2)(i) (defining a "handicapped person" for purposes of Section 504 as a person who "has a physical or mental impairment which substantially limits one or more major life activities," and defining "[p]hysical or mental impairment" as "(A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities").

CIVIL MINUTES—GENERAL                                            23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Within the meaning of the ADA, a physical or mental impairment is a disability if it "substantially limits one or more major life activities of" an individual.  42 U.S.C. § 12102(1)(A); *see also* 34 C.F.R. § 104.3(j)(1)(i) (defining a handicapped person for purposes of Section 504 as one who "has a physical or mental impairment which substantially limits one or more major life activities").  The ADA includes "learning, reading, concentrating, thinking, [and] communicating," among a non-exhaustive list of "major life activities."  42 U.S.C. § 12102(2)(A); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (noting that "[t]he ADA provides a nonexhaustive list of 'major life activities,'" and that this list includes "'learning, reading, concentrating, thinking, communicating, and working'" (quoting 42 U.S.C. § 12102(2)(A))).  "[A] [m]ajor life activity also includes the operation of a major bodily function, including but not limited to, functions of the . . . neurological [and] brain . . . functions."  42 U.S.C. § 12102(2)(B).

The Equal Employment Opportunity Commission's regulations implementing the ADA note that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.  'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).

Plaintiffs also bring claims for violations of particular Section 504 regulations (34 C.F.R. §§ 104.33, 104.36, 103.62) related to the provision of a free appropriate public education.

### c.  *Common Questions of Law or Fact*

The Motion argues that this action presents the following common questions:

> 1. Whether the effects of complex trauma can substantially limit one or more of a student's major life activities, including learning, reading, concentrating, thinking, and communicating.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:      P.P., et al. -v- Compton Unified School District, et al.

2. Whether such interference with education-related life
activities impairs a student's ability to receive the benefits of a
public education.
3. Whether students affected by complex trauma enrolled in
schools in CUSD are denied the benefits of a public education
due to the effects of experiencing complex trauma.
4. Whether students affected by complex trauma enrolled in
schools in CUSD are denied the benefits of a public education
solely by reason of their trauma.
5. Whether accommodations exist that can be reasonably
implemented by Defendants to ensure that students with
complex trauma do have meaningful access to a public
education.
6. Whether Defendants have failed to implement such
accommodations.

(Mot. at 14 (footnote omitted)).  Plaintiffs assert that these factual and legal questions
can be answered "yes" or "no" on a class-wide basis.  (*Id*. at 14-15).  Further, Plaintiffs
argue that they seek "a single remedy for the whole class: district-wide trauma-
sensitive practices," which will not require individualized assessments of students.  (*Id*.
at 16).

Defendants, in turn, argue that "Plaintiffs do not present appropriate questions of
law or fact common to the class because each class member's claim consists of highly
individualized and personal circumstances that do not have the capacity to generate
uniform answers or classwide resolution."  (Opp. at 12).  In advancing their argument
against commonality, Defendants rely heavily on comparisons between this action and
a Seventh Circuit case, *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir.
2012).  (*Id*. at 5-7).

In *Jamie S*., the Seventh Circuit evaluated whether it was appropriate to certify a
putative class in a case alleging violations of the Individuals with Disabilities

_____

CIVIL MINUTES—GENERAL                                         25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015
Title:       P.P., et al. -*v-* Compton Unified School District, et al.

Education Act ("IDEA").  *Jamie S.*, 668 F.3d at 484-87.  As the Seventh Circuit noted, "[u]nder the Individuals with Disabilities Education Act. . . , 20 U.S.C. §§ 1400 *et seq.*, the States receive federal funding for the education of disabled children on the condition that their local school districts comply with the procedural requirements of the Act and provide a 'free appropriate public education' to all resident children with disabilities."  *Id*. at 485 (quoting 20 U.S.C. § 1412(a)(1)(A)).  "Local districts must identify children with disabilities, determine whether these children require special-education services, and develop individualized education programs ('IEPs') tailored to each student's specific needs"; "[e]ach step in the process is highly individualized because every child is unique."  *Id*.

    *Jamie S.* was brought by seven students with disabilities on behalf of themselves and a putative class defined as "'all school age children with disabilities who reside in the Milwaukee Public School District boundaries and who are or may be eligible for special education and related services under IDEA and Wisconsin law,'" alleging various IDEA violations.  *Id*. at 485, 487.  "The district court rejected the plaintiffs' ambitious proposed class but certified a somewhat more modest one: students eligible to receive special education from MPS 'who are, have been or will be' denied or delayed entry into or participation in the IEP process."  *Id*. at 485.  "This narrower class definition had the effect of focusing the case on alleged violations of the so-called 'child find' requirements of the IDEA."  *Id*. (citing 20 U.S.C. § 1412(a)(3)(A)).

    In evaluating commonality, the Seventh Circuit noted "[t]hat all the class members [had] 'suffered' as a result of disparate individual IDEA child-find violations [was] not enough; it [did] not establish that the individual claims [had] any question of law or fact in common."  *Jamie S.*, 668 F.3d at 497.  The court elaborated that the plaintiffs' theory as to a common question was "something like this: Did [Milwaukee Public Schools] fulfill its IDEA obligations to each child?"  *Id*. at 498.  However, the court held that, "while that generic question is surely a part of [two hypothetical class members's] claims, it must be answered separately for each child based on individualized questions of fact and law, and the answers are unique to each child's particular situation."  *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

Similarly, in *Dukes*, a suit for injunctive and declaratory relief, back pay, and
punitive damages, the Supreme Court held that a proposed class of female Wal-Mart
employees asserting Title VII discrimination claims lacked sufficient commonality to
be certified as a class.  *Dukes*, 131 S.Ct. at 2250-57.  The Court recognized that the
complaint did assert common questions ("Do all of us plaintiffs indeed work for Wal–
Mart? Do our managers have discretion over pay? Is that an unlawful employment
practice? What remedies should we get?"), but the recitation of such questions was not
sufficient to satisfy commonality.  *Id*. at 2551.  The Court commented on the proposed
class's lack of commonality as follows:

> In this case, proof of commonality necessarily overlaps with
> respondents' merits contention that Wal–Mart engages in a
> pattern or practice of discrimination.  That is so because, in
> resolving an individual's Title VII claim, the crux of the inquiry
> is the reason for a particular employment decision.  Here
> respondents wish to sue about literally millions of employment
> decisions at once.  Without some glue holding the alleged
> *reasons* for all those decisions together, it will be impossible to
> say that examination of all the class members' claims for relief
> will produce a common answer to the crucial question *why was
> I disfavored*.

*Id*. at 2252 (emphasis in original) (citation and footnote omitted).  The employees in
*Dukes* "provide[d] no convincing proof of a companywide discriminatory pay and
promotion policy," and, therefore, the Court concluded that they had "not established
the existence of any common question."  *Id*. at 2256.

The crux of the inquiry in this case appears to be whether alleged trauma-
induced disabilities have caused students to be denied the benefits of a public
education, and the degree to which CUSD has failed to accommodate students' alleged
trauma-induced disabilities so as to afford them meaningful access to a public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                    Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

education.  This inquiry gives the Court pause because, as in *Dukes*, even if the
Complaint makes out superficially common questions, the reasons why any particular
student allegedly suffering from a trauma-induced disability was denied the benefits of
a public education seem, at least at first glance, individualized.  In this regard,
Defendants assert that "[t]he Plaintiffs[] here . . . lack any 'glue' holding together the
circumstances giving rise to the individual class members' purported denial of benefits
or the accommodations that would be necessary to address their alleged impairments."
(Opp. at 18).

          Nevertheless, Plaintiffs cite to a number of cases in which classes have been
certified despite seemingly individualized issues bearing on disability.  (*See* Mot. at
12-16).  For example, in *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001),
*abrogated on other grounds as stated in Harris v. Alvarado*, 402 F. App'x 180, 181
(9th Cir. 2010), the Ninth Circuit upheld a finding of commonality among a class of
disabled prisoners and parolees in a suit alleging that policies and practices for parole
and parole revocation proceedings violated the ADA and Rehabilitation Act.  In doing
so, the court noted that "in a civil-rights suit . . . commonality is satisfied where the
lawsuit challenges a system-wide practice or policy that affects all of the putative class
members."  *Id*.  The Ninth Circuit further recognized that "[i]n such circumstance,
individual factual differences among the individual litigants or groups of litigants will
not preclude a finding of commonality," and held that "the differences that exist[ed] [in
the case did] not justify requiring groups of persons with different disabilities, all of
whom suffer similar harm from [a defendant's] failure to accommodate their
disabilities, to prosecute separate actions."  *Id*.

          Moreover, commonality was deemed satisfied in *Gray v. Golden Gate National
Recreational Area*, 279 F.R.D. 501, 512-13 (N.D. Cal.  2011), a Rehabilitation Act
action in which the plaintiffs (individuals with mobility and/or vision disabilities)
alleged that defendants had systematically discriminated against them on the basis of
their disabilities by failing to provide reasonable accommodations to address access
barriers at national park sites.  The court rejected the defendants' arguments that
differences in challenged park attributes, differences in the plaintiffs' disabilities, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -v- Compton Unified School District, et al.

differences in reasonable accommodations defeated commonality and typicality.  *Id.* at
510.  The plaintiffs acknowledged "that not every class member ha[d] been exposed to
the same set of access barriers, but argue[d] that the claims stem[med] from the same
system-wide, decades-long practices and policies of failing to assess and eliminate
accessibility barriers, and require[d] a common determination of whether the policies
or practices were sufficient to satisfy [the defendants'] legal obligations." *Id.* at 509-
10.  The district court undertook an extensive analysis of cases in which classes of
disabled individuals seeking reasonable accommodations were certified and concluded
that, on balance, the plaintiffs had met their burden to establish commonality.  *See id.*
at 510-21.  The court specifically noted that it found a common question as to whether
the relevant defendant had "taken reasonable steps to comply with the Rehabilitation
Act and accommodate the disabled by remedying access barriers." *Id.* at 516.

        Similarly, in *Californians for Disability Rights v. California Department of
Transportation*, 249 F.R.D. 334, 350 (N.D. Cal. 2008), the district court certified a
class of "[a]ll persons with mobility and/or vision disabilities who are allegedly being
denied access under Title II of the Americans with Disabilities Act and the
Rehabilitation Act of 1973 due to barriers along sidewalks, cross-walks, pedestrian
underpasses, pedestrian overpasses and any other outdoor designated pedestrian
walkways throughout the state of California which are owned and/or maintained by the
California Department of Transportation."  The defendants argued that commonality
did not exist due to a host of individualized inquiries which would allegedly be
necessary, such as specification of particular injunctive relief sought for each location
and determination of whether the right of way violated the applicable ADA guidelines.
*Id.* at 344.  However, the court concluded that this argument "misconstrue[d] the
nature of plaintiffs' claims and requested relief"—the plaintiffs were not requesting
that the court "order and oversee the remediation of every non-ADA compliant
pedestrian feature throughout the state." *Id.* at 345.  "Rather, they [were] seeking
injunctive relief remedying Caltrans 'use of improper design guidelines and the failure
to ensure compliance with even those deficient guidelines.'" *Id.*  The defendants had
further argued that, despite the plaintiffs' allegations to the contrary, Caltrans did not
have "'a centralized policy of discrimination in violation of Title II.'" *Id.* (internal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

quotation marks omitted).  The court rejected this contention, noting instead that "the question of whether Caltrans ha[d] a 'centralized policy of 'discrimination' in violation of Title II,' [was] precisely what [was] at issue in plaintiffs' claims, and defendants [could not] defeat certification by begging the question by prematurely assuming that no such centralized policy exists."  *Id*.  The court stated that "the common question addressed by this lawsuit [was] whether and to what extent Caltrans has violated the ADA on a 'systematic basis for many years through the use of improper design guidelines and the failure to ensure compliance with even those deficient guidelines,'" and concluded that "[t]he question of such system-wide discriminatory practices [was] an issue common to all plaintiffs."  *Id*. at 346.

Finally, in *Lane v. Kitzhaber*, 283 F.R.D. 587, 590 (D. Or. 2012), the district court certified a class of intellectually or developmentally disabled individuals who asserted Rehabilitation Act and ADA claims against the Director of Oregon Department of Human Services, among others, regarding an alleged failure to provide disabled individuals an opportunity to work in an integrated setting.  In this regard, the court held that "[a] common question of law posed in this case is whether defendants have failed to plan, administer, operate and fund a system that provides employment services that allow persons with disabilities to work in the most integrated setting."  *Id*. at 598.  The district court observed that, "[a]s in other cases certifying class actions under the ADA and Rehabilitation Act, commonality exists even where class members are not identically situated."  *Id*.  More specifically, the court stated:

> As defendants correctly note, some plaintiffs or putative class members may need more or different employment services than others.  However, all plaintiffs are qualified for, but not receiving the full benefit of, supported employment services; all lack regular contact with non-disabled peers (other than paid staff); and all want to work, but are not working, in an integrated setting.  As a result, they and all similarly situated persons suffer the same injury of unnecessary segregation in the employment setting.  It is not necessary, as defendants contend,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)               Date:  September 29, 2015
Title:       P.P., et al. -v- Compton Unified School District, et al.

     for plaintiffs to prove at this stage that they and all putative
     class members are unnecessarily segregated and would benefit
     from employment services.  That is, in effect, the answer to the
     common question and not the common question of whether
     they are being denied supported employment services for which
     they are qualified.

*Id.*

     Here, Plaintiffs argue that "the truth or falsity of the Student Plaintiffs'
contentions need not be determined on an individual basis; either Defendants' policy
and practice of failing to accommodate students who have experienced complex
trauma is unlawful as to every class member or it is not."  (Mot. at 15).  Plaintiffs
further argue that "[d]eterminations of Defendants' liability will depend on the
legality—or illegality—of Defendants' systemic policies and practices under Section
504 and the ADA, not on Defendants' conduct in relation to any single class member."
(*Id.*).  Finally, Plaintiffs contend that "whether the Student Plaintiffs have been injured
depends on neither the precise source nor particular manifestation of an individual's
complex trauma, but on whether Defendants, through their policies and practices, have
denied all class members—that is, all Compton students with trauma-induced
disabilities—access to education."  (*Id.* at 15-16).

     The real focus of Plaintiffs' argument appears to be that CUSD has not
implemented the type of system-wide solution that they propose, which they contend is
the only effective way to accommodate students suffering from trauma-induced
disabilities.  The Motion, for instance, argues that "[a]n individualized plan is
insufficient to effectively accommodate students whose learning is impaired by
complex trauma, particularly in schools that serve high concentrations of trauma-
impacted students."  (Mot. at 3 (citing Declaration of Joyce Dorado ("Dorado
Declaration") (Docket No. 42-14) ¶ 29; Perry Decl. ¶ 32)).  Further, the Motion asserts
that "district-wide implementation of trauma-sensitive practices and the creation of
trauma-sensitive environments are essential to student learning."  (*Id.* (citing Perry

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

Decl. ¶¶ 32-34; Dorado Decl. ¶¶ 29-30; Bethell Decl. ¶ 57; Declaration of Marleen Wong ("Wong Declaration") (Docket No. 42-17) ¶ 30; Declaration of Nikolaos Stefanidis ("Stefanidis Declaration") (Docket No. 42-16) ¶ 30; Declaration of Mark Courtney ("Courtney Declaration") (Docket No. 42-13) ¶ 17)).  In this vein, the Reply asserts that "for the purpose of certification, the issue is not whether accommodations must be individualized, but instead whether there is a class-wide answer to the question of whether accommodations must be individualized."  (Reply at 11).  "This question," Plaintiffs assert, "can be answered, and has been answered by Plaintiffs' experts, in one stroke for the entire class."  (*Id.*).

Similarly, Plaintiffs contest Defendants' categorization of the individualized issues at play, arguing that "Plaintiffs do not challenge any particular decision of a particular employee concerning a particular student, as in *Dukes*, nor do they seek individual IEPs, as in *Jamie S.*"  (Reply at 6 (footnote omitted)).  Plaintiffs rely largely on the Ninth Circuit's decision in *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) in support of their argument that commonality exists here as a result of an alleged CUSD system-wide policy of deliberate indifference to trauma.  (*See* Mot. at 12-15; Reply at 4-5, 6-8).  Using *Parsons* as a guide, Plaintiffs assert that "[t]he question of whether Defendants' policy of failing to provide school-wide accommodations for trauma-affected students discriminates against those students can be answered in one stroke: '[E]ither each of the policies and practices is unlawful as to every inmate or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination.'"  (Reply at 8-9 (quoting *Parsons*, 754 F.3d at 678)).

In *Parsons*, state prisoners filed suit against senior officials in the Arizona Department of Corrections (the "ADC") to challenge alleged systemic deficiencies in the provision of medical, dental and mental health care services and the conditions of confinement in isolation cells; the plaintiffs alleged that these uniform ADC policies and practices "expose[d] all members of the proposed class to a substantial risk of serious harm."  *Parsons*, 754 F.3d at 662, 667-68.   The Ninth Circuit concluded that "[w]hat all members of the putative class and subclass [had] in common [was] their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:      P.P., et al. -v- Compton Unified School District, et al.

alleged exposure, as a result of specified statewide ADC policies and practices that
govern[ed] the overall conditions of health care services and confinement, to a
substantial risk of serious future harm to which the defendants [were] allegedly
deliberately indifferent." *Id*. at 678.   The Ninth Circuit noted that "although a
presently existing risk may ultimately result in different future harm for different
inmates—ranging from no harm at all to death—every inmate suffers exactly the same
constitutional injury when he is exposed to a single statewide ADC policy or practice
that creates a substantial risk of serious harm." *Id*.

Similarly, in *Stockwell*, an age discrimination case, police officers sought
certification of a class under a California Fair Employment and Housing Act
("FEHA") disparate-impact claim. *Stockwell*, 749 F.3d at 1110.  The allegations in
*Stockwell* largely involved whether the San Francisco Police Department's ("SFPD's")
exclusive consideration of a particular exam in promotion decisions (the Q-50,
administered in 2006), rather than the exam that had previously been used (the Q-35,
issued in 1998) had a disparate impact based on age, in violation of FEHA. *Id*.  The
Ninth Circuit concluded that the officers "identified a single, well-enunciated, uniform
policy that, allegedly, generated all the disparate impact of which they complain: the
SFPD's decision to make investigative assignments using the Q–50 List instead of the
Q–35 List." *Id*. at 1114.  "Each member of the putative class was on the Q–35 List.
Each suffered the effects of its elimination, whatever those were." *Id*.  Moreover, the
court observed that "[t]he question whether the policy has an impermissible disparate
impact on the basis of age necessarily has a single answer." *Id*. at 1116.

Here, the Court perceives that a common question might be whether system-
wide trauma-sensitive policies and procedures are the only effective way to
accommodate students suffering from trauma-induced disabilities.  The response will
either be yes or no as to the class as a whole.  This question would, similarly, feed into
inquiries regarding whether and to what extent Defendants have violated Title II of the
ADA and Section 504 by failing to provide system-wide trauma-sensitive
accommodations, to the extent such accommodations are reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015

Title:       P.P., et al. -*v*- Compton Unified School District, et al.

The Court notes that "commonality" on the record before it has not been an easy
question, and the Court does not discount that there is some level of individualization
as to other questions among the class.  Ultimately, however, the Court is inclined to
conclude that "commonality" is satisfied.

### 3.  Typicality

The typicality requirement is a permissive standard.  *See Hanlon v. Chrysler
Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[R]epresentative claims are 'typical' if
they are reasonably co-extensive with those of absent class members; they need not be
substantially identical."  *Id*.  To make this assessment, the Court looks to "'whether
other members have the same or similar injury, whether the action is based on conduct
which is not unique to the plaintiffs, and whether other class members have been
injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.,* 976 F.2d 497,
508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 288 (C.D. Cal. 1985)).

Plaintiffs argue that "the proposed class representatives' claims are typical of
those of the class because they stem from Defendants' failure to provide the necessary
accommodations to class members, identical across the class, in the form of district-
wide and school-wide policies and practices that address trauma and its effects."  (Mot.
at 17).  Defendants, however, contend that the Student Plaintiffs' claims are not typical
of the class because (1) they have suffered individual harm and possess individual
interests, and (2) they have failed to exhaust their administrative remedies.  (Opp. at
19-22).

The Court views Defendants' typicality arguments to be intertwined with the
arguments discussed above regarding individualized inquiries.  Indeed, the Supreme
Court has observed "that '[t]he commonality and typicality requirements of Rule 23(a)
tend to merge."  *Dukes*, 131 S. Ct. at 2551 n. 5; *see also General Telephone Co. of
Southwest v. Falcon*, 457 U.S. 147, 157-158 n. 13 (1982).  "[T]ypicality insists that the
class representative be a member of the class and have claims similar to those of other
class members, and the requirement rests upon the belief that such a representative,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -v- Compton Unified School District, et al.

pursuing her own interests, will pursue the class's as well."  *Newberg on Class Actions*
§ 3:28 (5th ed. 2011).

Turning first to Defendants' exhaustion argument, in connection with the
pending Motion for Preliminary Injunction (Docket No. 42) (albeit with respect to a
slightly different subset of the total relief at issue here), the Court has discussed that
the type of relief sought here is not available pursuant to the Individuals with
Disabilities Education Act ("IDEA"); therefore, pursuant to the relief-centered
approach to exhaustion adopted by the Ninth Circuit, *see Payne v. Peninsula Sch.
Dist.*, 653 F.3d 863, 874 (9th Cir. 2011) *overruled on other grounds by Albino v. Baca,*
747 F.3d 1162, 1171 (9th Cir. 2014), the Court concludes that Plaintiffs were not
required to exhaust their administrative remedies.

Nor does the Court find Defendants' arguments regarding the representatives'
alleged individual harm and interests persuasive.  The named Student Plaintiffs bring
suit based on injuries they claim stem from Defendants' failure to accommodate their
trauma-induced disabilities—lack of meaningful access to the education to which they
are otherwise entitled.   Moreover, the rest of the putative class is alleged to have
suffered the same type of injury (even if some of the manifestations thereof or
degree/type of underlying disabilities are individualized), and this injury is alleged to
be the result of uniform conduct on the part of Defendants.  The Court is persuaded
that, in pursuing their own interests by combatting Defendants' alleged failure to
provide adequate accommodations in the form of system-wide trauma-sensitive
policies and procedures, the named Student Plaintiffs will be pursuing the class's
interests in this same regard.

As to the Student Plaintiffs' membership in the class as defined, Plaintiffs
contend that "[t]he named Student Plaintiffs are disabled within the meaning of Section
504 and the ADA as a consequence of exposure to complex trauma."  (Mot. at 18
(citing Stefanidis Decl. ¶ 29 & Exs. B-E; Declaration of Peter P. ("Peter P.
Declaration") (Docket No. 42-5) ¶ 3; Declaration of Kimberly Cervantes ("Cervantes
Declaration") (Docket No. 42-7) ¶ 2 ; Declaration of Phillip W. ("Phillip W.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                    Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

Declaration") (Docket No. 54) ¶ 2; Declaration of Virgil W. ("Virgil W. Declaration")
(Docket No. 42-6) ¶ 2; Perry Decl. ¶¶ 28-31 (trauma's deleterious effect on learning);
Bethell Decl. ¶¶ 28-37 (same)).  The cited portions of the Student Plaintiff declarations
merely point to their ages, the CUSD schools they attend/have attended, and other such
background information.  The Court does not separately analyze the general statements
in the Perry Declaration or Bethell Declaration cited.  Rather, the Court is looking
specifically to evaluations of the named Student Plaintiffs as pertains to their status as
students with trauma-induced disabilities.

        The Court recognized in connection with the pending Motion for Preliminary
Injunction that Dr. Stefanidis's clinic performed evaluations of all of the named
Student Plaintiffs except Donte J.  The Court is not prepared to conclude that Donte J.
fits within the class definition proposed.

        The Court looks to whether Plaintiffs have sufficiently demonstrated the
remaining named Student Plaintiffs' status as students with trauma-induced disabilities
who have been denied meaningful access to education.

        In connection with their numerosity argument, Plaintiffs assert that "[t]he Ninth
Circuit has established that it is not necessary to provide 'a medical professional's
diagnosis of' the asserted disability in order for a plaintiff to show that he or she is
disabled under Section 504 or Title II of the ADA."  (Mot. at 11 n. 16 (quoting *Vinson
v. Thomas*, 288 F.3d 1145, 1152 (9th Cir. 2002)).  Rather, Plaintiffs state that they
"need only provide evidence that 'a reasonable expert in the field would accept the
type of evidence presented by [plaintiff] as proof of his disability.'"  (*Id.* (quoting
*Vinson*, 288 F.3d at 1153)).

        However, as discussed in connection with the Motion for Preliminary Injunction,
the disability issues before the Court are somewhat novel.  Therefore, the contours of
what evidence would satisfy a "reasonable expert in the field" as proof of trauma-
induced disabilities are somewhat unclear.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                 Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

The Stefanidis Declaration mentions that the Student Plaintiff evaluations were "conducted in accordance with professional standards and in accordance with the practices that the clinic typically follows in the ordinary course of [its] work." (Stefanidis Decl. ¶ 24).  The Declaration goes on to note that Dr. Stefanidis "strongly believe[s] that Peter P., Philip W., Virgil W., and Kimberly Cervantes have each experienced complex traumas, and that the effects of these complex traumatic experiences have profoundly affected each young person's development, which left untreated will continue to present obstacles in their daily functioning at school, home, work, and at its worst the society will pay the price."  (*Id.* ¶ 29).  More specifically, Dr. Stefanidis "conclude[s] that the complex trauma to which these youth have been exposed has impaired the ability to learn, think, read, concentrate, communicate, and/or behave in pro-social ways."  (*Id.*).  However, the Court is not informed, for example, what the "professional standards" adhered to in conducting the evaluations were, whether experts in this particular field would reasonably rely on evaluations such as those provided here in forming an opinion on the subject, or whether the Stefanidis Declaration would satisfy a reasonable expert in the field as proof of trauma-induced disabilities.

In sum, the Court is not convinced that the named Student Plaintiffs satisfy "typicality," as their membership in the proposed class is uncertain.  However, it seems to the Court that this uncertainty could be remedied with additional evidentiary submissions and argument from the parties.

### 4. Adequacy

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1020).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015

Title:       P.P., et al. -*v*- Compton Unified School District, et al.

representatives and absentees." *Id.* (citing *Molski v. Gleich*, 318 F.3d 937, 955 (9th
Cir. 2003), *overruled on other grounds by Dukes*, 603 F.3d at 617).

As a preliminary matter, Defendants appear to make no arguments regarding the
adequacy of Plaintiffs' counsel.  Pursuant to Rule 23(g), "a court that certifies a class
must appoint class counsel." Fed. R. Civ. P. 23(g)(1).  "Class counsel must fairly and
adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).  Plaintiffs
state that both Public Counsel and Irell & Manella LLP have "invested significant time
and effort identifying and investigating potential claims on behalf of the Plaintiff Class,
have extensive experience with class action and complex litigation, are knowledgeable
of the law, and have committed extensive resources to vindicating the rights of the
Plaintiff Class."  (Mot. at 19 (citing Declaration of Kathryn Eidmann ("Eidmann
Declaration") (Docket No. 57-3) ¶¶ 2-4, 7, 9-11, 14-16; Declaration of Michael H.
Strub, Jr. ("Strub Declaration") (Docket No. 57-4) ¶ 5)).   The Court concludes that
class counsel will fairly and adequately represent the interests of the class.

Turning to whether the Student Plaintiffs will adequately represent the class,
Plaintiffs argue that "[t]he Student Plaintiff representatives are injured students,
victims of trauma, who are passionate about improving meaningful access to education
and implementing the necessary school-wide and district-wide policies and practices to
properly address their own—and others'—trauma-induced disabilities."  (Mot. at 18).
Further, the Motion posits that the Student Plaintiffs "have exposed themselves and
recounted their painful stories to seek a better education for themselves and their
peers," and that "[t]hey seek the same injunctive relief for themselves as for the class,
namely, a school-wide and district-wide implementation of trauma-sensitive practices."
(*Id*. at 18-19).  Finally, the Motion argues that "[t]he class representatives—*i.e.* the
Student Plaintiffs—are ready and able to act as effective advocates for the class." (*Id*.
at 19 (citing Peter P. Decl. ¶ 36; Cervantes Decl. ¶ 49; Phillip W. Decl. ¶ 38; Virgil W.
Decl. ¶ 34)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

Defendants, in contrast, argue that "Plaintiffs cannot fairly and adequately represent the interests of the class due to each individual's own circumstances, harms, and interests."  (Opp. at 23).

Once again, the Court views Defendants' adequacy arguments to be intertwined with the arguments discussed above regarding individualized inquiries.  Nevertheless, the Student Plaintiffs allege that they, just like the rest of the proposed class, have been injured as a result of Defendants' failure to provide proper accommodations for trauma-induced disabilities, and are seeking the same relief that is sought on behalf of the rest of the class.  Moreover, the Court has no reason to doubt the Student Plaintiffs' expressed willingness to pursue this suit on behalf of themselves and the class.

However, the Court's doubts as to whether the named Student Plaintiffs have established that they are members of the proposed class cuts against a conclusion that adequacy is satisfied.

## B.      Rule 23(b)(2)

As mentioned above, Rule 23(b)(2) requires "the party opposing the class [to have] acted or [have] refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class"; "[i]t does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant" or "when each class member would be entitled to an individualized award of monetary damages."  *Dukes*, 131 S.Ct. at 2557.

Here, Plaintiffs argue that they "seek a single injunction that will result in uniform changes in district-wide policy and practice and that will provide uniform relief to all class members in the form of a whole-school trauma-sensitive approach."  (Mot. at 21).  Moreover, Plaintiffs contend that "in this case a class-wide remedy is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -v- Compton Unified School District, et al.

merely possible but required; individualized relief would not be effective."  (Mot. at 21 (citing Dorado Decl. ¶¶ 29-30)).

Defendants, in turn, argue that, "[i]n light of the individualization of each class member's particular circumstances and treatment—that is, the varying reasons for why a student was disciplined, performs poorly academically, or any other consequence of CUSD's alleged conduct—it cannot be said CUSD acted in a manner 'applicable to the class generally.'"  (Opp. at 23 (citing Fed. R. Civ. P. 23(b)(2))).  Moreover, Defendants contend that no single injunction will provide relief to the class as a whole because "any order for the global remedies sought would at best have the potential to address some class members' circumstances, but would in no way assure every member of the class as a whole received final relief."  (Opp. at 24-25 (emphasis removed)).  Defendants assert that "[t]he claims at issue are for the denial of a free public appropriate education thereby demanding that any final injunctive relief provide such a remedy" (*id*. at 25 (citing Compl. ¶¶ 192-200, 215-23)), but the Student Plaintiffs cannot show, for example, that the requested remedy would address Kimberly Cervantes's truancy problems or Virgil W's alleged physical altercations with other students (*id*.).

In *Jamie S*., the Seventh Circuit observed "[t]hat the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final."  *Jamie S*., 668 F.3d at 499.  The court further concluded that the relief sought in *Jamie S*. did "not come close to satisfying Rule 23(b)(2)'s standard," as was "clear from the intricate remedial scheme ordered by the district court, which require[d] thousands of individual determinations of class membership, liability, and appropriate remedies."  *Id*.  Moreover, the court found it immaterial that a prior district court order affected the whole class, as the order "merely establishe[d] a system for eventually providing individualized relief"—"[i]t [did] not, on its own, provide 'final' relief to any class member."  *Id*.

---

**CIVIL MINUTES—GENERAL**                                              **40**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

        Plaintiffs argue that comparisons between this case and *Jamie S*. are unavailing
because, unlike the injunction in *Jamie S*., which "was not final because it provoked a
complex series of individualized determinations intended to result in an IEP" (Reply at
13 (citing *Jamie S*., 668 F.3d at 499)), the injunction sought here does "not seek
specific accommodations for individual students, but rather [seeks] to raise 'the level
of care and resources' for all trauma-affected students in Compton" (*id*. at 13-14
(quoting *Parsons*, 754 F.3d at 687)).  Plaintiffs contend that "the fact that additional
benefits may flow from systemic changes produced by an injunction—here, from a
trauma-sensitive environment—does not render that relief any less final."  (*Id*. at 14
(footnote omitted)).

        At the outset, the Court observes that:

                Rule 23(b)(2) authorizes certification of a class solely for the
                purpose of final injunctive or declaratory relief.  Hence, a case
                seeking only a provisional remedy like a preliminary injunction
                cannot be certified under Rule 23(b)(2) on that basis alone.
                This is rarely a problem for proponents of class certification,
                however, as a class seeking preliminary injunctive relief will
                typically seek to have that relief embodied in a final injunction
                as well.  Moreover, although (b)(2) certification requires a
                request for final injunctive relief, a court may issue a
                preliminary injunction in class suits prior to a ruling on the
                merits.

*Newberg on Class Actions* § 4:30 (5th ed. 2011) (footnote omitted).  "Occasionally,
however, courts interpret what appears to be final injunctive relief as merely
provisional as when it just lays a foundation for a subsequent determination of
liability."  *Id*.  Nevertheless, as to Rule 23(b)(2)'s authorization of certification for the
purpose of final injunctive relief, "[c]ases raising the question of whether injunctive
relief is sufficiently 'final' to qualify for 23(b)(2) certification are something of an
outlier."  *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

The Court views the necessary inquiries to be undertaken in connection with Rule 23(b)(2) as somewhat related to the commonality discussion above.  The Court is also cognizant of Plaintiffs' contentions that the uniform injunction sought, and the fact that Defendants' policies and inaction are alleged to have affected the entire class, render this case ideally suited for resolution as a Rule 23(b)(2) class action.  Indeed, the Ninth Circuit has noted that "subdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions" and "the class suit is a uniquely appropriate procedure in civil-rights cases, which generally involve an allegation of discrimination against a group as well as the violation of rights of particular individuals."  *Parsons*, 754 F.3d at 686 (quoting 7AA C. Wright & A. Miller, *et al.*, *Federal Practice and Procedure: Civil* § 1776 (3d ed. 2005 & Supp. 2015)).

Further, one of the fundamental questions to be resolved is whether system-wide changes are the only effective way to begin to remove the barriers students with trauma-induced disabilities face while attempting to access their education.  Without addressing these merits any more than is necessary to determine the class certification questions before it, the Court notes that should the merits of the action be resolved in Plaintiffs' favor, the requested class-wide remedy would provide relief to each class member.

The Court is satisfied that the basic requirements for a Rule 23(b)(2) class have been met.  Nevertheless, in light of the Court's conclusions regarding the Rule 23(a) requirements, this conclusion is insufficient by itself to support granting the Motion.

C.    **Proposed Class Ascertainability**

Finally, Defendants contend that "Plaintiffs' proposed class should not be certified because the members and their claims cannot be appropriately ascertained or identified."  (Opp. at 4).

In *Jamie S.*, which Defendants cite in support of their ascertainability argument, the Seventh Circuit concluded that "[t]he class itself [was] fatally indefinite, the claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

lack[ed] the commonality required by Rule 23(a)(2), and [it was] not possible to order
final injunctive or corresponding declaratory relief on a class-wide basis, as required
by Rule 23(b)(2)." *Id*. at 487.  Regarding ascertainability, the court observed that
"identifying disabled students who might be eligible for special-education services is a
complex, highly individualized task, and cannot be reduced to the application of a set
of simple, objective criteria," such that "a class of unidentified but potentially IDEA-
eligible disabled students is inherently too indefinite to be certified."  *Id*. at 496.

However, the Court is cognizant of Plaintiffs' argument that ascertainability is
an inappropriate requirement for class certification in a Rule 23(b)(2) action seeking
injunctive relief.  (Reply at 15-17).  The Third Circuit recently acknowledged that,
while "[t]he word 'ascertainable' does not appear in the text of Rule 23, "'an essential
prerequisite of an action under Rule 23 is that there must be a class.'" *Shelton v.
Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015) (internal quotation marks and citations
omitted).  "Courts have generally articulated this 'essential prerequisite' as the implied
requirement of 'ascertainability'—that the members of a class are identifiable at the
moment of certification." *Id*.

However, in *Shelton*, the Third Circuit noted the differences between classes
certified under Rule 23(b)(2) and (b)(3), and noted that "[b]ecause the focus in a (b)(2)
class is more heavily placed on the nature of the remedy sought, and because a remedy
obtained by one member will naturally affect the others, the identities of individual
class members are less critical in a (b)(2) action than in a (b)(3) action." *Id*. at 561.
The court elaborated that "[i]n the context of a (b)(3) class, the requirement that the
class be defined in a manner that allows ready identification of class members serves
several important objectives that either do not exist or are not compelling in (b)(2)
classes." *Id*. (footnote omitted).  The court noted that several other circuits have
concluded that "it is improper to require ascertainability for a (b)(2) class," or have
"certified very broadly-defined (b)(2) classes without explicitly discussing
ascertainability." *Id*. at 562-63.  Ultimately, based on "[t]he nature of Rule 23(b)(2)
actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of
other federal courts," the Third Circuit concluded "that ascertainability is not a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."  *Id*. at 563.

Plaintiffs point out that courts within the Ninth Circuit have adopted the reasoning of *Shelton*.  (Reply at 15 (citing *In re Yahoo Mail Litig*., No. 13-CV-04980-LHK, 2015 WL 3523908, at *16 (N.D. Cal. May 26, 2015); *Dunakin v. Quigley*, No. C14-0567JLR, 2015 WL 1619065, at *21 (W.D. Wash. Apr. 10, 2015), *reconsideration denied*, No. C14-0567JLR, 2015 WL 4076789 (W.D. Wash. July 1, 2015)).

The Court is inclined to agree that, to the extent the class seeks a uniform injunction, issues of ascertainability should not defeat class certification in this case.

IV.   **CONCLUSION**

For the foregoing reasons, the Motion is **DENIED *without prejudice*** to Plaintiffs renewing their motion for class certification upon further development of the record regarding, for example, numerosity and the named Student Plaintiffs' status as members of the proposed class.

IT IS SO ORDERED.