UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

              Deputy Clerk:                       Court Reporter:
              Rita Sanchez                         Not Reported

              Attorneys Present for Plaintiff:     Attorneys Present for Defendant:
              None Present                          None Present

Proceedings (In Chambers):   ORDER DENYING PLAINTIFFS' MOTION FOR
                             PRELIMINARY INJUNCTION [42]


      Before the Court is Plaintiffs' Motion for Preliminary Injunction (the "Motion").
(Docket No. 42).  The Court has read and considered the papers filed on the Motion,
and held a hearing on **August 20, 2015**.  As set forth below, the Motion is **DENIED**.
Plaintiffs have not demonstrated that the law and facts clearly favor the mandatory
injunction sought in the Motion.  In the absence of class certification, the evidence
presented as to each named Plaintiff does not clearly support a claim of trauma-
induced disability that would satisfy a reasonable expert in the field.


I.      **BACKGROUND**

      On May 18, 2015, students Peter P. (by Carolina Melendez, guardian ad litem),
Kimberly Cervantes, Phillip W. (by Beatrice W., guardian ad litem), Virgil W. (by
Beatrice W., guardian ad litem), Donte J. (by Lavinia J., guardian ad litem) (the
"Student Plaintiffs"), on behalf of themselves and all others similarly situated, along
with teachers Rodney Curry, Armando Castro, II, and Maureen McCoy (the "Teacher
Plaintiffs") (collectively, "Plaintiffs") initiated the present suit by filing a Complaint.
(Docket No. 1).

      Plaintiff Peter P. is seventeen years old, resides within the boundaries of CUSD
and Dominguez High School, and attends Dominguez High School.  (Compl. ¶ 40).
Plaintiff Kimberly Cervantes is eighteen years old, resides within the boundaries of

---

**CIVIL MINUTES—GENERAL**                               1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)             Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

CUSD and Dominguez High School, and attends Cesar Chavez Continuation School.
(*Id.* ¶ 41).  Plaintiff Phillip W. is fifteen years old, resides within the boundaries of
CUSD and Compton High School, "is currently in expulsion procedures from
Dominguez High School," and attends school at "Team Builders, an alternative school
in CUSD."  (*Id.* ¶ 42).  Plaintiff Virgil W.— Phillip W.'s twin brother — is fifteen
years old, resides within the boundaries of CUSD and Compton High School, and
attends Dominguez High School.  (*Id.* ¶ 43).  Plaintiff Donte J. is thirteen years old,
resides within the boundaries of CUSD and Whaley Middle School, and attends
Whaley Middle School.  (*Id.* ¶ 44).

       "Plaintiff Rodney Curry is a teacher at Dominguez High School in CUSD."  (*Id.*
¶ 45).  "Plaintiff Armando Castro II is a teacher at Cesar Chavez Continuation School
in CUSD."  (*Id.* ¶ 46).  "Plaintiff Maureen McCoy is a teacher at Centennial High
School in CUSD."  (*Id.* ¶ 47).

       Defendants in this action are the Compton Unified School District ("CUSD"), as
well as Darin Brawley (in his official capacity as Superintendent of Compton Unified
School District), and Micah Ali, Satra Zurita, Margie Garrett, Charles Davis, Skyy
Fisher, Emma Sharif, and Mae Thomas in their official capacities as members of the
Board of Trustees of the Compton Unified School District (the "Individual
Defendants") (collectively, "Defendants").

       The Student Plaintiffs represent a putative class of current and future students in
CUSD.  (Compl. ¶ 55).  "Defendant CUSD operates schools in the south central region
of Los Angeles County and encompasses the city of Compton and portions of the cities
of Carson and Los Angeles."  (*Id.* ¶ 48).  "Compton is among the most
socioeconomically distressed cities in Southern California, and it experiences attendant
high rates of violent crime."  (*Id.* ¶ 74).  The Complaint notes that "[d]ecades of
research have proven that children who grow up in high-poverty neighborhoods
characterized by minimal investment in schools, quality housing, after-school
programs, parks, and other community resources are disproportionately likely to be
exposed to trauma and complex trauma."  (*Id.* ¶ 1 (footnote omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                    Date:  September 29, 2015
Title:        P.P., et al. -*v-* Compton Unified School District, et al.

        "Trauma," as described in the Complaint, "stems from such causes as exposure
to violence and loss, family disruptions related to deportation, incarceration and/or the
foster system, systemic racism and discrimination, and the extreme stress of lacking
basic necessities, such as not knowing where the next meal will come from or where to
sleep that night."  (*Id.* ¶ 1).  Similarly, "[c]omplex trauma stems from the exposure to
multiple persistent sources of violence, loss, and other adverse childhood experiences
('ACEs'), and describes children's exposure to these events and the impact of this
exposure."  (*Id.* (footnote omitted)).

        The Student Plaintiffs and class members are alleged to "have experienced and
continue to experience traumatic events that profoundly affect their psychological,
emotional, and physical well-being."  (*See id.* ¶¶ 14-35, 73, 75-76).  For example, the
Complaint alleges that the following are "[r]epresentative examples of the traumatic
incidents of violence that [Student] Plaintiffs have experienced or witnessed":

- Plaintiff Peter P. was repeatedly physically and sexually abused by his
  mother's boyfriends and witnessed physical abuse of his siblings and
  mother.
- Plaintiff Peter P. reports that he watched as his best friend was shot and
  killed.
- Plaintiff Peter P. was stabbed with a knife while trying to protect a friend.
- Plaintiff Peter P. reports that he has witnessed over twenty people being
  shot.
- Plaintiff Kimberly Cervantes was sexually assaulted on the bus on her
  way home from school.
- Plaintiff Phillip W. estimates that he has witnessed more than twenty
  people being shot, one of whom was a close friend who died when shot in
  the head.
- Plaintiff Virgil W. witnessed his father pointing a gun at his mother.
- A stranger attempted to stab Plaintiff Donte J. and his friends when they
  were standing in front of the Whaley Middle School campus.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

- Plaintiff Donte J. was arrested by police at gunpoint on school campus when he was mistaken for someone else.
- Plaintiff Donte J. was attacked by four people on his way to school.

(*Id*. ¶ 76).  Other sources of trauma include: the death of or separation from a loved one (*see id*. ¶¶ 85-90); placement of children in the foster system (*see id*. ¶¶ 91-94); extreme poverty, homelessness, and other socioeconomic hardship (*see id*. ¶¶ 95-97); and discrimination and racism (*see id*. ¶¶ 98-105).

Peter P., for example, was initially separated from his siblings when he was placed in the foster system, has "moved in and out of a series of foster homes," has two older brothers and a prior caretaker who are currently incarcerated, and "spent two months of homelessness sleeping on the roof of his high school cafeteria." (*Id*. ¶¶ 14-18, 97).  Similarly, Kimberly Cervantes has "experienced multiple incidents of racism," got into an altercation with a security guard at Dominguez High School while returning a book to the library, witnessed the deaths of two students, and informed a fellow student that she identified as bisexual only to have her teacher say in front of her class that Cervantes "shouldn't be gay" and that it was "wrong." (*Id*. ¶¶ 22-23). Phillip W. "has experienced the deaths of two close friends—one of whom he witnessed get shot in the head last September," and "lost a close family member to cancer." (*Id*. ¶ 28).  Virgil W. "also recently experienced the death of a close friend and a cousin, and nearly lost another close friend and cousin." (*Id*. ¶ 89).  Finally, Donte J. has experienced gang-related violence, despite his "lack of involvement with any gang," and was approached by an assailant with a knife who threatened to stab him. (*Id*. ¶ 35).

The Complaint alleges that the neurobiological effects of the complex trauma to which Student Plaintiffs have been subjected impair the ability to perform activities essential to education—including, but not limited to, learning, thinking, reading, and concentrating—and thus constitute a disability under Section 504 of the Rehabilitation Act ("Section 504") and the Americans With Disabilities Act ("ADA").  (*See id*. ¶¶ 2,

_____

CIVIL MINUTES—GENERAL                                          4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015

Title:       P.P., et al. -*v*- Compton Unified School District, et al.

4, 54-66, 71).  The Complaint details the body's response to trauma, including how trauma affects the brain.  (*See, e.g.*, Compl. ¶¶ 107-22).

In this vein, Peter P. states that, as a result of the "repeated and sustained trauma" he has experienced, "he often experiences uncontrollable anger, as well as "deep sadness and depression." (*Id*. ¶ 19).  Peter P. "previously had shown an ability to achieve high grades in certain honors classes," but the Complaint alleges that the "complex trauma in his life has at times caused his grades to decline sharply." (*Id*. ¶ 20).  "Over the course of his academic career, [Peter P.] has been repeatedly suspended for disobedient, angry, or aggressive behavior, and has been involuntarily transferred (or 'expelled')" from a number of CUSD schools. (*Id*.).  Similarly, the Complaint alleges that Kimberly Cervantes "had trouble focusing and concentrating in class and has missed a significant amount of class" as a result of the multiple traumas she has suffered. (*Id*. ¶¶ 22, 24, 26).  Moreover, Phillip W. allegedly "has difficulty focusing, concentrating, and recalling information in school" and "feels detached or angry much of the time." (*Id*. ¶ 29).  Phillip W. has been expelled from three mainstream high schools in his freshman year because he has been in physical altercations with other students. (*Id*. ¶ 31).  Virgil W. is also alleged to "struggle[] with anger due to the traumatic violence and loss he has endured." (*Id*. ¶ 33).  As a result of fights he has been involved in at school, Virgil W. has been repeatedly suspended and was "expelled" this year from Centennial High School. (*Id*.).  Finally, the Complaint alleges that, due to the traumatic events he has suffered, Donte J. "has had difficulty focusing in class . . . and was recently suspended for slamming the door to the counselor's office when he tried to request help and felt that he was getting none." (*Id*. ¶ 36).

Trauma-sensitive schools are alleged to exhibit the following core components: "(1) training educators to recognize, understand, and proactively recognize and address the effects of complex trauma, in part through building students' self-regulation and social-emotional learning skills; (2) developing restorative practices to build healthy relationships and resolve conflicts peacefully and avoid re-traumatizing students

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

through the use of punitive discipline; and (3) ensuring consistent mental health
support is available to appropriately meet student needs."  (*Id.* ¶ 6).

In contrast, CUSD is alleged to have failed to "train and sensitize teachers or
administrative personnel to recognize, understand, and address the effects of complex
trauma"; provide staff and teachers with "training in evidence-based trauma
interventions that have been demonstrated to reduce the effects of trauma"; "notify
parents of its obligation to identify and provide accommodations to students whose
learning may be impaired due to the experience of trauma"; "implement restorative
practices necessary to support healthy relationships"; "address conflict and violence in
a manner that recognizes the impact of complex trauma on the ability to self-regulate
in high stress or anxiety situations"; or provide adequate (or any) mental health
support.  (*Id.* ¶ 7).

Consequently, Plaintiffs contend that Defendants "have ignored and
affirmatively breached their responsibility to accommodate students whose access to
education is fundamentally impaired by reason of the trauma they have endured" (*id.* ¶
7); rather, Defendants are alleged to have "subject[ed] trauma-impacted students to
punitive and counter-productive suspensions, expulsions, involuntary transfers, and
referrals to law enforcement that push them out of school, off the path to graduation,
and into the criminal justice system" (*id.* ¶ 8).

The Complaint alleges that the Student Plaintiffs have been, and without school-
wide trauma-sensitive accommodations will continue to be, denied meaningful access
to public education on account of their disabilities.  (*See id.* ¶¶ 7, 13, 197, 220).
Further, the Complaint alleges that "[a]s a consequence of Defendants' failure to
provide teachers with the support, resources, and training to address the high
concentration of CUSD students who have experienced trauma, [the Teacher Plaintiffs]
report experiencing burnout and secondary traumatic stress."  (*Id.* ¶¶ 45-47, 156).
Defendants' alleged failure to accommodate students suffering from complex trauma
has also purportedly resulted in the Teacher Plaintiffs "exert[ing] significant additional
effort both in teaching and" managing the classroom, as well as spending their own

CIVIL MINUTES—GENERAL                                                                    6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                 Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

"money and personal time in attempting to alleviate the effects of complex trauma on" students.  (*Id*. ¶¶ 45-47).

The Complaint asserts claims for: (1) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (2) violation of Department of Education regulations regarding "location and notification," 34 C.F.R. § 104.32; (3) violation of Department of Education regulations regarding "procedural safeguards," 34 C.F.R. § 104.36; (4) violation of Department of Education regulations regarding "free appropriate public education," 34 C.F.R. § 104.33; and (5) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

On July 9, 2015, Plaintiffs filed the Motion.  The Motion "seek[s] a preliminary injunction ordering Compton Unified School District . . . and Individual Defendants to train all CUSD teachers, administrators, and school-site staff regarding understanding and recognizing the effects of complex trauma, including its effects on development and the ability to learn, think, read, concentrate, and communicate, in accordance with research-based practices that have achieved success in school districts like CUSD." (Mot. at 1).

Plaintiffs note that "initial training is feasible to implement on a short time frame: this initial training can be provided in a day or less, and leading national experts in trauma-affected education have offered to provide training materials and onsite support free of charge."  (Mot. at 2; *see also* Mot. at 15, 23).

On July 27, 2015, Defendants filed an Opposition to Plaintiffs' Motion for Preliminary Injunction (the "Opposition").  (Docket No. 58).  On August 3, 2015, Plaintiffs filed a Reply in Support of Plaintiffs' Motion for Preliminary Injunction (the "Reply").  (Docket No. 66).

## II.    EVIDENTIARY OBJECTIONS

Along with the Opposition, Defendants filed Objections to Evidence in Support of Plaintiffs' Motion for Preliminary Injunction ("Defendants' Objections").  (Docket

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)           Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

No. 59).  Similarly, Plaintiffs have filed Objections to Evidence in Defendants'
Oppositions to Motions for Preliminary Injunction and Class Certification ("Plaintiffs'
Objections").  (Docket No. 64).  Plaintiffs also filed Responses to Defendant'
Objections to Evidence in Support of Plaintiffs' Motion for Preliminary Injunction
("Plaintiffs' Response").  (Docket No. 62).

        Ultimately, the Court declines to rule individually on each evidentiary objection,
as it concludes below that it is largely able to evaluate the merits of the Motion without
resort to the challenged portions of the documents provided.  To the extent any
particular objection is relevant to the analysis, the Court addresses it separately below.
All other objections are **OVERRULED** *without prejudice* to these challenges being
raised later in this action.

## III.    MEET AND CONFER

        Defendants contend that Plaintiffs have failed to properly comply with their
Meet and Confer obligations under Local Rule 7-3 in connection with the Motion.
(*See* Opp. at 4 n. 3).  Plaintiffs, however, argue that "Local Rule 7-3 does not apply to
preliminary injunctive relief," but, nevertheless, Plaintiffs "met and conferred with
Defendants about [the Motion] on June 30, 2015."  (Reply at 3 n.2 (citing Declaration
of Michael H. Strub, Jr. ("Strub Declaration") (Docket No. 66-4) ¶¶ 3-4)).

        The Court does note that Local Rule 7-3 contains an exemption for applications
for preliminary injunctions.  Moreover, the Strub Declaration does contain an email
from July 24, 2015, summarizing discussions between counsel for the parties during a
telephonic conference on June 30, 2015; the topics discussed include the Motion.
(Strub Decl. ¶ 7, Ex. B).  Based on the record and considering the subject of the
Motion, the Court will not decline to consider the Motion based on Local Rule 7-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

## IV.   **MOTION FOR PRELIMINARY INJUNCTION**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (rejecting "possibility" standard and holding that plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction.").  "A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2007).

As to the specific relief sought, "[a] preliminary injunction can take two forms."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009).  ***First***, "[a] prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'"  *Id.* (quoting *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)).  ***Second***, "[a] mandatory injunction 'orders a responsible party to take action.'"  *Id.* at 879 (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)) (internal quotation marks omitted).  "A mandatory injunction 'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'"  *Id.* (alterations in original) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)) (internal quotation marks omitted).

At the hearing, Plaintiffs suggested that what they request is a prohibitory injunction because they seek to alter the trainings currently offered by CUSD. Plaintiffs argued that what they are seeking here is not creation of something that does not already exist; rather, they claim to request a preservation of the status quo in asking for a replacement of trainings about complex trauma that do not meet relevant standards.

However, the Court simply does not credit this argument, nor did Plaintiffs argue it in their papers.  The relief requested in the Motion is an order that would require "Compton Unified School District . . . and Individual Defendants to train all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015

Title:      P.P., et al. -*v*- Compton Unified School District, et al.

CUSD teachers, administrators, and school-site staff regarding understanding and
recognizing the effects of complex trauma, including its effects on development and
the ability to learn, think, read, concentrate, and communicate, in accordance with
research-based practices that have achieved success in school districts like CUSD."
(Mot. at 1).  It is clear that what the Motion seeks, therefore, is affirmative
implementation of a particular type of program.  This goes beyond maintaining the
status quo.  In short, Plaintiffs seek a mandatory injunction.

       "In general, mandatory injunctions 'are not granted unless extreme or very
serious damage will result and are not issued in doubtful cases or where the injury
complained of is capable of compensation in damages.'"  *Marlyn Nutraceuticals, Inc.,*
571 F.3d at 879 (quoting *Anderson*, 612 F.2d at 1115).  Indeed, the Ninth Circuit has
many times discussed the nature of mandatory injunctions.  *See, e.g.*, *Garcia v.
Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("In plain terms, mandatory
injunctions should not issue in 'doubtful cases'" (citations omitted)); *Working
Washington v. Cent. Puget Sound Reg'l Transit Auth.,* 533 F. App'x 716, 718 (9th Cir.
2013) ("Thus, 'mandatory preliminary relief is subject to heightened scrutiny and
should not be issued unless the facts and law clearly favor the moving party'"
(citations omitted)); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir.
1994) (discussing the standards articulated in *Anderson*)).

       As to the general preliminary injunction standard to be applied, Plaintiffs
contend that "'serious questions going to the merits and a balance of hardships that tips
sharply towards the plaintiff can support issuance of a preliminary injunction, so long
as the plaintiff also shows that there is a likelihood of irreparable injury and that the
injunction is in the public interest.'"  (Mot. at 23-24 (quoting *Alliance for the Wild
Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  *See also Drakes Bay Oyster
Co. v. Jewell,* 747 F.3d 1073 (9th Cir.), *cert. denied*, 134 S. Ct. 2877 (2014) ("We have
held that a 'likelihood' of success per se is not an absolute requirement" (citing
*Cottrell*, 632 F.3d at 1131-32)); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v.
Harris*, 729 F.3d 937, 944 (9th Cir. 2013) ("Under our 'sliding scale' approach to
evaluating the first and third *Winter* elements, a preliminary injunction may be granted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

when there are 'serious questions going to the merits and a hardship balance that tips
sharply toward the plaintiff,' so long as 'the other two elements of the *Winter* test are
also met'" (quoting *Cottrell*, 632 F.3d at 1131-32)).

Some district courts have observed that *Cottrell* may be in tension with the
Supreme Court's ruling in *Winter*, as well as the Ninth Circuit's adoption of *Winter*, as
evidenced in *American Trucking Association, Inc. v. City of Los Angeles*, 559 F.3d
1046, 1052 (9th Cir. 2009) and *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th
Cir. 2009).  *See, e.g., S.E.C. v. Banc de Binary Ltd.,* 964 F. Supp. 2d 1229, 1233 (D.
Nev. 2013) (noting that *Cottrell's* "serious questions" sliding scale test "presents some
difficulty in light of *Winter* and *Selecky*," and consequently interpreting "serious
questions going to the merits" as meaning "that there is at least a reasonable
probability of success on the merits" so as to satisfy *Winter's* requirement that success
on the merits is "likely"); *Campbell v. Feld Entm't Inc.,* No. 12-CV-4233-LHK, 2013
WL 4510629, at *4 (N.D. Cal. Aug. 22, 2013) ("The Court finds, however, that this
'serious questions' standard is in tension with *Winter* and prior Ninth Circuit case law
rejecting any earlier standards that are lower than the standard in *Winter*"); *Fox
Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138,
1141 (C.D. Cal. 2012) ("The Court will not apply the standard set forth in *Alliance for
Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011), as it views that
standard as being in conflict with both the Supreme Court's ruling in *Winter* and the
Ninth Circuit's own subsequent adoption of the *Winter* standard.").

The Ninth Circuit has recently reiterated, while evaluating the propriety of a
mandatory injunction, that "[b]ecause it is a threshold inquiry, when 'a plaintiff has
failed to show the likelihood of success on the merits, we need not consider the
remaining three [*Winter* elements].'"  *Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th
Cir. 2015) (en banc) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v.
Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotation marks omitted).

Because Plaintiffs seek a mandatory injunction, the Court declines to interpret
the "serious questions" standard for purposes of the Motion as inconsistent with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Ninth Circuit's guidance that a mandatory injunction not issue in "doubtful cases" and
not be granted "unless the facts and law clearly favor the moving party."

        Mindful of the standards discussed above, the Court evaluates the contentions
made in connection with the Motion.

        A.    **Preliminary Arguments**

        Defendants assert that (1) the Court should defer consideration of the Motion
pending a ruling on Defendants' motion to dismiss; (2) CUSD already provides
appropriate trauma-sensitivity training; (3) the requested third-party training is
premature and inappropriate; and (4) this Court is not empowered to dictate
educational policies to CUSD.  (Opp. at 5-9).

        To briefly address the first three of these assertions, the Court will not defer
ruling on the Motion due to the pending motion to dismiss.  Moreover, the Court does
not consider Defendants' arguments regarding current trauma-sensitivity training
(which Defendants contend renders the current request moot) and integration of third-
party training to be dispositive of the Motion.

        As to Defendants' last argument, the Supreme Court has "cautioned that courts
lack the 'specialized knowledge and experience' necessary to resolve 'persistent and
difficult questions of educational policy.'"  *Bd. of Educ. of Hendrick Hudson Cent.
Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 208 (1982) (quoting *San
Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)).  As such, Defendants
argue that "[e]ven if the Court finds some merit to Plaintiffs' cause, the Court should
decline to substitute its own notions of sound educational policy for those of the school
authorities."  (Opp. at 8 (citing *D.R. ex rel. Courtney R. v. Antelope Valley Union High
Sch. Dist. ("D.R.")*, 746 F. Supp. 2d 1132, 1141 (C.D. Cal. 2010))).  Rather,
Defendants urge that "[w]hile courts may determine whether the requirements of
Congress' acts are met, 'questions of methodology are for resolution by the States' and
thus the local districts.'"  (*Id.* (quoting *D.R.*, 746 F. Supp. 2d at 1141)).  Therefore,
Defendants contend that "[i]f a violation of the Rehabilitation Act or the ADA exists, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v-* Compton Unified School District, et al.

is up to CUSD to determine the most appropriate methodology to remedy that violation including any necessary training."  (*Id.*).

Plaintiffs, however, argue that the requested injunction would not violate separation of powers, as "[c]ourts possess the power and obligation to identify violations of federal disability discrimination laws and to direct governmental entities to undertake the measures necessary to reasonably accommodate disabled individuals." (Reply at 3).  Further, Plaintiffs point out that the proposed injunction does not require any particular training, but only mentions that a particular program has been offered to CUSD free of cost, which CUSD is at liberty to reject in favor of any other program that meets the proposed injunction's criteria.  (*Id.* at 4-5).

Turning to Defendants' cited authority, in *Rowley*, the Supreme Court evaluated the Education for All Handicapped Children Act of 1975—which is currently enacted as the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Specifically, the Court addressed the following two questions: (1) "[w]hat is meant by the [Education for All Handicapped Children Act of 1975's] requirement of a 'free appropriate public education'"; and (2) "what is the role of state and federal courts in exercising the review granted by 20 U.S.C. § 1415," a provision imposing procedural requirements on states receiving federal funds under the Act.  *Rowley*, 458 U.S. at 182-83, 186.

With respect to the second inquiry, the Supreme Court discussed the requirements contained in the then-operative version of 20 U.S.C. § 1415, which "permitt[ed] '[a]ny party aggrieved by the findings and decision' of the state administrative hearings 'to bring a civil action" in 'any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.'"  *Id.* at 204 (quoting 20 U.S.C. § 1415(e)(2)).  "The complaint, and therefore the civil action, [could] concern "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  *Id.* at 204-05 (quoting 20 U.S.C. § 1415(b)(1)(E)).  In reviewing such a complaint, "a court '[was to] receive the record of the [state]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

administrative proceedings, . . . hear additional evidence at the request of a party, and,
basing its decision on the preponderance of the evidence, . . . grant such relief as the
court determin[ed] . . . appropriate.'"  *Id*. at 205 (quoting 20 U.S.C. § 1415(e)(2)).
The Court notes that these provisions have undergone some reorganization since the
*Rowley* decision.  *See* 20 U.S.C. § 1415(i)(2)(A), (b)(6)(A), (i)(C)(ii).

The parties in *Rowley* disagreed as to what these provisions meant, with
"petitioners contending that courts are given only limited authority to review for state
compliance with the Act's procedural requirements and no power to review the
substance of the state program, and respondents contending that the Act requires courts
to exercise *de novo* review over state educational decisions and policies."  *Rowley*, 458
U.S. at 205.  In analyzing the appropriate interpretation, the Court specified that: "a
court's inquiry in suits brought under § 1415(e)(2) is twofold": (1) "has the State
complied with the procedures set forth in the Act"; and (2), "is the individualized
educational program [('IEP')] developed through the Act's procedures reasonably
calculated to enable the child to receive educational benefits."  *Id*. at 206-07.  In this
context, the Court observed:

> In assuring that the requirements of the Act have been met,
> courts must be careful to avoid imposing their view of
> preferable educational methods upon the States.  The primary
> responsibility for formulating the education to be accorded a
> handicapped child, and for choosing the educational method
> most suitable to the child's needs, was left by the Act to state
> and local educational agencies in cooperation with the parents
> or guardian of the child.  The Act expressly charges States with
> the responsibility of "acquiring and disseminating to teachers
> and administrators of programs for handicapped children
> significant information derived from educational research,
> demonstration, and similar projects, and [of] adopting, where
> appropriate, promising educational practices and materials." §
> 1413(a)(3).  In the face of such a clear statutory directive, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

> seems highly unlikely that Congress intended courts to overturn
> a State's choice of appropriate educational theories in a
> proceeding conducted pursuant to § 1415(e)(2).

*Id*. at 207-08 (alteration in original) (footnotes omitted).  The Court further concluded that "Congress' intention was not that the Act displace the primacy of States in the field of education, but that States receive funds to assist them in extending their educational systems to the handicapped"; as such, "once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States."  *Id*. at 208.

Here, the Court is clearly evaluating a different statutory framework than that at issue in *Rowley*, though the IDEA and Section 504 do share similarities and satisfaction of IDEA requirements is often a manner of complying with Section 504's implementing regulations.  *See, e.g.,* 34 C.F.R. § 104.33(b)(2); 34 C.F.R. § 104.35(d); 34 C.F.R. § 104.36.

Ultimately, this Court's analysis below is dispositive of the Motion.  Therefore, while the Court notes this Supreme Court guidance, it is not necessary at present to evaluate the applicability of the reasoning in *Rowley* to the statutory provisions and particular facts at issue in this action.  However, the Court does note Ninth Circuit jurisprudence on the role of courts with respect to ADA and Section 504 reasonable accommodation issues.  *See, e.g.*, *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) ("The court's obligation under the ADA and accompanying regulations is to ensure that the decision reached by the state authority is appropriate under the law and in light of proposed alternatives.  Otherwise, any state could adopt requirements imposing unreasonable obstacles to the disabled, and when haled into court could evade the antidiscrimination mandate of the ADA merely by explaining that the state authority considered possible modifications and rejected them.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

### B.     Administrative Exhaustion

Defendants, likewise, argue that judicial intervention is unwarranted at present because Plaintiffs have failed to exhaust their administrative remedies.  (Opp. at 10-12).  Defendants observe that "the Ninth Circuit recently ruled in line with sister circuits that 'an unenumerated motion under Rule 12(b) is not the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted'; rather, the proper means is as an affirmative defense and may be asserted by way of summary judgment."  (*Id*. at 10-11 n. 5 (quoting *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc)).  Defendants assert that, although they have not yet had the opportunity to raise exhaustion as an affirmative defense, "the issue is highly relevant for this Motion in light of the Court's required analysis of whether Plaintiffs will likely succeed on the merits of their claims."  (*Id*.).

The IDEA, which is not directly at issue in this case, "is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)).  As is relevant to this action, the IDEA provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

20 U.S.C. § 1415(l).

The Ninth Circuit has adopted a "relief-centered" approach to IDEA exhaustion,
rather than an "injury-centered" approach.  *Payne v. Peninsula Sch. Dist.*, 653 F.3d
863, 874 (9th Cir. 2011) (en banc) *overruled on other grounds by Albino*, 747 F.3d at
1171.   More specifically, the Ninth Circuit has held that "the IDEA's exhaustion
provision applies only in cases where the relief sought by a plaintiff in the pleadings is
available under the IDEA"; in contrast, "[n]on–IDEA claims that do not seek relief
available under the IDEA are not subject to the exhaustion requirement, even if they
allege injuries that could conceivably have been redressed by the IDEA."  *Id*. at 871.
Applying this relief-centered approach, the Ninth Circuit acknowledged that
"exhaustion is clearly required when a plaintiff seeks an IDEA remedy or its functional
equivalent," and "exhaustion is required in cases where a plaintiff is seeking to enforce
rights that arise as a result of a denial of a free appropriate public education, whether
pled as an IDEA claim or any other claim that relies on the denial of a FAPE to
provide the basis for the cause of action (for instance, a claim for damages under § 504
of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a FAPE)."
*Id.* at 875.

Plaintiffs, in turn, argue that they "need not exhaust administrative remedies
under the [IDEA], *see* Opp. at 10-12, because the relief sought here under the ADA,
Section 504, and its implementing regulations [namely, the implementation of a
trauma-sensitive district- and school-wide system across the entirety of CUSD] is not
available under the IDEA."  (Reply at 8-9).

The Court, following the relief-centered approach discussed in *Payne*, agrees
with Plaintiffs.  The district- and school-wide implementation of trauma-sensitive
systems requested is not available under the IDEA, which is inherently individualized.
*See, e.g.*, *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 484-87 (7th Cir. 2012)
(discussing the IDEA's requirements as requiring school districts to "identify children
with disabilities, determine whether these children require special-education services,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

and develop individualized education programs ('IEPs') tailored to each student's specific needs," noting that "[e]ach step in the process is highly individualized because every child is unique").

Defendants' primary contention in this regard would seem to be that the broad approach requested will not be appropriate to adequately address the trauma-induced disabilities, if any, at issue in this case.  As such, Defendants argue that the appropriate response, to the extent one is required, would be inherently individualized to address the particular needs of individual students, along the lines of the remedies provided through the IDEA.  However, in evaluating exhaustion, the Court is looking only to the precise relief actually sought; the Court will take a more in-depth view as to the appropriateness of the relief sought in relation to Section 504 and the ADA below.

Therefore, to the extent administrative exhaustion is properly viewed as a variety of "likelihood of success on the merits" argument, the Court does not view it as dispositive of this prong of the preliminary injunction analysis.

C.    **Likelihood of Success on the Merits**

In addition to the administrative exhaustion issue discussed above, Defendants argue that Plaintiffs cannot satisfy this prong of the preliminary injunction standard because (1) the "Student Plaintiffs are not disabled under the current law"; (2) "there is no showing that any alleged violation was 'solely by reason' of a disability"; and (3) Plaintiffs "propose an inappropriate accommodation for all students who have experienced some type and degree of trauma."  (Opp. at 10).

**1.  Claims for Violations of Section 504 and Title II of the ADA**

Section 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).  Similarly, Title II of the ADA provides that "no qualified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

individual with a disability shall, by reason of such disability, be excluded from
participation in or be denied the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by any such entity."  42 U.S.C.
§ 12132.

        To establish a prima facie Section 504 claim, Plaintiffs must establish that: (1)
they are individuals with a disability; (2) they are otherwise qualified to receive the
benefit; (3) they were "denied the benefits of the program solely by reason of" their
disability; and (4) "the program receives federal financial assistance."  *Duvall v. Cnty.
of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct.
11, 2001) (citing *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114
F.3d 976, 978 (9th Cir. 1997)).  Similarly, to prove a violation of Title II of the ADA,
Plaintiffs must show: (1) they are qualified individuals with a disability; (2) they were
"either excluded from participation in or denied the benefits of a public entity's
services, programs, or activities, or [were] otherwise discriminated against by the
public entity"; and (3) "such exclusion, denial of benefits, or discrimination was by
reason of" their disability.  *Weinreich*, 114 F.3d at 978 (emphasis removed).
Throughout this case, the parties have not disputed that CUSD receives federal funds,
such that this distinction between the ADA and Reformation Act is a non-factor here.
(*See* Opp. at 13).  Similarly, Defendants concede that the Student Plaintiffs are
qualified to receive the benefits of CUSD's program.  (*Id.*).

        For purposes of the ADA, "[t]he term 'qualified individual with a disability'
means an individual with a disability who, ***with or without reasonable modifications***
to rules, policies, or practices, the removal of architectural, communication, or
transportation barriers, or the provision of auxiliary aids and services, meets the
essential eligibility requirements for the receipt of services or the participation in
programs or activities provided by a public entity."  42 U.S.C. § 12131 (emphasis
added).  In the "Findings" section of the ADA, Congress observed that "individuals
with disabilities continually encounter various forms of discrimination, including . . .
failure to make modifications to existing facilities and practices."  42 U.S.C. § 12101
(a)(5).  The Department of Justice's ADA implementing regulations specify that a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

public entity must "make ***reasonable modifications*** in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."  28 C.F.R. § 35.130(b)(7) (emphasis added); *see also Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1046 (9th Cir. 1999).

Similarly, in the "public preschool elementary, secondary, or adult educational services" context, the Department of Education's implementing regulations for Section 504 define a "qualified handicapped person" as "a handicapped person (i) of an age during which nonhandicapped persons are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act."  34 C.F.R. § 104.3(l)(2).  "[T]he focus of the prohibition in § 504 is 'whether disabled persons were denied meaningful access to state-provided services.'"  *Mark H. v. Lemahieu,* 513 F.3d 922, 937 (9th Cir. 2008) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)) (internal quotation marks omitted).  In this vein, "although § 504 does not require 'substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals,' it, like the ADA, does require ***reasonable*** modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access to a benefit because of their disability.'"  *Id*. (emphasis in original) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979); *Alexander v. Choate,* 469 U.S. 287, 301 (1985)) (internal quotation marks omitted).  In fact, the Ninth Circuit has noted that "[p]laintiffs may establish that an organization violated § 504 by showing that the public entity discriminated against, excluded, or denied the benefits of a public program to a qualified person with a disability," which "includes showing that the public entity denied the plaintiff a reasonable accommodation."  *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010) (citing *Lemahieu*, 513 F.3d at 924-25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

The Ninth Circuit has recognized that, "[a]lthough Title II of the ADA uses the term 'reasonable modification' rather than 'reasonable accommodation,' these terms do not differ in the standards they create."  *Wong v. Regents of Univ. of California*, 192 F.3d 807, 816 n. 26 (9th Cir. 1999), *as amended* (Nov. 19, 1999).

"[T]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act."  *Zukle*, 166 F.3d at 1045 n.11; 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims].").  Consequently, "courts have applied the same analysis to claims brought under both statutes."  *Zukle,* 166 F.3d at 1045 n.11; *see also Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

As is relevant to this case, the ADA defines a "disability . . . with respect to an individual" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  Subject to exceptions not relevant in this case, Section 504 defines "disability" and "individual with a disability" as "the meaning given to it" in 42 U.S.C. § 12102.  29 U.S.C. § 705(9)(B), (20)(B); 29 U.S.C. § 794(a).

The Equal Employment Opportunity Commission's regulations implementing the ADA define a "physical or mental impairment" as: "'(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities.'"  29 C.F.R. § 1630.2(h).  *See also* 28 C.F.R. § 35.104.

The Rehabilitation Act's regulations define "physical or mental impairment" in substantially the same manner.  34 C.F.R. § 104.3(j)(1), (j)(2)(i) (defining a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

"handicapped person" for purposes of  Section 504 as a person who "has a physical or
mental impairment which substantially limits one or more major life activities," and
defining "[p]hysical or mental impairment" as "(A) any physiological disorder or
condition, cosmetic disfigurement, or anatomical loss affecting one or more of the
following body systems: neurological; musculoskeletal; special sense organs;
respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-
urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological
disorder, such as mental retardation, organic brain syndrome, emotional or mental
illness, and specific learning disabilities").

        Within the meaning of the ADA, a physical or mental impairment is a disability
if it "substantially limits one or more major life activities of" an individual.   42 U.S.C.
§ 12102(1)(A); *see also* 34 C.F.R. § 104.3(j)(1)(i) (defining a handicapped person for
purposes of Section 504 as one who "has a physical or mental impairment which
substantially limits one or more major life activities").  The ADA includes "learning,
reading, concentrating, thinking, [and] communicating," among a non-exhaustive list
of "major life activities."  42 U.S.C. § 12102(2)(A); *see also Weaving v. City of
Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (noting that "[t]he ADA provides a
nonexhaustive list of 'major life activities,'" and that this list includes "'learning,
reading, concentrating, thinking, communicating, and working'" (quoting 42 U.S.C. §
12102(2)(A))).   "[A] [m]ajor life activity also includes the operation of a major bodily
function, including but not limited to, functions of the . . . neurological [and] brain . . .
functions."  42 U.S.C. § 12102(2)(B).

        The Equal Employment Opportunity Commission's regulations implementing
the ADA note that "[t]he term 'substantially limits' shall be construed broadly in favor
of expansive coverage, to the maximum extent permitted by the terms of the ADA.
'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. §
1630.2(j)(1)(i).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015

Title:       P.P., et al. -*v*- Compton Unified School District, et al.

## 2. Disability and Plaintiffs' Proposed Accommodation

Plaintiffs acknowledge that, pursuant to the Ninth Circuit's guidance in *Zukle*, it is their initial burden to demonstrate that they are qualified under Section 504 and Title II of the ADA.  (Mot. at 22-23 (citing *Zukle*, 166 F.3d at 1047)).  The parties seem to agree that Plaintiffs next must show the existence of a reasonable accommodation. (*See id.* (citing *Zukle*, 166 F.3d at 1047); Opp. at 18 (citing *Zukle*, 166 F.3d at 1047)). Once Plaintiffs have done so, the burden will shift to Defendants, who must show that the requested accommodation would require a fundamental or substantial modification of CUSD's program.  (Mot. at 22-23 (citing *Zukle*, 166 F.3d at 1047); Opp. at 18 (citing *Zukle*, 166 F.3d at 1047)).   Defendants also state that they can satisfy their burden by establishing that the requested accommodation, regardless of whether it is reasonable or not, would not be effective.  (Opp. at 18 (citing *Zukle*, 166 F.3d at 1047), 19).

Here, Defendants argue that, in suggesting the proposed accommodation at issue in the Motion, Plaintiffs "fail to recognize that a remedy properly fashioned to address a violation of the Rehabilitation Act or the ADA does not require the implementation of that specific accommodation."  (Opp. at 18).  Rather, Defendants suggest that "[a]s the ones best trained and situated to determine the educational needs of its students, Defendants not Plaintiffs should decide the right course for fashioning any remedy, if necessary."  (*Id.*).

Moreover, as to the Rehabilitation Act specifically, Defendants argue that the Department of Education's implementing regulations require CUSD to "'provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap,'" (Opp. at 18 (quoting 34 C.F.R. § 104.33(a))), which entails "'the provision of regular or special education and related aids and services that (i) are ***designed to meet individual educational needs*** of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements' of the other implementing regulations" (*id.* (emphasis in original) (quoting 34 C.F.R. § 104.33(b)(1))).  Defendants assert that "[t]he only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v-* Compton Unified School District, et al.

guidance the Department of Education put forth for schools to meet and satisfy the
Rehabilitation Act's standards was the '[i]mplementation of an Individualized
Education Program [IEP] developed in accordance with the Education of the
Handicapped Act [IDEA].'"  (Opp. at 18-19 (quoting 34 C.F.R. § 104.33(b)(2))).

        In light of the above, Defendants contend that the relevant inquiry "is will the
harm be remedied by the accommodation if there truly has been a violation."  (*Id*.).
Defendants argue that "for any accommodation to be both reasonable and appropriate,
it must focus on addressing [issues specific to the manner in which alleged trauma-
induced disabilities impact particular students] through an individual plan designed to
ensure the student receives a free appropriate public education as the law requires
(whether that be by way of specialized tutoring, extra testing time, personalized
counseling, or any of the other numerous ways CUSD regularly accommodates its
disabled students)."  (*Id*. (citing Jacobs Decl. ¶¶ 37-39)).

        Plaintiffs, however, argue that they have proposed "a reasonable accommodation
that would effectively address the effects of the complex trauma students' abilities to
access their education: districtwide and school-wide policies and practices that address
trauma and its effects."  (Mot. at 23).  Similarly, Plaintiffs contend that the proposed
accommodations are sufficient to remedy the identified violations, as evidenced by the
Plaintiffs' "detailed and reasoned testimony from national experts explaining
insufficiency of individualized interventions to address trauma's impact on education."
(Reply at 16 (citations omitted)).  Plaintiffs argue that the accommodation they seek
cannot amount to a "fundamental and substantial modification to CUSD's IEP program
and standards" because they seek "systemic changes to district-wide policies and
practices," which require no modification to CUSD's IEP.   (*Id*. at 16-17 (internal
quotation marks and citations omitted)).  Finally, Plaintiffs argue that (as Defendants
acknowledge), CUSD has already started trauma-sensitivity and awareness training for
personnel, such that "[e]xpanding the reach of such training does not constitute a
fundamental modification to the educational program."  (*Id*. at 17).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Without opining as to whether Plaintiffs' proposed program might be beneficial or desirable as a policy matter, the Court concludes that it is not appropriate to order the relief sought at this time.

The Court recognizes that the Plaintiffs' theory of the case is that, as a result of Defendants' policy of not providing trauma-sensitive accommodations, all putative class members have been exposed to the same injury (lack of meaningful access to the public education to which they are entitled), despite varying levels of alleged trauma-induced disability and differing manifestations of attendant consequences; similarly, Plaintiffs argue that the system-wide trainings they request are the only effective way to begin to address this trauma.  At the other end of the spectrum, the Defendants view this case as an improper aggregation of students who will all require individualized accommodations in order to address any alleged trauma-induced disabilities.

The Court is ultimately evaluating whether the relief suggested by Plaintiffs is reasonable and would allow members of the putative class to enjoy meaningful access to the benefits of CUSD's program.  *See Choate*, 469 U.S. at 301 (stating, in Section 504 case, that "to assure meaningful access [to a benefit to which an otherwise qualified handicapped individual is entitled], reasonable accommodations in the grantee's program or benefit may have to be made").

The Ninth Circuit has previously evaluated the reasonableness of particular proposed modifications in the context of class actions.  *See, e.g., Crowder*, 81 F.3d at 1485 (holding, in ADA action applying a disparate impact analysis, a quarantine requirement affecting dogs (including guide dogs) was a policy, practice or procedure which discriminated against visually-impaired individuals by denying them meaningful access to state services, programs and activities by reason of their disability in violation of the ADA, and a genuine issue of material fact existed as to whether the plaintiffs' proposed modifications to this quarantine amounted to "'reasonable modifications' which should be implemented, or 'fundamental[ ] alter[ations],' which the state may reject" (alterations in original)).  The Ninth Circuit has also noted in cases involving, for example, claims brought regarding access to public education

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015

Title:        P.P., et al. -*v*- Compton Unified School District, et al.

pursuant to Section 504, that "[r]easonableness 'depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to [enjoy meaningful access to the program.]'"  *Hamamoto*, 620 F.3d at 1098 (alteration in original) (quoting *Vinson*, 288 F.3d at 1154).  "'[M]ere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; [the Rehabilitation Act] create[s] a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary.'"  *Id*. (alterations in original) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001)).

It is a bit unclear to the Court whether Plaintiffs are requesting the relief sought in the Motion on behalf of the putative class, or only the named Student Plaintiffs. Plaintiffs would seemingly respond that the functional outcome, CUSD training, should be the same regardless of which analysis is undertaken.

Looking to the putative class, the Court is mindful of Plaintiffs' citations to expert testimony regarding the neurological changes effected by trauma generally, the ways in which complex trauma impacts the abilities of students to effectively, for example, learn, read, concentrate, think, and communicate, and the fact that system-wide strategies are the only effective way to meaningfully address the impact of complex trauma on students' ability to access their education (such that individualized assessments are not only not required, but will be insufficient).  Likewise, the Court acknowledges Plaintiffs' arguments that Defendants have failed to provide responsive evidence and, instead, appear to engage in something closer to the "mere speculation" regarding feasibility discussed above.  (*See, e.g*., Reply at 15-17).

Nevertheless, regardless of whether the Plaintiffs ultimately prevail in their contention that the system-wide relief they seek (which they argue requires no individualized inquiries) is the only effective way to at least begin to address the barriers to education faced by students with trauma-induced disabilities and is properly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v-* Compton Unified School District, et al.

awarded under the Acts, at this time, the Court is not prepared to conclude that the law
and facts clearly favor Plaintiffs and would allow the Court to award the relief sought
in the Motion with regard to the putative class, which has yet to be certified; in fact, the
Court is denying the pending Motion for Class Certification without prejudice.  *See
Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1371 (9th Cir. 1984)
("[I]n the absence of class certification, the preliminary injunction may properly cover
only the named plaintiffs.").  As discussed above, "[Plaintiffs'] burden here is doubly
demanding: Because [Plaintiffs] seek[] a mandatory injunction, [they] must establish
that the law and facts ***clearly favor*** [their] position, not simply that [they are] likely to
succeed."  *Garcia*, 786 F.3d at 740 (emphasis in original).  Here, the Court questions
its power to order the relief sought in the Motion to the extent it is requested in relation
to the putative class.

To the extent this remedy is sought in relation to the named Student Plaintiffs, in
light of Plaintiffs' contentions that these particular students have been evaluated at Dr.
Stefanidis's clinic, the Court will undergo a more specific application of the legal
standards articulated above to these students.

At the outset, the Court notes that Defendants have objected to much of the
Stefanidis Declaration, primarily on the grounds that:

> The declarant fails to lay the foundation for the statement the
> students were examined, and never states that he personally
> examined the students: as such, without foundation for personal
> knowledge of the statement, it appears to be based on the
> declarant's retention and recitation of hearsay.  Without
> personal knowledge, the paragraph describing the students'
> evaluation is irrelevant.

(Defendants' Objection No. 109; *see also* Defendants' Objections Nos. 110-15
(objections to various portions of the Stefanidis Declaration as irrelevant, hearsay, not
based on personal knowledge and, in the case of Objection No. 115, stating a legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v-* Compton Unified School District, et al.

conclusion).  Plaintiffs combat these objections, noting that, for example, "Dr. Nikoloas Stefanidis has properly laid the foundation for his statement about the students' examinations," and outlines the standards pursuant to which the evaluations were conducted ("in accordance with his—and professional—standards").  (*See* Plaintiffs' Response to Objection No. 109).  Moreover, Plaintiffs argue that expert testimony "may rely on assessments by third parties when such conduct is practiced in the ordinary course and is commonly used by other professionals." (*Id.*; *see also* Plaintiffs' Response to Objection Nos. 110-14) (discussing Federal Rule of Evidence 703).  Finally, as to the contention that paragraph 29 of the Stefanidis Declaration (concluding that "the complex trauma to which these youth have been exposed has impaired the ability to learn, think, read, concentrate, communicate, and/or behave in pro-social ways") states a legal conclusion (Defendants' Objection No. 115), Plaintiffs note that "[e]xpert witnesses may opine 'about issues as to which their expertise may assist the trier of fact, even if the opinion embraces an ultimate issue of fact.'" (Plaintiffs' Response to Objection No. 115 (quoting *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980)).

The Court observes that Federal Rule of Evidence 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," and "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Fed. R. Evid. 703.  The Court does not address whether the evaluations reviewed by Dr. Stefanidis are of a type that would be reasonably relied upon by an expert in the field, nor does it, at present, address Defendants' remaining objections.  The Court has sufficient reservations regarding the Stefanidis Declaration to preclude a conclusion that Plaintiffs have met their burden here.

Dr. Stefanidis is "a Clinical Assistant Professor of Pediatrics at the Keck School of Medicine of the University of Southern California and the Clinical Director of the High Risk Youth Program in the Division of Adolescent Medicine at Children's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Hospital Los Angeles."  (Declaration of Nikolaos Stefanidis ("Stefanidis Declaration")) (Docket No. 42-16) ¶ 1).  He is also "an Adjunct Faculty in the Field Training office at the California School of Professional Psychology at Alliant International University." (*Id*.).  His "fields of specialization include adolescents, more specifically homeless adolescents, and the effects of complex trauma on homeless children."  (*Id*.).  Dr. Stefanidis "received a Ph.D. in Clinical Psychology from the California School of Professional Psychology . . . [and] . . . a M.A. in General Psychology and Clinical Psychology from West Chester University and a B.A. from Widener University."  (*Id*. ¶ 3).  Dr. Stefanidis states that "[o]ver the course of more than twenty years, [he has] given numerous presentations and seminars on topics related to complex trauma in children and the effects of complex trauma on homeless youth in the USA and abroad." (*Id*. ¶ 6).  Dr. Stefanidis then focuses on the effects of trauma on homeless youth (*id*. ¶¶ 8-10), the importance of trauma-sensitive practices, with a particular basis in trauma and homeless youth (*id*. ¶¶ 11-14), the contours of a trauma-informed approach, again with a particular basis in how trauma impacts homeless youth (*id*. ¶¶15-20), and the specifics of a model for the type of trauma-sensitive approach described (the "ARC" model) (*id*. ¶¶ 21-23).

Dr. Stefanidis states that "[o]n July 6 and July 7, four of the named plaintiffs in this case—Peter P., Phillip W., Virgil W., and Kimberly Cervantes—were evaluated by [his] clinic, Children's Hospital Los Angeles (CHLA) Division of Adolescent and Young Adult Medicine, High Risk Youth Program, to assess behavior, learning difficulties, and other effects of complex trauma."  (*Id*. ¶ 24).  He states that "[t]hese evaluations were conducted in accordance with professional standards and in accordance with the practices that the clinic typically follows in the ordinary course of [its] work."  (*Id*.).  He states that he is "familiar with the work of the evaluators, and selected the evaluators on that basis for the purpose of assessing these young people." (*Id*.).  Finally, Dr. Stefanidis states:

> I reviewed the written assessments attached hereto as Exhibits
> B through E, and I have face-to-face supervision with the
> primary evaluators to discuss the evaluations, the findings and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

the recommendations.  I strongly believe that Peter P., Philip
W., Virgil W., and Kimberly Cervantes have each experienced
complex traumas, and that the effects of these complex
traumatic experiences have profoundly affected each young
person's development, which left untreated will continue to
present obstacles in their daily functioning at school, home,
work, and at its worst the society will pay the price.
Specifically, I conclude that the complex trauma to which these
youth have been exposed has impaired the ability to learn,
think, read, concentrate, communicate, and/or behave in pro-
social ways.  It is a well-known fact supported by research that
complex trauma impedes "normal" brain development and
effects among others the parts of the brain which are
responsible for executive functioning, judgment, cause and
effect relationships, attention and concentration as well as
memory.

I understand that the remedy in this case calls for the
development of a whole-school, trauma-sensitive approach
implemented by recognized experts in the field that will
include, at a minimum, systematic and ongoing training,
coaching, and consultation for teachers, administrators and
staff, restorative practices, and availability of mental health
support.  I believe that this remedy is necessary and will be
beneficial and effective to ameliorate the impairments to
learning, thinking, reading, and concentrating experienced by
the four young people evaluated at my clinic.

I also understand that Plaintiffs are seeking a preliminary
injunction that calls for training of teachers, educators, and
school-site staff in CUSD regarding understanding and
recognizing the effects of complex trauma, including its effects

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

on the ability to learn, think, read, and concentrate.  The
requested training is both an essential component and an
indispensable first step of the whole-school trauma sensitive
approach I endorse above.  If professionally implemented, I
believe it will begin to ameliorate barriers to accessing
education faced by the plaintiffs.

(*Id*. ¶¶ 29-31).

The Court notes that one of the named Student Plaintiffs, Donte J., was not
included among those mentioned in Dr. Stefanidis's Declaration, such that the validity
of the proposed accommodation as to Donte J. falls into the category discussed above
for putative class members generally (to the extent that it is established that Donte J.
suffers from trauma-induced disabilities and has been denied meaningful access to
CUSD's program, as required by the class definition).  As to the others, the Court
evaluates the record before it and whether the remaining named Student Plaintiffs are
students with a trauma-induced disability, have been denied access to CUSD's
program solely by reason of their disability, and the suggested relief would be a
reasonable accommodation under the circumstances.

In the Complaint, Plaintiffs alleged that "the brains of children who experience
chronic or repeated traumas undergo material changes, creating demonstrable
physiological impairments that impede the ability to perform daily activities, including
thinking, learning, reading, and concentrating."  (Compl. ¶ 107).  In the Motion,
Plaintiffs argue that "[t]he scientific record conclusively establishes that complex
trauma affects neurological and brain functions, and that these neurobiological changes
impair learning, reading, concentrating, thinking, [and] communicating."  (Mot. at 18-
19 (citing Declaration of Bruce Perry ("Perry Declaration") (Docket No. 42-15) ¶ 26;
Declaration of Joyce Dorado ("Dorado Declaration") (Docket No. 42-14) ¶¶ 6-12;
Declaration of Christina Bethell ("Bethell Declaration") (Docket No. 42-12) ¶¶ 12-
18)).  More specifically, for present purposes, the Motion posits that "[p]sychological
evaluations of Student Plaintiffs have confirmed that the effects of the complex trauma

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

Student Plaintiffs have experienced substantially limits one or more life activities,
including: learning, reading, concentrating, thinking, and/or communicating."  (*Id*. at
19 (footnote omitted) (citing Stefanidis Decl. ¶ 29)).

       The Court will not describe the contents of the evaluations Dr. Stefanidis
references in detail, as they are under seal.  However, the Court observes, in general
terms, that the evaluations (conducted by one of two predoctoral psychology interns)
note explicit assessments that the students display particular effects of complex trauma,
with the possible exception of one of the named Student Plaintiffs.  In this vein, several
evaluations mention difficulties with activities that might be considered "major life
activities" for purposes of the Acts' regulations.

       While discussing that the Student Plaintiffs are qualified individuals with a
disability, Plaintiffs note that "[t]he Ninth Circuit has established that it is not
necessary to provide 'a medical professional's diagnosis of' the asserted disability in
order for a plaintiff to show that he or she is disabled under Section 504 or Title II of
the ADA." (Mot. at 19 n. 13 (citing *Vinson*, 288 F.3d at 1152 )).  Plaintiffs further
assert that they "need only provide evidence that 'a reasonable expert in the field
would accept the type of evidence presented by [plaintiff] as proof of his disability.'"
(*Id*. (quoting *Vinson*, 288 F.3d at 1152)).

       In *Vinson*, the court evaluated a summary judgment decision pertaining to
whether the Hawai'i Department of Labor and Industrial Relations ("DLIR")
discriminated against the plaintiff (Vinson) "by refusing to approve (or consider in
good faith) a rehabilitation plan that included reasonable accommodations for his
dyslexia." *Vinson,* 288 F.3d at 1152.  As to the question of whether Vinson was
disabled for purposes of the Rehabilitation Act, the court noted that "Vinson did not
provide a medical professional's diagnosis of dyslexia." *Id*.  "He did provide,
however, a sworn statement from his learning disabilities expert, Barbara Bateman,
Ph.D., J.D., that the DLIR 'was not entitled to demand or rely solely upon a medical
diagnosis of dyslexia, because dyslexia is diagnosed primarily by behavioral and/or
psycho-educational data, as clearly shown in DSM-IV.  It can be diagnosed by medical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -v- Compton Unified School District, et al.

and non-medical personnel alike." *Id*. (internal quotation marks and footnote omitted).
Dr. Bateman's statement set forth diagnostic criteria from the *Diagnostic and
Statistical Manual of Mental Disorders*, and further concluded that a prior letter from a
learning disability specialist (containing Vinson' diagnostic, academic, and behavioral
history, his rehabilitation testing, his progress at Honolulu Community College, and his
current status, along with a one-page Individualized Education Program Plan for
Vinson reflecting that Vinson had been placed in full-time learning disability classes in
elementary school due to "psychological and educational data," and noting that Vinson
had been diagnosed with and served as a person with a learning disability throughout
his education) "contained 'more than ample observational and anecdotal data to
establish dyslexia.'" *Id*. at 1150, 1152-53.  Further, Vinson "presented evidence that
his dyslexia substantially limited a major life activity—learning." *Id*. at 1153.

         Regarding this and related evidence submitted to the district court, the Ninth
Circuit stated that there were genuine issues of material fact "as to whether Vinson has
dyslexia and whether, if he does, his dyslexia is an impairment that substantially limits
his ability to learn." *Id*. at 1153.  The court noted that because "there was a conflict of
material fact on the question of whether a reasonable expert in the field would accept
the type of evidence presented by Vinson as proof of his disability, the district court
should not have entered summary judgment on that issue." *Id*. at 1153-54.

         Here, beyond the expert declarations that assert, in a general sense, the
neurological effects of trauma, as well as the ways in which complex trauma impacts
the abilities of students to effectively, for example, learn, read, concentrate, think, and
communicate (which the Court is not individually evaluating at present), the Court
looks to the Stefanidis Declaration for any specific information regarding the named
Student Plaintiffs.  The Court notes that the precise disability issues before the Court
are somewhat novel.  Whether this Declaration provides evidence supporting a claim
of trauma-induced disability that would satisfy a reasonable expert in the field is not
altogether clear.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

        As a result, the Court need not at present evaluate questions of whether the
named Student Plaintiffs' lack of access to CUSD's program is solely by reason of
their alleged disabilities or the relief sought would be a reasonable accommodation for
these students.  Nor does the Court evaluate whether the entire CUSD-wide relief
would be available for these specific named Student Plaintiffs, or only trainings
specific to the schools they attend.

        In light of its reservations and the standards discussed above for issuance of
mandatory injunctions, the Court **DENIES** the Motion.

### D.    **Irreparable Harm**

        A plaintiff seeking a preliminary injunction must establish that "he is likely to
suffer irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.
Indeed, suffering irreparable harm prior to a determination of the merits is "[p]erhaps
the single most important prerequisite for the issuance of a preliminary injunction."
11A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1
(3d ed. 1998).  Further, the harm identified may not be speculative and Plaintiffs must
also show more than the possibility of some remote further injury.  *Winter*, 555 U.S. at
21-22 (rejecting "possibility" standard and holding that plaintiffs must "demonstrate
that irreparable injury is *likely* in the absence of an injunction") (emphasis in original).

        Plaintiffs contend that "[i]njury to a plaintiff's access to education is a form of
'irreparable harm' that supports issuance of a preliminary injunction, particularly
where it coincides with harm to emotional development."  (Mot. at 24 (citing *D.R. v.
Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1145-46 (C.D. Cal.
2010); *Plyler v. Doe*, 457 U.S. 202, 223 (1982)).  Plaintiffs argue that they "have
introduced evidence that in the absence of the requested injunctive relief, Plaintiffs will
suffer imminent and irreparable educational harm—including poor academic
performance, absences from the classroom, and behavioral challenges."  (Reply at 17
(footnote omitted) (citing Stefanidis Decl. ¶¶ 29, 31 & Exs. B-E; Perry Decl. ¶¶ 30, 36-
37)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                    Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

Defendants, however, argue that "Plaintiffs fail to meet their burden because they have done nothing more than make broad assertions as to the possibility of some future, speculative harm."  (Opp. at 20).  In connection with a balancing of the hardships analysis (discussed below), Defendants acknowledge that "[o]n its face, the harm Student Plaintiffs would suffer in the absence of this preliminary relief would be the denial of meaningful access to education."  (Opp. at 23).  However, they posit that, even though this is "a serious contention if true," it "does not and will not occur." (*Id.*).  Instead, Defendants assert that "Plaintiffs admit that the training being requested is 'not sufficient' to provide the FAPE required by law," and "[b]eing only a 'first step to accommodate students,' the relief requested does not rise to the urgency or extraordinary level necessitating preliminary relief."  (*Id.* at 23-24 (quoting Mot. at 2, 14)).

Courts have concluded that lack of access to classes and related programs, services, and activities can constitute irreparable injury for purposes of a preliminary injunction.  *See, e.g., D.R.*, 746 F. Supp. 2d at 1145-46 (concluding that plaintiff had suffered and would continue to suffer irreparable harm if preliminary injunction (in the form of provision of an elevator key) was not granted, where the student had been excluded from class time, student club meetings, and school functions due to a genetic progressive neurological disorder that prevented her from reaching the second floor of her school).

However, even if the Court were to agree with Plaintiffs' experts that "the complex trauma Student Plaintiffs have suffered 'left untreated[,] will continue to present obstacles in their daily functioning at school" (Mot. at 24 (quoting Stefanidis Decl. ¶ 29)), and that the relief sought in the Motion, "[i]f professionally implemented, . . . will begin to ameliorate barriers to accessing education faced by the plaintiffs" (*see* Stefanidis Decl. ¶ 31), the Court's analysis above does not permit it to order the relief at this time, particularly in light of the standards applicable to mandatory injunctions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

### E.      Balance of the Hardships and Public Interest

Plaintiffs argue that "the educational opportunity and life chances of the Student Plaintiffs will be permanently hampered if CUSD fails to act," such that a balance of the harms weighs heavily in their favor.  (Mot. at 25).  Plaintiffs also observe that "[c]ourts have routinely recognized the importance of education for a functioning society," and contend that "[g]iven the harm to future generations and society as a whole if an injunction is denied, the public interest is overwhelmingly on the side of Plaintiffs."  (*Id*. at 25 n. 15).

"However, on the other side of the scale," Defendants argue that "the harm which [they] would face if the injunction were granted is not only considerable but could ultimately cause great harm to both Student Plaintiffs and third-parties not parties to this litigation including teachers, administrators, parents, and other CUSD students."  (Opp. at 24).  In this vein, Defendants contend that "[i]f the requested training is implemented without proper and prior evaluation, CUSD teachers, administrators, and staff would then perhaps apply incorrect methods in their interactions with CUSD students—causing endless ramifications from erroneously labeling non-handicapped students as disabled to incorrectly refusing to enforce proven disciplinary practices."  (*Id*.).  Defendants similarly make arguments regarding how granting the proposed relief would encroach on the Defendants' sole and sound discretion in deciding how to address the alleged disabilities.  (Opp. at 24-25).

The Supreme Court has noted that an analysis on the merits of whether a stay of removal should issue demonstrates "substantial overlap" with "the factors governing preliminary injunctions."  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Winter*, 129 S. Ct. at 376-77).  In this context, the Supreme Court observed that where a government entity is a party, the balance of hardships and public interest factors merge.  *Id*. at 435 (remanding a denial of a stay when lower court had not articulated the proper standard for injunctive relief).  The Court bears this in mind while conducting its inquiry here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 15-3726-MWF (PLAx)                    **Date:** September 29, 2015

Title:          P.P., et al. -*v*- Compton Unified School District, et al.

The Court concludes that the harm the Defendants cite is seemingly irrelevant; although Plaintiffs seek this relief "as soon as reasonably possible," (*see* Motion Proposed Order (Docket No. 42-2)), this does not suggest that Plaintiffs are asking for immediate institution of the requested training to the detriment of its proper implementation.   Moreover, to the extent that this relief would encroach on the Defendants' discretion, this inquiry seems more germane to questions about the Court's power to order the requested relief in the first place.

Nevertheless, even if the Court were to conclude that this analysis favors the Plaintiffs, in light of the discussion above, that conclusion would be insufficient to warrant issuance of the requested relief at this time.

**V.    CONCLUSION**

For the foregoing reasons, the Motion is **DENIED**.

IT IS SO ORDERED.