UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:     P.P., et al. -v- Compton Unified School District, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                    Court Reporter:
          Rita Sanchez                     Not Reported

          Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
          None Present                      None Present

**Proceedings (In Chambers):**   ORDER DENYING DEFENDANTS' MOTION TO
                                 DISMISS PLAINTIFFS' CLASS ACTION
                                 COMPLAINT PURSUANT TO FED. R. CIV. P.
                                 12(b)(6) [41]


       Before the Court is Defendants' Motion to Dismiss Plaintiffs' Class Action
Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").  (Docket No. 41).  The
Court has read and considered the papers filed on the Motion, and held a hearing on
**August 20, 2015**.  As set forth below, the Motion is **DENIED**.

       By way of summary, the Court perceives the central issue here to be the
interplay of, on the one hand, the definition of a cognizable disability for purposes of
Title II of the ADA and Section 504 of the Rehabilitation Act and, on the other, the
manner in which the effects of exposure to trauma may manifest themselves, as alleged
in the Complaint.  Clearly, the Court is not making a final decision as to how the merits
of this action will be resolved, nor does it make any decisions as to whether any
particular student actually suffers from a cognizable disability for purposes of the
Rehabilitation Act or the ADA.  The Court does not endorse the legal position that
exposure to two or more traumatic events is, without more, a cognizable disability
under either of the Acts.  The Court simply acknowledges the ***allegations*** that exposure
to traumatic events ***might*** cause physical or mental impairments that ***could*** be
cognizable as disabilities under the two Acts.  In other words, the Court has determined
that, for purposes of surviving a motion to dismiss, the allegations in the Complaint
suffice for now.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                 Date:  September 29, 2015
Title:      P.P., et al. -*v-* Compton Unified School District, et al.

I.    **BACKGROUND**

On May 18, 2015, students Peter P. (by Carolina Melendrez, guardian ad litem), Kimberly Cervantes, Phillip W. (by Beatrice W., guardian ad litem), Virgil W. (by Beatrice W., guardian ad litem), Donte J. (by Lavinia J., guardian ad litem) (the "Student Plaintiffs"), on behalf of themselves and all others similarly situated, along with teachers Rodney Curry, Armando Castro, II, and Maureen McCoy (the "Teacher Plaintiffs") (collectively, "Plaintiffs") initiated the present suit by filing a Complaint. (Docket No. 1).

Plaintiff Peter P. is seventeen years old, resides within the boundaries of CUSD and Dominguez High School, and attends Dominguez High School.  (Compl. ¶ 40). Plaintiff Kimberly Cervantes is eighteen years old, resides within the boundaries of CUSD and Dominguez High School, and attends Cesar Chavez Continuation School. (*Id*. ¶ 41).  Plaintiff Phillip W. is fifteen years old, resides within the boundaries of CUSD and Compton High School, "is currently in expulsion procedures from Dominguez High School," and attends school at "Team Builders, an alternative school in CUSD."  (*Id*. ¶ 42).  Plaintiff Virgil W.— Phillip W.'s twin brother — is fifteen years old, resides within the boundaries of CUSD and Compton High School, and attends Dominguez High School.  (*Id*. ¶ 43).  Plaintiff Donte J. is thirteen years old, resides within the boundaries of CUSD and Whaley Middle School, and attends Whaley Middle School.  (*Id*. ¶ 44).

"Plaintiff Rodney Curry is a teacher at Dominguez High School in CUSD."  (*Id*. ¶ 45).  "Plaintiff Armando Castro II is a teacher at Cesar Chavez Continuation School in CUSD."  (*Id*. ¶ 46).  "Plaintiff Maureen McCoy is a teacher at Centennial High School in CUSD."  (*Id*. ¶ 47).

Defendants in this action are the Compton Unified School District ("CUSD"), as well as Darin Brawley (in his official capacity as Superintendent of the Compton Unified School District), and Micah Ali, Satra Zurita, Margie Garrett, Charles Davis, Skyy Fisher, Emma Sharif, and Mae Thomas in their official capacities as members of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015

Title:      P.P., et al. -*v*- Compton Unified School District, et al.

the Board of Trustees of the Compton Unified School District (the "Individual Defendants") (collectively, "Defendants").

The Student Plaintiffs represent a putative class of current and future students in CUSD.  (Compl. ¶ 55).  "Defendant CUSD operates schools in the south central region of Los Angeles County and encompasses the city of Compton and portions of the cities of Carson and Los Angeles."  (*Id*. ¶ 48).  "Compton is among the most socioeconomically distressed cities in Southern California, and it experiences attendant high rates of violent crime."  (*Id*. ¶ 74).  The Complaint notes that "[d]ecades of research have proven that children who grow up in high-poverty neighborhoods characterized by minimal investment in schools, quality housing, after-school programs, parks, and other community resources are disproportionately likely to be exposed to trauma and complex trauma."  (*Id*. ¶ 1 (footnote omitted)).

"Trauma," as described in the Complaint, "stems from such causes as exposure to violence and loss, family disruptions related to deportation, incarceration and/or the foster system, systemic racism and discrimination, and the extreme stress of lacking basic necessities, such as not knowing where the next meal will come from or where to sleep that night."  (*Id*. ¶ 1).  Similarly, "[c]omplex trauma stems from the exposure to multiple persistent sources of violence, loss, and other adverse childhood experiences ('ACEs'), and describes children's exposure to these events and the impact of this exposure."  (*Id*. (footnote omitted)).

The Student Plaintiffs and class members are alleged to "have experienced and continue to experience traumatic events that profoundly affect their psychological, emotional, and physical well-being."  (*See id*. ¶¶ 14-35, 73, 75-76).  For example, the Complaint alleges that the following are "[r]epresentative examples of the traumatic incidents of violence that [Student] Plaintiffs have experienced or witnessed":

- Plaintiff Peter P. was repeatedly physically and sexually abused by his mother's boyfriends and witnessed physical abuse of his siblings and mother.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 15-3726-MWF (PLAx)          **Date:** September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

- Plaintiff Peter P. reports that he watched as his best friend was shot and killed.
- Plaintiff Peter P. was stabbed with a knife while trying to protect a friend.
- Plaintiff Peter P. reports that he has witnessed over twenty people being shot.
- Plaintiff Kimberly Cervantes was sexually assaulted on the bus on her way home from school.
- Plaintiff Phillip W. estimates that he has witnessed more than twenty people being shot, one of whom was a close friend who died when shot in the head.
- Plaintiff Virgil W. witnessed his father pointing a gun at his mother.
- A stranger attempted to stab Plaintiff Donte J. and his friends when they were standing in front of the Whaley Middle School campus.
- Plaintiff Donte J. was arrested by police at gunpoint on school campus when he was mistaken for someone else.
- Plaintiff Donte J. was attacked by four people on his way to school.

(*Id.* ¶ 76). Other sources of trauma include: the death of or separation from a loved one (*see id.* ¶¶ 85-90); placement of children in the foster system (*see id.* ¶¶ 91-94); extreme poverty, homelessness, and other socioeconomic hardship (*see id.* ¶¶ 95-97); and discrimination and racism (*see id.* ¶¶ 98-105).

Peter P., for example, was initially separated from his siblings when he was placed in the foster system, has "moved in and out of a series of foster homes," has two older brothers and a prior caretaker who are currently incarcerated, and "spent two months of homelessness sleeping on the roof of his high school cafeteria." (*Id.* ¶¶ 14-18, 97). Similarly, Kimberly Cervantes has "experienced multiple incidents of racism," got into an altercation with a security guard at Dominguez High School while returning a book to the library, witnessed the deaths of two students, and informed a fellow student that she identified as bisexual only to have her teacher say in front of her class that Cervantes "shouldn't be gay" and that it was "wrong." (*Id.* ¶¶ 22-23). Phillip W. "has experienced the deaths of two close friends—one of whom he

---

**CIVIL MINUTES—GENERAL**                                    **4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015

Title:       P.P., et al. -*v*- Compton Unified School District, et al.

witnessed get shot in the head last September," and "lost a close family member to cancer." (*Id*. ¶ 28).  Virgil W. "also recently experienced the death of a close friend and a cousin, and nearly lost another close friend and cousin." (*Id*. ¶ 89).  Finally, Donte J. has experienced gang-related violence, despite his "lack of involvement with any gang," and was approached by an assailant with a knife who threatened to stab him. (*Id*. ¶ 35).

The Complaint alleges that the neurobiological effects of the complex trauma to which Student Plaintiffs have been subjected impair the ability to perform activities essential to education—including, but not limited to, learning, thinking, reading, and concentrating—and thus constitute a disability under Section 504 of the Rehabilitation Act ("Section 504") and the Americans With Disabilities Act ("ADA"). (*See id*. ¶¶ 2, 4, 54-66, 71).  The Complaint details the body's response to trauma, including how trauma affects the brain. (*See, e.g.*, Compl. ¶¶ 107-22).

In this vein, Peter P. states that, as a result of the "repeated and sustained trauma" he has experienced, "he often experiences uncontrollable anger, as well as "deep sadness and depression." (*Id*. ¶ 19).  Peter P. "previously had shown an ability to achieve high grades in certain honors classes," but the Complaint alleges that the "complex trauma in his life has at times caused his grades to decline sharply." (*Id*. ¶ 20).  "Over the course of his academic career, [Peter P.] has been repeatedly suspended for disobedient, angry, or aggressive behavior, and has been involuntarily transferred (or 'expelled')" from a number of CUSD schools. (*Id*.).   Similarly, the Complaint alleges that Kimberly Cervantes "had trouble focusing and concentrating in class and has missed a significant amount of class" as a result of the multiple traumas she has suffered. (*Id*. ¶¶ 22, 24, 26).  Moreover, Phillip W. allegedly "has difficulty focusing, concentrating, and recalling information in school" and "feels detached or angry much of the time." (*Id*. ¶ 29).  Phillip W. has been expelled from three mainstream high schools in his freshman year because he has been in physical altercations with other students. (*Id*. ¶ 31).  Virgil W. is also alleged to "struggle[] with anger due to the traumatic violence and loss he has endured." (*Id*. ¶ 33).  As a result of fights he has been involved in at school, Virgil W. has been repeatedly suspended and was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

"expelled" this year from Centennial High School.  (*Id*.).  Finally, the Complaint
alleges that, due to the traumatic events he has suffered, Donte J. "has had difficulty
focusing in class . . . and was recently suspended for slamming the door to the
counselor's office when he tried to request help and felt that he was getting none."  (*Id*.
¶ 36).

Trauma-sensitive schools are alleged to exhibit the following core components:
"(1) training educators to recognize, understand, and proactively recognize and address
the effects of complex trauma, in part through building students' self-regulation and
social-emotional learning skills; (2) developing restorative practices to build healthy
relationships and resolve conflicts peacefully and avoid re-traumatizing students
through the use of punitive discipline; and (3) ensuring consistent mental health
support is available to appropriately meet student needs."  (*Id*. ¶ 6).

In contrast, CUSD is alleged to have failed to: "train and sensitize teachers or
administrative personnel to recognize, understand, and address the effects of complex
trauma"; provide staff and teachers with "training in evidence-based trauma
interventions that have been demonstrated to reduce the effects of trauma"; "notify
parents of its obligation to identify and provide accommodations to students whose
learning may be impaired due to the experience of trauma"; "implement restorative
practices necessary to support healthy relationships"; "address conflict and violence in
a manner that recognizes the impact of complex trauma on the ability to self-regulate
in high stress or anxiety situations"; or provide adequate (or any) mental health
support.  (*Id*. ¶ 7).

Consequently, Plaintiffs contend that Defendants "have ignored and
affirmatively breached their responsibility to accommodate students whose access to
education is fundamentally impaired by reason of the trauma they have endured" (*id*. ¶
7); rather, Defendants are alleged to have "subject[ed] trauma-impacted students to
punitive and counter-productive suspensions, expulsions, involuntary transfers, and
referrals to law enforcement that push them out of school, off the path to graduation,
and into the criminal justice system" (*id*. ¶ 8).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

The Complaint alleges that the Student Plaintiffs have been, and without school-wide trauma-sensitive accommodations will continue to be, denied meaningful access to public education on account of their disabilities.  (*See id*. ¶¶ 7, 13, 197, 220). Further, the Complaint alleges that "[a]s a consequence of Defendants' failure to provide teachers with the support, resources, and training to address the high concentration of CUSD students who have experienced trauma, [the Teacher Plaintiffs] report experiencing burnout and secondary traumatic stress."  (*Id*. ¶¶ 45-47, 156). Defendants' alleged failure to accommodate students suffering from complex trauma has also purportedly resulted in the Teacher Plaintiffs "exert[ing] significant additional effort both in teaching and" managing the classroom, as well as spending their own "money and personal time in attempting to alleviate the effects of complex trauma on" students.  (*Id*. ¶¶ 45-47).

The Complaint asserts claims for: (1) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (2) violation of Department of Education regulations regarding "location and notification," 34 C.F.R. § 104.32; (3) violation of Department of Education regulations regarding "procedural safeguards," 34 C.F.R. § 104.36; (4) violation of Department of Education regulations regarding "free appropriate public education," 34 C.F.R. § 104.33; and (5) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

On July 9, 2015, Defendants filed the Motion.  On July 27, 2015, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss (the "Opposition").  (Docket No. 61). On August 3, 2015, Defendants filed a Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss (the "Reply").  (Docket No. 63).

## II.    **MOTION TO DISMISS**

Defendants bring the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

In ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -v- Compton Unified School District, et al.

556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citations omitted).  "'All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.'"  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (quoting *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007)) (holding that a plaintiff had plausibly stated that a label referring to a product containing no fruit juice as "fruit juice snacks" may be misleading to a reasonable consumer).

A.        **Rehabilitation Act and ADA Claims**

In the First and Fifth Claims for Relief, Plaintiffs allege violations of the Rehabilitation Act under 29 U.S.C. § 794 and the ADA under 42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).  Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

To state a Section 504 claim, Plaintiffs must establish that: (1) they are individuals with a disability; (2) they are otherwise qualified to receive the benefit; (3) they were "denied the benefits of the program solely by reason of" their disability; and (4) "the program receives federal financial assistance."  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (citing *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).  Similarly, to prove a violation of Title II of the ADA, Plaintiffs must

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

show: (1) they are qualified individuals with a disability; (2) they were "either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination was by reason of" their disability.  *Weinreich*, 114 F.3d at 978 (emphasis removed).

"There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act."  *Zukle v. Regents of Univ. of Cal*., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims].").  Consequently, "courts have applied the same analysis to claims brought under both statutes." *Zukle,* 166 F.3d at 1045 n.11; *see also Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

### 1.  Receipt of Federal Funds, CUSD's Operations as "Program or Activity," and Status of Students as Qualifying Individuals

As is evident from the text cited above, "Section 504 governs all entities receiving federal funds (public or private), while Title II governs all public entities (federally funded or not)."  *K.M. ex rel. Bright v. Tustin Unified Sch. Dist*., 725 F.3d 1088, 1099 (9th Cir. 2013).  Defendants do not contest that "CUSD's program receives federal financial assistance."  (Mot. at 6 (citing Compl. ¶¶ 196, 219)).  Therefore, this distinction between the ADA and Rehabilitation Act is a non-factor here.

"The only two elements in dispute are whether Plaintiffs have adequately alleged that: (1) they are individuals with a disability within the meaning of Section 504 and the ADA; and (2) they have been denied meaningful access to public education solely by reason of their disability."  (Opp. at 5 (citing MTD at 6-7)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

### 2. Disability

Defendants argue that Plaintiffs are not disabled because (1) trauma is not a recognized physical or mental impairment, and (2) Plaintiffs have failed to plead facts sufficient to show that their trauma substantially limits a major life activity.  (Mot. at 8-13).

In relevant part, the ADA defines a "disability . . . with respect to an individual" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  Subject to exceptions not relevant in this case, Section 504 defines "disability" and "individual with a disability" as "the meaning given to it" in 42 U.S.C. § 12102.  29 U.S.C. § 705(9)(B), (20)(B); 29 U.S.C. § 794(a).

The Court observes that in 2008, Congress passed the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325 (2008).  The ADAAA altered the definition of "disability" in a way that broadens coverage under the ADA.  For example, the ADAAA expanded the definition of "major life activities" and modified the regulatory definition of "substantially limits."  *See* 42 U.S.C. § 12102(2), (4).

As Defendants acknowledge (Mot. at 8), the term "disability" is "construed in favor of broad coverage."  *See* 42 U.S.C. § 12102(4)(A).

### a.  *Complex Trauma and Physical or Mental Impairments*

Defendants argue that Plaintiffs fail to allege that they suffer from a physical or mental impairment recognized by the ADA or Rehabilitation Act.  (Mot. at 8-12).

Defendants acknowledge that regulations implementing the ADA define a "physical or mental impairment" as: "'(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities.'"  (Mot. at 8 (quoting 29 C.F.R. § 1630.2(h))).  *See also* 28 C.F.R. § 35.104.

The regulations of the Rehabilitation Act define "physical or mental impairment" in substantially the same manner.  34 C.F.R. § 104.3(j)(1), (j)(2)(i) (defining a "handicapped person" for purposes of  Section 504 as a person who "has a physical or mental impairment which substantially limits one or more major life activities," and defining "[p]hysical or mental impairment" as "(A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities").

### i.   *Environmental Factors*

Defendants contend that "[t]he exclusion of systemic disadvantages caused by environmental, cultural, or economic factors from being considered a physical or mental impairment is a widely accepted concept in this area," such that the Plaintiffs are "seeking enlarged rights and protections under the law reserved for a specific category of people that does not include" them.  (Mot. at 9).  Defendants argue that Plaintiffs are "effectively request[ing] this Court to assume that students systematically endure a physical or mental impairment because they reside in a certain zip code." (Mot. at 10).

More specifically, Defendants argue that "'[e]nvironmental, cultural, or economic disadvantages such as poverty, lack of education, or a prison record are not impairments.'"  (*Id*. at 8-9 (quoting 29 C.F.R. app. § 1630.2(h)).  Moreover,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

Defendants contend that Section 504 regulations similarly support the view that "'environmental, cultural, and economic disadvantages are not in themselves covered; nor are prison records, age, or homosexuality.'" (*Id*. at 9 (quoting 34 C.F.R. app. A to Part 104)).  In sum, Defendants contend that the trauma alleged in the Complaint, "only amounts to environmental, cultural, and economic disadvantages not considered a physical or mental impairment." (*Id*. at 11).

However, Plaintiffs assert that the Complaint alleges the impact of trauma, not the impact of economic disadvantages.  (Opp. at 6).  Plaintiffs further posit that "[t]he fact that a disability is caused by an external factor—and is not congenital or hereditary—does not make the impairment itself 'environmental,'" as "[m]any disabilities are the result of environmental factors, such as exposure to violence, neglect, or malnutrition." (*Id*. at 6 n. 4).  By way of illustrating what they contend to be the relevant relationship between environment and disability here, Plaintiffs use the following analogies: "If an individual required a wheelchair as a consequence of a neighborhood shooting, for example, that individual would be protected under Section 504 and the ADA.  An intellectual disability due to exposure to lead paint or extreme malnutrition would be likewise cognizable under the Acts." (*Id*.).

Here, although the Complaint does clearly make reference to environmental and socioeconomic factors that contribute to the prevalence of trauma, the Court is satisfied that it goes beyond such allegations.

### ii.    *Physical or Mental Impairment*

Defendants further argue that "the ADA and Rehabilitation Act's method of defining 'physical or mental impairment' clearly makes a distinction between when a disorder versus a condition can satisfy the statute," such that there is "a narrowed class of mental impairments that must be a 'disorder.'" (Mot. at 11).  Defendants also contend that The Diagnostic and Statistical Manual of Mental Disorders ("DSM"), 5th Edition (2013) provides that: "Mental disorders are usually associated with significant distress in social, occupational, or other important activities.  An expectable or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

culturally approved response to a common stressor or loss, such as the death of a loved one, is not a mental disorder . . . ."  (*Id.*).  Therefore, Defendants argue that the trauma alleged in the Complaint is not a "mental disorder" because it "amounts to nothing more than expected, culturally approved responses to a 'common stressor or loss, such as the death of a loved one.'"  (*Id.* at 11-12).

    The Court notes that, other than the distinction discussed above regarding the regulatory language discussing physiological "disorder or condition" or a mental or psychological "disorder," Defendants have largely left unaddressed what the disorder/condition portion of the regulatory definitions entails and primarily focused on whether complex trauma is necessarily environmental (so as not to be recognized as an "impairment").

    Plaintiffs, in turn, assert that Defendants' "attempt to manufacture a distinction between physical and mental impairments" is supported by no case law.  (Opp. at 8 (citing Mot. at 11-12)).  Moreover, Plaintiffs argue that complex trauma results in neurological and endocrine effects which constitute a "physical or mental impairment" for purposes of the Acts.  (*Id.* at 7-9).  Specifically, Plaintiffs discuss the Complaint's allegations that "complex trauma results in physiological impairments affecting the 'neurological' and 'endocrine' systems under the 'physiological disorder or condition' prong of the ADA-implementing regulation."  (*Id.* at 9 (citing 29 C.F.R. § 1630.2(h); Compl. ¶¶ 3, 107-122, 129-136)).  Plaintiffs also contend that, although "courts have repeatedly made clear that it is not necessary for an impairment to be specifically listed or categorized as a 'mental disorder' by the DSM or elsewhere to state a claim under the ADA and Section 504" (*id.* at 9, n.7 (citing 29 C.F.R. § 1630.2)), trauma fits within the definition of "mental disorder" provided by Defendants from the DSM (*id.* (citing Compl. ¶¶ 123-57).

    The Complaint alleges that if a threatening situation persists beyond the brain's initial alarm reaction, the body enters either "state of 'fight or flight,'" or will "begin to move through a dissociative continuum."   (Compl. ¶ 111 (footnote omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v-* Compton Unified School District, et al.

The alleged "hyperaroused 'fight or flight' state" "disturbs the brain's
equilibrium, or homeostasis, by engaging a set of nervous system, neuroendocrine, and
immune responses that allow the body to react to the stress or danger in the near to
immediate term."  (*Id*. (footnote omitted)).   The Complaint further alleges that after
the threat has passed, "the brain mediates the return to its equilibrium, homeostasis
state"; "[h]owever, if a discrete stress is particularly severe, prolonged, or
unpredictable, or if the stress response is evoked chronically over and over, the brain's
regulatory mechanisms can become fatigued or overactivated—thus making it harder
for the brain to return to its original equilibrium state."  (*Id*. ¶ 113 (footnote omitted)).

The Complaint alleges that the alternative to a "fight or flight response," is "the
dissociative, or 'freeze and surrender' response," which is more common in young
children.  (*Id*. ¶ 114).  "Unlike the fight or flight response, the dissociative response
manifests in cognitive and physical immobilization, decreased heart rates, and
disengagement from external stimuli."  (*Id*. (footnote omitted)).

Ultimately, the Complaint alleges that "[w]ith severe or chronic trauma, 'states
become traits,'—the 'fight or flight' state, or the detached, dissociative state, becomes
the brain's new equilibrium."  (*Id*. ¶ 116).  Consequently, the Complaint asserts that
"[i]f a child repeatedly experiences fear, the areas of the brain that control behavior
directed by fear can become over-sensitized, and 'full-blown response patterns' such as
hyperarousal or disassociation can be triggered by seemingly innocuous stimuli."  (*Id*.
(footnote omitted)).  The Complaint alleges that "[b]ecause trauma triggers an all-brain
response, the emotional, motor, cognitive, and physiologic parts of the brain are all
engaged. Thus, any stimulus that triggers any of these parts of the brain can trigger a
full-blown trauma- reaction."  (*Id*. (footnote omitted)).

The Complaint also details specific ways in which trauma causes physiological
changes in the brain.  (*Id*. ¶¶ 116-22).  For example, the Complaint alleges that "part of
the hippocampus is less active in a traumatized brain," that "trauma can increase
cortisol levels in the hippocampus and ultimately cause it to decrease in volume," and
that "[r]esearchers have documented that traumatized children had smaller or abnormal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                 Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

prefrontal cortex structures."  (*Id*. ¶¶ 119-21).  "The hippocampus is a brain structure in the limbic system and plays an essential role in new learning and memory formation." (*Id*. ¶ 119).  Similarly, "[t]he prefrontal cortex is a lobe in the front of the brain that plays an important role in regulating the complex cognitive, emotional, and behavioral functioning of humans."  (*Id*. ¶ 120).

In light of such allegations, the Court concludes that Plaintiffs have adequately alleged, at least, that complex trauma can result in neurobiological effects constituting a physical impairment for purposes of the Acts.

**b.  *Allegations that Complex Trauma Substantially Limits a Major Life Activity***

Defendants argue that the Plaintiffs' "claims should also be dismissed for failing to properly plead the substantial-limitation prong of the analysis."  (Mot. at 12).

Within the meaning of the ADA, a physical or mental impairment is a disability if it "substantially limits one or more major life activities of" an individual.  42 U.S.C. § 12102(1)(A); *see also* 34 C.F.R. § 104.3(j)(1)(i) (defining a handicapped person for purposes of Section 504 as one who "has a physical or mental impairment which substantially limits one or more major life activities").  The ADA includes "learning, reading, concentrating, thinking, [and] communicating," among a non-exhaustive list of "major life activities."  42 U.S.C. § 12102(2)(A); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (noting that "[t]he ADA provides a nonexhaustive list of 'major life activities,'" and that this list includes "'learning, reading, concentrating, thinking, communicating, and working'" (quoting 42 U.S.C. § 12102(2)(A))).  "[A] [m]ajor life activity also includes the operation of a major bodily function, including but not limited to, functions of the . . . neurological [and] brain . . . functions."  42 U.S.C. § 12102(2)(B); *see also* Jeffrey Douglas Jones, *Enfeebling the ADA: The ADA Amendments Act of 2008*, 62 Okla. L. Rev. 667, 680 (2010) ("Congress ultimately opted for a different approach in the ADAAA. The [ADAAA] partially collapses major life activity into physical and mental impairment by including major

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

bodily functions in the definition of 'major life activities' . . . . [t]his unquestionably
lowers the threshold for proving existence of disability . . . .").

The Equal Employment Opportunity Commission's regulations implementing
the ADA note that "[t]he term 'substantially limits' shall be construed broadly in favor
of expansive coverage, to the maximum extent permitted by the terms of the ADA.
'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. §
1630.2(j)(1)(i).

Defendants argue that "[t]he Complaint goes to great lengths to assert numerous
contentions with respect to trauma's effects in the abstract (*see* Compl. ¶¶ 110-122,
129-152), but little substance remains when the conclusory allegations, threadbare
recitals of the elements, and unwarranted inferences are set aside."  (Mot. at 12).  As to
the Student Plaintiffs more specifically, Defendants contend that "[t]here is no basis for
assuming that every instance of bad acts, trouble, or misbehavior committed by [the
Student Plaintiffs] is due to trauma or that trauma is the substantial limitation on their
claimed inabilities regardless of the sweeping allegations."  (*Id*. at 13).

Plaintiffs, in turn, argue that "the Complaint alleges with particularity based on
extensive scientific and medical literature that the neurobiological effects of complex
trauma substantially impair a number of major life activities specifically enumerated
by the ADA and Section 504, including 'learning, reading, concentrating, thinking,
[and] communicating.'"  (Opp. at 10 (citing Compl. ¶¶ 65, 123-157)).  Further, as to
the Student Plaintiffs, Plaintiffs contend that there is a "specific recitation in the
Complaint regarding the consequences of trauma experienced by these Student
Plaintiffs, which is consistent with the effects of trauma described in the outlined
medical literature."  (*Id*. at 11).

The Court concludes that the Complaint alleges sufficient facts regarding the
consequences of complex trauma with respect to "major life activities" to survive a
motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                    Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

        The Complaint alleges, for example, that "[t]he capacity to internalize new
verbal cognitive information depends upon having portions of the frontal and related
cortical areas being activated—which, in turn, requires a state of attentive calm.  A
state the traumatized child rarely achieves."  (Compl. ¶ 130 (citation and quotation
marks omitted)).  Similarly, as to cognitive development and memory, the Complaint
alleges that "youth with [traumatic experiences] have deficits in key areas of the
[prefrontal cortex] responsible for cognitive control[,] attention, memory, response
inhibition, and emotional reasoning—cognitive tools that may be necessary for
learning."  (*Id*. ¶ 121 (citation and quotation marks omitted)).  The Complaint makes
additional allegations regarding, for example, the effects of trauma on concentration,
goal-setting and long-term planning, and classroom behaviors.  (*See, e.g., id*. ¶¶ 135-
37).

        Further, the Complaint alleges that the Student Plaintiffs experienced certain
consequences as a result of the trauma they suffered—consequences related to
activities such as learning, reading, concentrating, thinking, and communicating.  For
example, Peter P. allegedly "continues to have flashbacks," (Compl. ¶ 14) "often
experiences an instinct to be aggressive when he sees a male approaching him" (*id*.),
and "often experiences uncontrollable anger" (*id*. ¶ 18).  Kimberly Cervantes allegedly
suffered flashbacks that "caused her to break down in class," and "had trouble focusing
and concentrating in class."  (*Id*. ¶ 24).  Phillip W. allegedly "has difficulty focusing,
concentrating, and recalling information in school" and "feels detached or angry much
of the time."  (*Id*. ¶ 29).  Virgil W. stated that, after one traumatic incident, the portion
of his brain that processes fear had effectively shut down.  (*Id*. ¶ 32).  Moreover, Virgil
W. allegedly "struggles with anger due to the traumatic violence and loss he has
endured."  (*Id*. ¶ 33).  Finally, Donte J. has allegedly "had difficulty focusing in class
following . . . traumatic events due to intrusive thoughts, and was recently suspended
for slamming the door to the counselor's office when he tried to request help and felt
that he was getting none."  (*Id*. ¶ 36).

        While the Court recognizes the argument Defendants made at the hearing
regarding a purported lack of allegations tying the alleged scientific effects of trauma

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

to the particular Student Plaintiffs, the Court is satisfied that the Complaint adequately alleges the neurological changes caused by complex trauma, and alleges that the Student Plaintiffs have experienced particular limitations in their abilities to perform tasks such as learning, reading, concentrating, thinking, and communicating— limitations which are alleged to be causally related to the trauma the Student Plaintiffs have experienced and are consistent with the neurological changes discussed.  Rule 8 and Rule 12(b)(6) do not require more at this early stage of the action.

### 3.  Denial of Benefits Solely by Reason of Disability

Defendants contend that the Complaint fails to allege that Plaintiffs were denied the benefits of the relevant program "solely by reason of" their claimed disability, as is required for recovery under the Rehabilitation Act and ADA.  (Mot. at 14-16).

Congress intended Section 504 "to protect disabled persons from discrimination arising out of both discriminatory animus and 'thoughtlessness,' 'indifference,' or 'benign neglect.'"  *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (quoting *Alexander v. Choate*, 469 U.S. 287, 295 (1985)).  In this regard, "[r]ather than attempt to classify a type of discrimination as either 'deliberate' or 'disparate impact,' . . . it [is] more useful to assess whether disabled persons were denied 'meaningful access' to state-provided services."  *Crowder*, 81 F.3d at 1484 (quoting *Choate*, 469 U.S. at 302). *See also Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995) ("Congress could not have intended to limit the [ADA's] protections and prohibitions to circumstances involving deliberate discrimination. . . . Rather, the ADA attempts to eliminate the effects of . . . benign neglect, apathy, and indifference." (internal quotation marks omitted)).

Defendants argue that, "[w]ithout being required to establish intent, Plaintiffs at a minimum need to establish facts showing Defendants' knowledge of Plaintiffs' *disability*," rather than "just the consequences thereof," which the Complaint purportedly fails to do.  (Mot. at 14-15 (emphasis in original)).  Defendants contend that Plaintiffs fail to allege that "they requested accommodations or approached

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

Defendants to address the trauma-related limitations they have alleged."  (*Id*.).
Defendants also assert that the Complaint contains only conclusory statements
regarding CUSD's "awareness" in a general sense, but lacks allegations establishing
CUSD's knowledge regarding Plaintiffs' disability.  (*Id*.).  Rather, Defendants argue
that "much of Plaintiffs' claims rely on Plaintiffs' misbehavior, such as truancy and
schoolyard fights, to demonstrate signs of their disability when these scenarios could
be the result of nothing more than 'immaturity or poor judgement.'"  (*Id*. at 16 (quoting
*Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist. #121*, No. 99 C 5818, 1999
WL 1044832, at *3 (N.D. Ill. Nov. 16, 1999))).

        Plaintiffs, however, argue that a plaintiff must demonstrate "deliberate
indifference" only when seeking ***damages*** under Section 504 (Opp. at 13 (citing *Mark
H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008)); in contrast, when injunctive relief
(of the type at issue here) is sought, the statute does not impose the same requirement
(*id*.).  Further, Plaintiffs observe that Defendants now have knowledge of the relevant
disability and the Complaint seeks only prospective injunctive relief.  (*Id*.).  Finally,
Plaintiffs contend that they have adequately "alleged that Defendants should have
known a substantial number of CUSD students exposed to complex trauma are
disabled within the statutory meaning of Section 504 and the ADA and require
accommodations."  (*Id*. at 14).

        As to "state of mind" questions, the Ninth Circuit has observed that:

                Our cases on the appropriate *mens rea* standard for a § 504
                damages remedy recognize . . . that § 504 itself prohibits
                actions that deny disabled individuals "meaningful access" or
                "reasonable accommodation" for their disabilities.  *See Duvall
                v. County of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir.2001);
                *Ferguson*, 157 F.3d at 679. *Cf. Lovell*, 303 F.3d at 1054
                (assuming that "meaningful access" is the appropriate
                standard).  Those cases then go on to analyze the state of mind
                with regard to a denial of "meaningful access" or "reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

accommodation" necessary to justify monetary damages.  As to
this latter question, we have held that plaintiffs must prove a
*mens rea* of "intentional discrimination," to prevail on a § 504
claim, but that that standard may be met by showing "deliberate
indifference," and not only by showing "discriminatory
animus."  *See Duvall*, 260 F.3d at 1138; *id*. at 1139 (deliberate
indifference is "knowledge that a harm to a federally protected
right is substantially likely, and a failure to act upon that
likelihood"); *Lovell*, 303 F.3d at 1056.

*Lemahieu*, 513 F.3d at 938.

Plaintiffs here are not seeking damages, and the Court is satisfied that a showing
of "deliberate indifference" is not necessary.  Indeed, Defendants take issue with
Plaintiffs' statements regarding "deliberate indifference," arguing that "Defendants
never contended Plaintiffs must show deliberate indifference."  (Reply at 13).  Rather,
Defendants argue that some sort of causal connection between the disability and the
exclusion must be alleged.  (*See* Mot at 14-16; Reply at 13).

The Ninth Circuit's statements as to what constitutes a violation of § 504 are
particularly relevant here; namely, "§ 504 itself prohibits actions that deny disabled
individuals 'meaningful access' or 'reasonable accommodation' for their disabilities."
The allegations in the Complaint can be summarized as follows: (1) Solely by reason
of trauma-related disabilities, students have been denied meaningful access to the
public education to which they would otherwise be entitled (*see, e.g*., Compl. ¶¶ 7, 9,
13, 67, 71, 128, 197, 212, 220); and (2) Defendants could (but have failed to)
implement reasonable accommodations that would create a trauma-sensitive
environment and, thereby, allow these students to enjoy the benefit of public education
(*see, e.g., id*. ¶¶ 5, 55, 198, 221).  The Court concludes that, for purposes of surviving a
motion to dismiss, these allegations are sufficient to establish that Plaintiffs were
denied the benefits of the relevant program solely by reason of their claimed disability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

The Court does, however, recognize that claims alleging a failure to provide reasonable accommodations often arise in the context of a public entity's refusal to award a particular requested accommodation or failure to provide a reasonable accommodation despite knowledge that an individual needed it in order to enjoy meaningful access to a benefit.  *See, e.g.*, *Mark H. v. Hamamoto,* 620 F.3d 1090, 1097 (9th Cir. 2010) ("Hawaii DOE violated the Rehabilitation Act § 504 by denying Michelle and Natalie reasonable accommodation if: (1) the girls needed autism-specific services to enjoy meaningful access to the benefits of a public education, (2) Hawaii was on notice that the girls needed those autism-specific services, but did not provide those services, and (3) autism-specific services were available as a reasonable accommodation"); *Duvall*, 260 F.3d at 1135 (discussing whether a county violated (in relevant part) the Rehabilitation Act and ADA when it refused to provide the plaintiff with use of a videotext display during his trial).  Defendants appear to be correct that an interactive process of pre-litigation requests for the accommodations sought is not alleged in the Complaint.

Reasoning from the legislative history of the ADA and the regulations promulgated by the EEOC, the Ninth Circuit has previously recognized that an employer's obligation to reasonably accommodate "is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation."  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) *vacated sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also Granados v. J.R. Simplot Co.*, 266 F. App'x 547, 549 (9th Cir. 2008) ("Finally, we note that even if Granados had succeeded in establishing that he was disabled under the ADA, Simplot would not have been required to accommodate Granados's disability because, as Granados concedes, he did not make a specific request for an accommodation.").  This notice requirement appears to be the rule in the vast majority of federal circuits.  *See Barnett*, 228 F.3d at 1114 (collecting cases).

Several district courts have also imported this requirement from the workplace into the school in cases alleging the school's failure to reasonably accommodate a student disability.  *See Patton v. Phoenix Sch. of Law LLC*, No. CV-11-0748-PHX-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

GMS, 2011 WL 1936920, at *4 (D. Ariz. May 20, 2011) ("Under the ADA, an educational institution's 'obligation to engage in an interactive process with the [student] to find a reasonable accommodation is triggered by [the student] giving notice of the [ ] disability and the desire for accommodation.'" (citation omitted)); *Lei Ke v. Drexel Univ.*, No. CIV.A. 11-6708, 2013 WL 5508672, at *4 (E.D. Pa. Oct. 4, 2013) ("While Plaintiff contends in the Third Amended Complaint that he failed his exams because he was never given an accommodation for his glaucoma and for this reason the ADAAA applies here, Plaintiff also admits that he never requested an accommodation."); *Rivera-Concepcion v. Puerto Rico*, 786 F. Supp. 2d 442, 454-55 (D.P.R. 2010) ("[P]laintiffs have not alleged that Jayrie 'ever sufficiently requested the accommodation in question' so as to 'adequately put [defendants] on notice of her disability and need for accommodation . . . . There is simply no indication in the amended complaint that Jayrie or her family ever requested any form of accommodation for Jayrie's disability, whether before or after her expulsion.'" (citation omitted); *Girard v. Lincoln Coll. of New England*, 27 F. Supp. 3d 289, 294 (D. Conn. 2014) ("Although Plaintiff seems to argue in her opposition brief that her anxiety also constituted a disability under the [ADA], Plaintiff testified in her deposition that she never identified it to Lincoln as a disability and never requested accommodations for it . . . . Thus, Plaintiff's alleged anxiety cannot form the basis of her claim under the [ADA]."); *Stearns v. Bd. of Educ. for Warren Twp. High Sch. Dist. #121*, No. 99 C 5818, 1999 WL 1044832, at *3 (N.D. Ill. Nov. 16, 1999) ("There is no dispute in this case that defendants knew nothing about Higgins' alcoholism when they revoked his eligibility . . . . Thus, as in Hedberg, defendants' awareness of the alleged consequences of Higgins' alcoholism is not a basis for imposing ADA or Rehabilitation Act liability on them.").  Contrary to Plaintiffs' assertion that notice of Plaintiffs' disability is not a predicate for obtaining injunctive relief, the Court notes that this was not sufficient to overcome dismissal in similar lawsuits seeking injunctive relief.  *See, e.g.*, *Patton*, 2011 WL 1936920, at *4 (seeking reinstatement at school); *Stearns*, 1999 WL 1044832, at *3 (seeking restoration of athletic eligibility).

It makes sense to the Court that Plaintiffs should have made a request for the relief sought ***prior to*** bringing suit so as to allow Defendants an opportunity to engage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -*v-* Compton Unified School District, et al.

in an interactive process with them.  Nevertheless, the Court declines to dismiss the
Complaint solely because of missing allegations regarding pre-litigation notice and
requests to accommodate.  As a preliminary matter, the Ninth Circuit has yet to
mandate this notice requirement in the context of ADA lawsuits against education
institutions.  Furthermore, as a practical matter, Defendants have been on notice since
Plaintiffs' filing of this lawsuit.  Indeed, at the hearing on this Motion, the Court
expressed its preference for the parties to engage in an interactive dialogue about the
relief sought as a potential means to avoid unnecessary litigation.  In the absence of
Ninth Circuit authority imposing the notice requirement in the education context, the
Court declines to exalt form over substance and dismiss the Complaint on this basis.

### 4.  Comparative Requirement of the Rehabilitation Act

Finally, Defendants argue that the Complaint fails to establish that Plaintiffs'
alleged treatment was inadequate in comparison to non-handicapped students—the
"comparative requirement" of the Rehabilitation Act.  (Mot. at 16-17).

At the outset, the Court recognizes that this argument, as articulated, seems to
primarily involve Section 504's implementing regulations and the comparative
requirement discussed therein.  The Ninth Circuit has evaluated the relationship
between a state's obligations under the Individuals with Disabilities Education Act
("IDEA") to provide disabled children with a "free appropriate public education"
("FAPE"), and the Department of Education's regulations implementing Section 504,
which include a requirement that disabled children in schools receiving federal funds
be afforded a "free appropriate public education."  *Lemahieu*, 513 F.3d at 925 (citing
20 U.S.C. § 1412(a)(1); 34 C.F.R. § 104.33).  The Ninth Circuit noted that "[t]he
FAPE requirements in the IDEA and in the § 504 regulations are, in fact, overlapping
but different."  *Id*.  Most notably for the Court's purposes, "unlike FAPE under the
IDEA, FAPE under § 504 is defined to require a comparison between the manner in
which the needs of disabled and non-disabled children are met, and focuses on the
'design' of a child's educational program."  *Id*. at 933.  "[T]he obligation created [by
the Rehabilitation Act] is a comparative one," as it "requires a comparison between the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

treatment of disabled and nondisabled children, rather than simply requiring a certain set level of services for each disabled child."  *Id*. at 936.

Plaintiffs contend that Defendants have mischaracterized this "comparative requirement," arguing instead that "[w]hat the Rehabilitation Act and ADA do not require . . . is a showing of disparate outcomes: where Student Plaintiffs are denied meaningful access to public education by reason of their trauma-related disabilities, it would not be a defense to say that non-disabled CUSD students are also denied meaningful access to public education."  (Opp. at 16).

The Ninth Circuit has "recognized that the focus of the prohibition in § 504 is 'whether disabled persons were denied meaningful access to state-provided services.'"  *Lemahieu*, 513 F.3d at 937 (quoting *Crowder*, 81 F.3d at 1484) (internal quotation marks omitted)).  In this vein, and as briefly touched on above, "although § 504 does not require 'substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals,' it, like the ADA, does require ***reasonable*** modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access to a benefit because of their disability.'"  *Id*. (emphasis in original) (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979); *Choate,* 469 U.S. at 301) (internal quotation marks omitted).

The Court is satisfied that the Complaint alleges how the Student Plaintiffs have been denied meaningful access to CUSD's program as a result of their trauma-induced disabilities, as required for a violation of Section 504.  Further, it is clear from the allegations in the Complaint that, to the extent it is required, Plaintiffs are asserting that the educational services provided by CUSD do not and are not designed to meet the needs of students with trauma-induced disabilities as adequately as the needs of students without these disabilities.  (*See, e.g*., Compl. ¶¶ 192-223).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

### B.    Claims for Violations of Department of Education's Regulations

The Second, Third, and Fourth Claims for Relief are for violations of the
Department of Education's implementing regulations of the Rehabilitation Act
regarding "Location and Notification" (34 C.F.R. § 104.32), "Procedural Safeguards"
(34 C.F.R. § 104.36), and "Free Appropriate Public Education" (34 C.F.R. § 104.33).

Defendants contend that, just as there has been no violation of the Rehabilitation
Act, there can be no violation of its implementing regulations.  (Mot. at 19).  Further,
Defendants argue that Plaintiffs' Second, Third, and Fourth Claims should be
dismissed for failure to state any facts sufficient to support relief.  (*Id*. at 19-20).
Finally, Defendants argue that there is authority supporting the proposition that the
implementing regulations do not create a private right of action.  (*Id*. at 20-21).

The first of these arguments has already been refuted based on the Court's
conclusions above.  The Court addresses the next two contentions below.

### 1.  Failure to State a Claim

Defendants assert that "Plaintiffs' allegations of Defendants' failure to find and
locate Plaintiffs or implement procedural safeguards are pled only with threadbare
recitals of the regulations, supported by mere conclusory statements, which do not
suffice."  (Mot. at 19).

As to the Fourth Claim, the Complaint contains allegations as to how the
Defendants have denied students access to a FAPE based on their lack of
accommodation for trauma-based disabilities.  (*See, e.g*., Compl. ¶¶ 123-28, 212-14).
Regarding the Second and Third Claims, Plaintiffs have affirmatively alleged that
Defendants have failed to put into place the location/notification processes and system
of procedural safeguards required by the Rehabilitation Act's implementing
regulations.  (*See id*. ¶¶ 202-07, 209-10).  Defendants' argument that these latter

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

allegations might be seen as conclusory or consisting of recitals of the regulations is
not frivolous, but the allegations are not so deficient as to warrant dismissal.

Defendants argue that Plaintiffs have failed to make a substantive showing
demonstrating that the Student Plaintiffs' rights under the regulations were violated.
(Reply at 18).  However, although these Claims are alleged in general terms, the Court
notes that they allege CUSD's wholesale failure as to students with trauma-induced
disabilities to provide a FAPE, develop procedural safeguards, locate students not
receiving an adequate public education, and contact guardians to notify them of
CUSD's duty to identify and locate students who are not receiving a public
education—all of which the Court considers related to the allegations contained
throughout the Complaint as to the Student Plaintiffs' inability to meaningfully access
the benefits of CUSD's program as a result of their trauma-induced disabilities.  Rule 8
does not require more.

## 2.  Private Right of Action

Plaintiffs assert that "[i]n the Ninth Circuit, claims under Section 504
implementing regulations are enforceable through an implied right of action to the
extent that they impose 'reasonable accommodation' or 'meaningful access'
requirements . . . ."  (Opp. at 19 (quoting *Lemahieu*, 513 F.3d at 938)).  Because
Plaintiffs argue that "[e]ach of the Section 504 regulations asserted in this action is a
'meaningful access' or "reasonable accommodation' regulation," they contend that
they are enforceable through an implied right of action.  (*Id*. at 20-22).

The Ninth Circuit has stated that "[f]or purposes of determining whether a
particular regulation is ever enforceable through the implied right of action contained
in a statute, the pertinent question is simply whether the regulation falls within the
scope of the statute's prohibition."  *Lemahieu*, 513 F.3d at 938.  "[T]o be enforceable
through the § 504 implied private right of action, regulations must be tightly enough
linked to § 504 that they 'authoritatively construe' that statutory section, rather than
impose new obligations."  *Id*. at 939 (quoting *Alexander v. Sandoval*, 532 U.S. 275,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

284 (2001)).  As Plaintiffs point out, the Ninth Circuit has previously found "§ 504 'reasonable accommodation' and 'meaningful access' requirements" relevant when evaluating whether regulations "come within § 504's substantive scope."  *Id*. at 938.

    The Fourth Claim alleges violation of the "Free Appropriate Public Education" requirements of 34 C.F.R. § 104.33.  The regulation provides, in part, as follows:

> A recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

34 C.F.R. § 104.33(a).  In *Lemahieu*, the Ninth Circuit observed that, to the extent certain Section 504 FAPE regulations "can be interpreted as a variety of meaningful access regulation, they will fall within the § 504 implied right of action."  *Lemahieu*, 513 F.3d at 939.  Further, the *Lemahieu* court observed that "a number of the § 504 FAPE regulations are arguably intended to ensure 'meaningful access' to public education," and, "[i]n particular, a disabled individual may be denied 'meaningful access' to public education when that education is not designed to meet her needs as adequately as the needs of other students are met."  *Lemahieu*, 513 F.3d at 938 n. 14 (citing 34 C.F.R. § 104.33).

    Here, although the Court does not agree with Plaintiffs that the Ninth Circuit already found 34 C.F.R. § 104.33 to be a meaningful access regulation (Opp. at 20 (citing *Lemahieu*, 513 F.3d at 939)), the Court is satisfied that this regulation, as invoked in this case, is properly interpreted as a variety of meaningful access regulation.  Here, denial of a FAPE by reason of trauma-related disability is the crux of Plaintiffs' Complaint.  Therefore, the Court concludes that this regulation falls within § 504's implied right of action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

The Third Claim alleges violation of the "Procedural Safeguards" requirements of 34 C.F.R. § 104.36.  The regulation provides, in relevant part, as follows:

> A recipient that operates a public elementary or secondary education program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure.  Compliance with the procedural safeguards of section 615 of the Education of the Handicapped Act is one means of meeting this requirement.

34 C.F.R. § 104.36.  In *Lemahieu*, the court discussed 34 C.F.R. § 104.36 and noted that, "[d]epending on the particular circumstances," this regulation "may be necessary to ensure 'meaningful access' to an appropriate education."  *Lemahieu*, 513 F.3d at 938 n.14.

Other courts, however, have declined to allow a private right of action to enforce this regulation.  *See, e.g., Power ex rel. Power v. Sch. Bd. of City of Virginia Beach*, 276 F. Supp. 2d 515, 519 (E.D. Va. 2003) (declining to "expand the scope of Section 504 to provide a private cause of action to enforce a regulatory right to due process under 34 C.F.R. § 104.36" in a case which lacked allegations of disability discrimination and only challenged alleged inadequacies in a school board's policies and procedures); *cf. H. v. Montgomery Cnty. Bd. of Educ.*, 784 F. Supp. 2d 1247, 1264 (M.D. Ala. 2011) (noting that "the weight of authority holds that there is no private right of action to enforce § 504's special education regulations, to the extent these regulations create any duties separate and apart from the statutory text," but ultimately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -v- Compton Unified School District, et al.

not deciding whether, for purposes of this specific case, there was a private right of
action as to any particular regulation).

At the hearing, Plaintiffs distinguished *Powers* as a case involving no underlying
discrimination claim (simply a claim for violation of 34 C.F.R. § 104.36's procedural
provisions), which renders it quite different from the facts before the Court.
Ultimately, the Court concludes that 34 C.F.R. § 104.36, as invoked in this case, is "a
variety of meaningful access regulation," such that it is encompassed within § 504's
implied right of action.  In invoking this regulation, the Complaint asserts that the
failure of CUSD to, for example, establish procedures regarding notice, "has resulted
in negative consequences for class members who were entitled to the protection of
procedural safeguards, including suspension, involuntary transfer, and expulsion."
(Compl. ¶ 210).  These consequences are related to Plaintiffs' general theory of
disability-based deprivation; the Complaint alleges that, for example, "[i]nstead of
providing . . . accommodations to address complex trauma, Defendants subject trauma-
impacted students to punitive and counter-productive suspensions, expulsions,
involuntary transfers, and referrals to law enforcement that push them out of school,
off the path to graduation, and into the criminal justice system."  (*Id*. ¶ 8; *see also id*. ¶
141).

Finally, the Second Claim alleges violation of the "Location and Notification"
requirements of 34 C.F.R. § 104.32.  The regulation provides, in relevant part, as
follows:

> A recipient that operates a public elementary or secondary
> education program or activity shall annually:
> (a) Undertake to identify and locate every qualified
> handicapped person residing in the recipient's jurisdiction who
> is not receiving a public education; and
> (b) Take appropriate steps to notify handicapped persons and
> their parents or guardians of the recipient's duty under this
> subpart.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

34 C.F.R. § 104.32.  Once again, the Court concludes that this regulation, as invoked in this case, is "a variety of meaningful access regulation."  CUSD's failure to train teachers to recognize and address trauma-related disabilities is central to Plaintiffs' theory of disability-based disadvantage (*see* Compl. ¶ 7), and Defendants' failure to adhere to the location and identification requirements this regulation contains seems logically related to this alleged failure.

### C.       The Claims Against the Individual Defendants

Defendants argue that the Complaint's lack of allegations as to the Individual Defendants constitutes grounds for dismissal.  (Mot. at 21).  Further, Defendants observe that administrators in their official capacity are not normally proper defendants in Rehabilitation Act or ADA damages cases, and assert that Plaintiffs appear to be asserting an "official capacity" claim under the *Ex parte Young* Doctrine so as to circumvent these individuals' Eleventh Amendment immunity.  (Mot. at 21-22).

### 1.  Sufficiency of Allegations

Defendants argue that the two sole references to the Individual Defendants are found in paragraphs 49 and 50.  (Mot. at 21).  Paragraph 49 alleges:

> Defendant Darin Brawley is the superintendent of CUSD.
> Defendant Brawley exercises supervision and control over the
> daily activities of CUSD.  *See* Cal. Educ. Code § 35035
> (powers and duties of superintendent).  Defendant Brawley is
> aware, or should be aware, of the impact of complex trauma on
> the ability of class members to obtain the benefits of public
> education.

(Compl. ¶ 49).  Similarly, paragraph 50 alleges that the remaining Individual Defendants are members of the CUSD board of trustees and "exercise control over the actions of CUSD teachers, principals, and support staff.  *See* Cal. Educ. Code § 35020

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015

Title:      P.P., et al. -*v*- Compton Unified School District, et al.

('The governing board of each school district shall fix and prescribe the duties to be performed by all persons in public school service in the school district.')."  (*Id*. ¶ 50). Paragraph 50 similarly alleges that these remaining Individual Defendants "are aware, or should be aware, of the impact of complex trauma on the ability of class members to obtain the benefit of public education."  (*Id*.).

As a general matter, the Court believes that these paragraphs, when viewed in the context of the Complaint, are sufficient to inform the Individual Defendants of the nature of the allegations against them.

## 2.  *Ex Parte Young*

"The Eleventh Amendment generally bars the federal courts from entertaining suits brought by a private party against a state or its instrumentality in the absence of state consent."  *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citing *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist*., 714 F.2d 946, 950 (9th Cir. 1983)).

However, the Eleventh Amendment does not "bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law."  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).  Pursuant to *Ex parte Young*, "[t]he individual state official sued 'must have some connection with the enforcement of the act.'"  *Id*. (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).  "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  *Eu,* 979 F.2d at 704 (citing *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) and *Los Angeles Branch NAACP*, 714 F.2d at 953).

Plaintiffs contend that, "[i]n the education context, being the head of a system has been found sufficient to satisfy the 'fairly direct' requirement" of *Ex parte Young.* (Opp. at 22 (citing *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134-

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

35 (9th Cir. 2012); *Eu*, 979 F.2d at 704; *Shepard v. Irving*, 77 Fed. App'x 615, 620 (4th Cir. 2003))).  Plaintiffs also contend that "California law establishes that the Individual Defendants have authority to establish rules and policies in CUSD schools." (*Id*. (footnote omitted)).   Consequently, Plaintiffs argue that the Individual Plaintiffs are properly sued in their official capacity.  (*Id*. at 22-23).

The cases Plaintiffs cite reference, for example, the propriety of suit pursuant to *Ex parte Young* against a president of a university regarding admission criteria that he was duty-bound to enforce (*Brown*, 674 F.3d at 1134-35), and against the governor and secretary of state regarding a statute limiting the number of superior court judges that they had a specific connection to by appointing new judges and certifying subsequent elections for the positions (*Eu*, 979 F.2d at 704).  While the Court notes that the facts of these cases are distinct from those in this action, it is instructive to evaluate prior instances in which a "fairly direct" connection has been found.

Here, looking to the "fairly direct" nature of any connection between the Individual Defendants and the enforcement of the alleged violations, Plaintiffs cite California Education Code sections 35020, 35035 in the Complaint (as stated above). (Compl. ¶¶ 49-50).  California Education Code section 35020 provides that "[t]he governing board of each school district shall fix and prescribe the duties to be performed by all persons in public school service in the school district."  Cal. Educ. Code § 35020.  California Education Code section 35035 provides, in relevant part, that "[t]he superintendent of each school district shall . . . [b]e the chief executive officer of the governing board of the school district . . . [and] [e]nter into contracts for and on behalf of the school district pursuant to Section 17604."  Cal. Educ. Code § 35035(a), (h).

In the Opposition, Plaintiffs also cite to California Education Code section 35010(b) ("[t]he governing board of each school district shall prescribe and enforce rules not inconsistent with law, or with the rules prescribed by the State Board of Education, for its own government") and section 35161 ("[t]he governing board of any school district . . . shall discharge any duty imposed by law upon it or upon the district

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:       P.P., et al. -*v-* Compton Unified School District, et al.

of which it is the governing board, and may delegate to an officer or employee of the district any of those powers or duties.  The governing board, however, retains the ultimate responsibility over the performance of those powers or duties so delegated"). (Opp. at 22-23 n. 20).

Despite any specific allegations as to the Individual Defendants' enforcement powers, the Court concludes that the operation of California law confers upon the Individual Defendants more than a "general supervisory power over the persons responsible for enforcing" the challenged actions.  Pursuant to the provisions cited above, it is the Individual Defendants, due to their connections with the CUSD Board of Trustees, who "retain[] the ultimate responsibility" for "discharg[ing] any duty imposed by law upon  . . . the district of which it is the governing board."

In *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 398 (2014), the Ninth Circuit held that the Governor of California was entitled to Eleventh Amendment immunity in a suit regarding a statute banning the sale of foie gras in California, as his only connection to the provision was his general duty to enforce California law.  However, the Ninth Circuit concluded that the Attorney General was not entitled to immunity because the provision at issue was to be enforced by district attorneys and city attorneys and, pursuant to the California Constitution, the Attorney General has both direct supervisory power over district attorneys and the duty to prosecute violations of law as a district attorney; the combination of the authority afforded to district attorneys to prosecute violations of the statute and the Attorney General's duty to prosecute as a district attorney "establishe[d] sufficient enforcement power" for purposes of *Ex parte Young*.  *Id*. at 943-44.

Although the Court is not convinced that the facts of this case are completely analogous to those in *Harris*, the Court concludes that the Individual Defendants are closer to the situation faced by the Attorney General in *Harris* than that faced by the Governor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:      P.P., et al. -v- Compton Unified School District, et al.

D.    **Teacher Plaintiffs' Standing**

1. **Article III Standing**

Defendants argue that the Teacher Plaintiffs have failed to demonstrate Article III standing here, as it is not made clear what exactly their injuries are or how they seek to redress those injuries through this litigation.  (Mot. at 22-25).

Plaintiffs, in contrast, argue that note that the "Teacher Plaintiffs have been injured in numerous concrete ways, including in their ability to do their job and advance in their chosen profession and in their mental, emotional, and physical well-being."  (Opp. at 24 (citing Compl. ¶¶ 45-47, 153-157)).

A plaintiff must have Article III standing in order for the suit to constitute a "case or controversy" over which a federal court has subject matter jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101(1998)).  In order to demonstrate Article III standing, a plaintiff must show: "(1) injury in fact; (2) causation; and (3) likelihood that a favorable decision will redress the injury."  *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). An "injury in fact" consists of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan,* 504 U.S. at 560 (internal quotation marks and citations omitted). General allegations regarding injury are sufficient at the pleading stage.  *Braunstein v. Arizona Dep't of Transp.,* 683 F.3d 1177, 1184 (9th Cir. 2012) (citing *Lujan*, 504 U.S. at 561).

The Complaint alleges that Defendants' failure to accommodate students suffering from complex trauma has resulted in the Teacher Plaintiffs "exert[ing] significant additional effort both in teaching and" managing the classroom, as well as spending their own "money and personal time in attempting to alleviate the effects of complex trauma on" students.  (*Id*. ¶¶ 45-47).  Particular injuries in this vein are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

alleged as to each teacher.  Plaintiff McCoy, for example, is alleged to have
"experienced significant health problems and was placed on disability leave by her
doctor as a result of her attempts to meet the needs of CUSD students who have
experienced trauma without the training, resources, or support to do so."  (Compl.
¶ 47).

Moreover, as to redressability, Plaintiffs argue that "CUSD's failure to
accommodate trauma-impacted students has a direct and causal link to the Teacher
Plaintiffs' above-identified injuries, and implementation of trauma-sensitive practices
will ameliorate the negative impact of trauma-induced disabilities on learning, and
thereby ameliorate the associational injury suffered by Teacher Plaintiffs."  (Opp. at
25).  This is supported by allegations in the Complaint which point to the causal link
between Defendants' alleged failure to accommodate students' trauma-induced
disabilities and the Teacher Plaintiffs' injuries (*see* Compl. ¶¶ 45-47), as well as the
alleged impact the requested remedy will have towards alleviating the negative impact
of trauma-induced disabilities on students (*see, e.g., id.* ¶¶ 5-6, 159-81).

In light of these allegations regarding injury and redressability, the Court is
satisfied that the Teacher Plaintiffs have adequately alleged that they have Article III
standing.

### 2.  "Persons Aggrieved"

"The remedies, procedures, and rights set forth in title VI of the Civil Rights Act
of 1964 (42 U.S.C. 2000d *et seq.*) (and in subsection (e)(3) of section 706 of such Act
(42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be
available to ***any person aggrieved*** by any act or failure to act by any recipient of
Federal assistance or Federal provider of such assistance under section 794 of this
title."  29 U.S.C. § 794a(a)(2) (emphasis added).  Moreover, the ADA provides that
"[t]he remedies, procedures, and rights set forth in section 794a of Title 29 shall be the
remedies, procedures, and rights this subchapter provides to ***any person alleging
discrimination on the basis of disability*** in violation of section 12132 of this title."  42

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:        P.P., et al. -*v*- Compton Unified School District, et al.

U.S.C. § 12133 (emphasis added).  The Complaint alleges that "Plaintiffs Curry, Castro, and McCoy are persons aggrieved by Defendants' failure to act in accordance with Section 504."  (Compl. ¶ 68).

Defendants contend that, even assuming that the Teacher Plaintiffs have Article III standing, their "only claim in this lawsuit is that they are 'persons aggrieved' under 29 U.S.C. § 794a" (*id.* at 24 (citing Compl. ¶ 68)), and analogous "persons aggrieved" language has been construed in connection with a Title VII violation more narrowly than Article III standing (*id.* at 24-25 (citing *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176-78 (2011))).  Defendants argue that the Teacher Plaintiffs' interests are not related to the statutory prohibitions contained in the Rehabilitation Act.  (*Id.* at 24-25).  Further, Defendants note that, "[w]hile the Complaint cites 29 U.S.C. § 794a(a)(2) for the proposition that the Rehabilitation Act's remedies, procedures, and rights are available to the Teacher Plaintiffs, the Complaint does not likewise assert the Teacher Plaintiffs are so entitled under the ADA, which would nonetheless require allegations of disability discrimination.  (Reply at 21 n. 4 (citing 42 U.S.C. § 12133)).

In *Thompson*, the Supreme Court evaluated whether an employee could bring suit under Title VII for retaliation when he was terminated after his fiancé filed a gender discrimination charge with the Equal Employment Opportunity Commission.  *Thompson*, 562 U.S. at 172-73.  Title VII provides that "a civil action may be brought...by the person claiming to be aggrieved."  42 U.S.C. § 2000e-5(f)(1); *Thompson*, 562 U.S. at 175.  The Court held that the term "aggrieved" in this context "must be construed more narrowly than the outer boundaries of Article III."  *Thompson*, 562 U.S. at 177.  Otherwise, the Court observed, "absurd consequences would follow"; "[f]or example, a shareholder would be able to sue a company for firing a valuable employee for racially discriminatory reasons, so long as he could show that the value of his stock decreased as a consequence."  *Id.* at 176-77.

Instead, the Court concluded that "aggrieved" in Title VII incorporates the "zone of interests" test, such that suit is allowed "by any plaintiff with an interest 'arguably [sought] to be protected by the statute,' while excluding plaintiffs who might

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 15-3726-MWF (PLAx)          Date:  September 29, 2015
Title:      P.P., et al. -*v*- Compton Unified School District, et al.

technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII." *Id*. at 178 (alteration in original) (quoting *National Credit Union Admin. v. First Nat. Bank & Trust Co*., 522 U.S. 479, 495 (1998)). Applying this test, the Court concluded that the plaintiff fell "within the zone of interests protected by Title VII." *Id*. The Court observed that "[the plaintiff] was an employee of [the relevant company], and the purpose of Title VII is to protect employees from their employers' unlawful actions." *Id*. Moreover, based on the facts as alleged, the plaintiff was not "an accidental victim of the retaliation"—"[t]o the contrary, injuring him was the employer's intended means of harming" his fiancé. *Id*. "Hurting him was the unlawful act by which the employer punished her." *Id*.

Here, Defendants argue that the "zone of interests" test excludes the Teacher Plaintiffs. (Mot. at 24-25). Defendants posit that "[a]llowing Teacher Plaintiffs to bring suit as 'persons aggrieved' would result in the exact 'absurd consequences' and limitlessness the Supreme Court warned of in *Thompson*." (*Id*. at 25). Defendants argue that the Teacher Plaintiffs "if anything, are 'accidental victims of the [alleged conduct]—collateral damage, so to speak.'" (*Id*. (quoting *Thompson*, 562 U.S. at 178)).

Plaintiffs, in turn, assert that *Thompson* "is inapposite and in fact supports, rather than hinders, an assertion of Teacher Plaintiffs' standing," as the Teacher Plaintiffs are "uniquely positioned" to serve the purpose of Section 504 and the ADA in defending the rights of their students to be free from disability-based discrimination, and "have a unique and foreseeable interest" in these rights. (Opp. at 24 n. 21).

Plaintiffs cite *Innovative Health Systems v. City of White Plains*, 117 F.3d 37, 46-47 (2d Cir. 1997), *superseded on other grounds as recognized by Zervos v. Verizon New York, Inc*., 252 F.3d 163, 171 n. 7 (2d Cir.2001), and *Greater Los Angeles Council of Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987) in support of their argument that "interested parties who themselves meet Article III's standing requirements of injury, causation, and redressability may bring suit to assert the rights of another." (Opp. at 23-24 (footnote omitted)). Further, in support of their contention

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)              Date:  September 29, 2015
Title:       P.P., et al. -v- Compton Unified School District, et al.

that "Defendants' failure to reasonably accommodate students affected by complex trauma unfairly discriminates against CUSD teachers by virtue of their association with students suffering from unaddressed trauma," Plaintiffs cite to *Blanchard v. Morton School District*, 509 F.3d 934 (9th Cir. 2007) and *Winkelman v. Parma City School Dis*trict, 127 S. Ct. 1994, 2003 (2007).

In *Innovative Health Systems, Inc.*, the Second Circuit concluded that a drug and alcohol rehabilitation center (along with five of its clients) had standing in a suit alleging that denial of its building permit violated the ADA and Rehabilitation Act. *Innovative Health Systems, Inc.*, 117 F.3d at 40, 46-47.  The court observed that "Title II's enforcement provision extends relief to 'any person alleging discrimination on the basis of disability,'" *id*. at 47 (quoting 42 U.S.C. § 12133) and "the Rehabilitation Act extends its remedies to 'any person aggrieved' by the discrimination of a person on the basis of his or her disability," *id*. (quoting 29 U.S.C. § 794a(a)(2)).  The court concluded that "the use of such broad language in the enforcement provisions of the statutes evinces a congressional intention to define standing to bring a private action under 504 [and Title II] as broadly as is permitted by Article III of the Constitution." *Id*. (alteration in original) (internal quotation marks and citations omitted).  Here, the Court acknowledges that the connection between the alleged discriminatory action and the alcohol rehabilitation center in *Innovative Health Systems, Inc*. appears potentially more direct than the actions alleged in the Complaint and the injuries allegedly suffered by the Teacher Plaintiffs.  However, the Court finds the Second Circuit's discussion of the wording in the statutes, and the coextensive nature of the right to bring suit under these statutes with Article III standing, to be persuasive.

In contrast, in *Zolin*, the Ninth Circuit held that a council on deafness (along with individuals) had standing to challenge a decision not to provide sign language interpreters to allow deaf individuals to serve as jurors under Section 504.  *Zolin*, 812 F.2d at 1106, 1115.  The Ninth Circuit noted that "organizations of or for handicapped persons have standing to sue for injunctive relief under section 504."  *Id*. at 1115 (citing *Williams v. United States*, 704 F.2d 1162, 1163 (9th Cir.1983)).  The Ninth Circuit concluded that, similarly, "[s]o long as its claim is for expenses reasonably and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)            Date:  September 29, 2015
Title:       P.P., et al. -*v*- Compton Unified School District, et al.

foreseeably expended to secure for a handicapped juror an interpreter that the
defendants were legally obligated to provide, [it saw] no reason why [the
organization], organized for the benefit of hearing-impaired persons, cannot maintain a
damages action under section 504."  *Id*.  Here, as relevant to the Teacher Plaintiffs,
these individuals are **not** an organization of or for the handicapped, such that the
holding in *Zolin* appears largely inapplicable.

Finally, in *Blanchard*, the Ninth Circuit held that parents had the right to bring
suit under the ADA and Rehabilitation Act, "at least insofar as [the parents are]
asserting and enforcing the rights of [their child] and incurring expenses for [the
child's] benefit."  *Blanchard*, 509 F.3d at 938.  The court observed that "'a parent of a
child with a disability has a particular and personal interest' in preventing
discrimination against the child."  *Id*. (quoting *Winkleman*, 550 U.S. at 529).
Similarly, in *Winkleman*, the Supreme Court held that the IDEA creates individual
rights in parents, such that parents had standing to assert such claims on their own
behalf.  *Winkleman*, 550 U.S. at 526.  The Court observes that the connection between
the Teacher Plaintiffs and the Student Plaintiffs is less direct than that between a parent
and child.  Nevertheless, it does not necessarily follow that Teacher Plaintiffs do not
have standing in this suit.

At the hearing, Defendants argued that the Teacher Plaintiffs are mere
bystanders in this case, such that they do not fall within the "zone of interests."  In
turn, Plaintiffs emphasized the language in Title II of the ADA affording relief to "any
person alleging discrimination on the basis of disability" (also discussed in *Innovative
Health Systems, Inc.*) as not requiring a "persons aggrieved" analysis and, moreover,
discussed that the Teacher Plaintiffs are directly harmed by CUSD's alleged failures.

On the whole, the Court acknowledges the strength of Defendants' argument
that, even if the Teacher Plaintiffs suffered some injury in a technical sense, these
injuries are somewhat collateral to the primary concern of the statutes invoked here.
However, the Court is not prepared to conclude that the language in the enforcement
provisions of the relevant statutes, even considering the "zone of interest" analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-3726-MWF (PLAx)                 Date:  September 29, 2015

Title:       P.P., et al. -*v*- Compton Unified School District, et al.

discussed in *Thompson*, prohibits the Teacher Plaintiffs' suit.  Not only is the enforcement language for these statutes broad, but, as Plaintiffs articulate, "Section 504 and the ADA are intended to protect and champion the rights of persons to be free from discrimination on the basis of disability, including discrimination in learning—a right the students' teachers are uniquely positioned to protect and over which teachers have a unique and foreseeable interest."  (Opp. at 24 n. 21).

### 3.  Workers' Compensation

Finally, Defendants argue that, to the extent there is any injury asserted in the Complaint, it is "'work-related exposure to trauma'" (*id*. at 23 (quoting Compl. ¶ 154)), such that the "Teacher Plaintiffs' sole and exclusive remedy is governed by Workers Compensation" (*id*. at 23-24 (citing Cal. Labor Code § 3602)).

Plaintiffs, in turn, argue that Workers' Compensation is inapplicable because California's Workers' Compensation plan is expressly limited to recovery of damages (Opp. at 23 (citing Cal. Labor Code § 3602; *Employers Mutual Liability Ins. Co. of Wisconsin v. Tutor-Saliba Corp*., 17 Cal. 4th 632, 637 (1998))), which are not sought here (*id*.).  Further, even if Worker's Compensation does apply, Plaintiffs argue that its "exclusive remedy" provision is preempted by the ADA.  (*Id*. at 23 (citing *Wood v. Cnty. of Alameda*, 875 F. Supp. 659, 665 (N.D. Cal. 1995); *Leptich v. City College of San Francisco*, No. 96-16873, 1998 U.S. App. LEXIS 689, at *8-9 (9th Cir. Jan. 15, 1998))).

This Court concludes that Workers' Compensation, and particularly the exclusivity of such remedy, is inapplicable in this action.  *Cf. Amalgamated Transit Union Local 1277 v. Los Angeles Cnty. Metro. Transp. Auth*., 107 Cal. App. 4th 673, 682, 132 Cal. Rptr. 2d 207(2003) (finding that the union's "equitable petition to compel arbitration [] does not fall within the statutory language" establishing workers' compensation as an exclusive remedy, and that the statutory language "prohibits only actions at law for damages").  Accordingly, Defendants have failed to rebut Plaintiffs' arguments in this regard in the Reply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 15-3726-MWF (PLAx)**          **Date:  September 29, 2015**

Title:        P.P., et al. -*v*- Compton Unified School District, et al.

## III.   **CONCLUSION**

For the foregoing reasons, the Motion is **DENIED**.  Defendants will have **21 days** from the entry of this Order in which to file an Answer to the Complaint.

IT IS SO ORDERED.